THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR20-0174-JCC |
| Plaintiff, | ORDER |
| v. | |
| ERIC SHIBLEY, | |
| Defendant. | |

This matter comes before the Court on Defendant Eric Shibley's motion for a competency hearing (Dkt. No. 52) and motion to revoke United States Magistrate Judge Michelle Peterson's order detaining Mr. Shibley before trial (Dkt. No. 59). Having thoroughly considered the parties' briefing and the relevant record, the Court FINDS that Mr. Shibley is competent, and a formal competency hearing is not necessary. The Court also DENIES Mr. Shibley's motion to revoke the detention order.

I.      BACKGROUND

The Government alleges that Mr. Shibley defrauded several financial institutions and the United States Small Business Administration and then laundered the proceeds. (*See* Dkt. No. 31.) Specifically, the Government alleges that Mr. Shibley fraudulently obtained Paycheck Protection Program and Economic Injury Disaster Loan funds by, among other things, "making false statements about the monthly payroll expenses, employees, and revenues of [various companies

ORDER
CR20-0174-JCC
PAGE - 1

1   Mr. Shibley controlled]" and falsely representing that he was not on probation, which was a

2   prerequisite for obtaining the loans. (*Id.* at 9, 14; Dkt. No. 1 at 10–11.)

3           Mr. Shibley was arrested on June 30, 2020, and was released subject to several

4   conditions, including that he not "commit a federal, state, or local crime during the period of

5   release." (Dkt. Nos. 6, 7.) At 12:37 a.m. on September 14, 2020, Seattle Police Officer Jeremy

6   Montgomery was dispatched to Mr. Shibley's residence after the woman living with him, M.B.,[1]

7   called 9-1-1 and reported that her boyfriend punched her in the face. (Dkt. No. 25-1 at 2.) When

8   Officer Montgomery arrived, M.B. reported that she and Mr. Shibley had an argument that night

9   that scared her, and that Mr. Shibley had assaulted her two days earlier. (*Id.*) Officer

10  Montgomery observed healing bruises on her face and right leg. (*Id.*) Police were unable to

11  locate Mr. Shibley, and M.B. told Officer Montgomery that Mr. Shibley locked himself in a

12  bedroom and refused to come out. (*Id.*) When police reached Mr. Shibley by phone later, he

13  confirmed he was in the bedroom when Officer Montgomery was at the home. (*Id.*)

14          The next night, M.B. called 9-1-1 again, and Officer Montgomery was dispatched to Mr.

15  Shibley's home at 1:06 a.m. (Dkt. No. 25-2 at 2.) When he arrived, Officer Montgomery

16  observed injuries on M.B. that were not present the night before: fresh bruises under both of her

17  eyes, a laceration on her nose, and swelling on her finger. (*Id.*) M.B. reported that she had been

18  sleeping and Mr. Shibley woke her up, yelled at her, and hit her in the face repeatedly before

19  fleeing. (*Id.*) After taking pictures of her injuries and arranging for M.B. to receive medical care,

20  the officers found Mr. Shibley sitting in his car nearby and arrested him. (*Id.*)

21          On September 28, 2020, Judge Peterson held a bond revocation hearing at which she

22  reviewed the evidence and heard testimony from Officer Montgomery. (Dkt. No. 28.) Judge

23  Peterson revoked Mr. Shibley's bond and ordered him detained because she found that there was

24

25  [1] The parties have publicly identified M.B., who is alleged to be a victim of domestic violence, only by her initials. The Court finds it appropriate to do the same to protect her privacy. *See, e.g.,*

26  *United States v. Loew*, 593 F.3d 1136, 1137 n.1 (9th Cir. 2010) (referring to victim "by her initials to respect her privacy").

ORDER
CR20-0174-JCC
PAGE - 2

probable cause to believe Mr. Shibley committed the crime of assault-domestic violence on

September 12, 2020 and September 15, 2020, that he was unlikely to abide by any conditions of

release, and that no conditions could reasonably assure the safety of M.B. or the community.

(Dkt. No. 29.)

About six weeks later, Mr. Shibley moved to reopen his detention hearing because: (1)

M.B. had agreed to vacate Mr. Shibley's home and he could change the locks so that she could

not return, (2) his real estate business was suffering without his management, and (3) he found it

difficult to participate in his defense in custody, particularly in light of restrictions the Federal

Detention Center imposed as a result of the COVID-19 pandemic. (Dkt. No. 46.) The Court

referred the motion to reopen detention to Magistrate Judge Peterson.

Before the parties finished briefing that motion, the Court held a status conference at

which counsel for Mr. Shibley expressed, for the first time, that Mr. Shibley may have been

experiencing mental health issues impacting his competency to stand trial. (Dkt. No. 49.) From

that point onward, the case proceeded on two parallel tracks: the Court ordered the parties to

provide supplemental briefing regarding what measures the Court should take to address Mr.

Shibley's health, while the parties continued briefing the propriety of Mr. Shibley's detention for

Judge Peterson. (*Id.*) Two days later, Mr. Shibley reported several mental health conditions and

formally requested a competency evaluation. (*See* Dkt. No. 52.) The day after that, Mr. Shibley

raised his alleged mental health issues in his reply brief regarding his detention. (Dkt. No. 53 at

4.) Judge Peterson held a hearing on November 20, 2020 and denied Mr. Shibley's motion to

reopen detention. (Dkt. No. 58.) Three days later, Mr. Shibley filed a two-sentence "Notice of

Appeal" requesting that the Court review his detention *de novo*. (Dkt. No. 59.) The next day, the

Court held a status conference at which it ordered a competency evaluation and stayed

consideration of Mr. Shibley's motion to revoke Judge Peterson's detention order until the Court

determined whether Mr. Shibley was competent. (Dkt. Nos. 61, 62.)

Dr. Cynthia Low, a forensic psychologist at FDC SeaTac, provided the Court with her

evaluation of Mr. Shibley on February 1, 2021. (Dkt. No. 64.)[2] The Court scheduled a status

conference for February 10, 2021. (Dkt. No. 65.) The day before the status conference, Mr.

Shibley filed a status memorandum in which he stipulated to his competency and withdrew his

request for a formal competency hearing. (Dkt. No. 66 at 3.) Mr. Shibley's memorandum also

noted that Mr. Shibley had no further information to add regarding his motion to revoke Judge

Peterson's detention order. (*Id.*) Counsel for Mr. Shibley reiterated these positions at the status

conference the next day. (Dkt. No. 61.) Accordingly, the Court addresses Mr. Shibley's

competency and detention based on the parties' briefing.

## II.   COMPETENCY

The Court granted Mr. Shibley's motion for a competency evaluation because there was

reasonable cause to believe that he may have been suffering from a mental disease or defect that

rendered him unable to assist properly in his defense or to understand the nature and

consequences of the proceedings against him. (*See* Dkt. No. 62 at 1.) Specifically, Mr. Shibley

reported that he was experiencing several severe mental health conditions, including

hallucinations and delusions. (Dkt. No. 52 at 2–3.)

After administering six psychological tests to Mr. Shibley, reviewing his available

medical history, and evaluating his external communications, Dr. Low concluded that Mr.

Shibley "is most likely malingering for the purpose of obtaining pre-trial release and evading

criminal prosecution." (Dkt. No. 68 at 24.) In short, Mr. Shibley's performance on the

psychological tests was so poor that it suggests that he is "feign[ing] cognitive and memory

deficits and psychotic symptoms [because] he feels it will benefit his legal case." (*Id.* at 25.) In

addition, Mr. Shibley has not provided any evidence of a history of mental health issues. In fact,

he affirmatively denied any history of mental health issues when he was interviewed by the

---

[2] The parties discovered that Dr. Low's original report, filed under seal at docket number 64, contains communications that are arguably protected by the attorney-client privilege. The parties prepared a revised version of the report with the arguably privileged material redacted. (*See* Dkt. Nos. 67, 68.) The Court's analysis is based entirely on the redacted version of the report.

1  Probation Office shortly after he was arrested in June 2020, (Dkt. No. 3 at 3), and when he was

2  booked into the Federal Detention Center on September 21, 2020, (Dkt. No. 68 at 12). Finally,

3  the e-mails Mr. Shibley sent from the FDC suggest that he is competent and is not suffering from

4  the severe mental health issues he claims. Mr. Shibley wrote lengthy e-mails to his business

5  partners explaining his legal circumstances and providing them with detailed instructions about

6  how to manage his real estate investments and personal affairs while he is incarcerated. (*Id.* at

7  16–18.) For example, he told them how to pay various mortgages, evict his tenants, access his

8  bank accounts, pay his bills, and suggested prices at which they should sell his properties. (*Id.*)

9  These e-mails suggest that he is not experiencing mental health issues that would impact his

10  ability to understand the nature and consequences of the proceedings against him and assist in his

11  defense.

12         After Dr. Low completed her report, Mr. Shibley stipulated to his competency and

13  withdrew his request for a competency hearing. (Dkt. No. 66 at 3.) Based on the Court's review

14  of Dr. Low's report, the record, and Mr. Shibley's stipulation, the Court FINDS that Mr. Shibley

15  is competent and there is no genuine doubt about Mr. Shibley's competency at this time.

16  Therefore, there is no basis for the Court to hold a competency hearing *sua sponte*, in the

17  absence of a request from either party. *See United States v. Mikhel*, 889 F.3d 1003, 1036–42 (9th

18  Cir. 2018).

19  ## III.    DETENTION

20        ### A.    Standard of Review

21         The Court reviews a magistrate judge's order detaining a defendant before trial *de novo*.

22  *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Thus, the Court makes its own

23  factual findings and reaches an independent conclusion about whether the defendant should be

24  detained, without deference to the magistrate judge's decision. *Id.* Where, as here, the magistrate

25  judge holds an evidentiary hearing, the Court may hold another evidentiary hearing at its

26  discretion but is not required to do so. *See id.*; *see also United States v. Oaks*, 793 F. App'x 744,

747 (10th Cir. 2019).

**B.    Legal Standard for Detention**

A person released under 18 U.S.C. § 3142 who violates a condition of release may be detained if the Court finds "probable cause to believe that the person has committed a Federal, State, or local crime while on release" and that "no condition or combination of conditions of release . . . will assure that the person will not flee or pose a danger to the . . . community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b). If the Court finds probable cause to believe the defendant committed a felony while on release, there is a rebuttable presumption that the defendant should be detained. *Id.*

In determining whether there is probable cause to believe Mr. Shibley committed a crime while on pretrial release, the Court must determine whether there "is a reasonable ground for belief of [Mr. Shibley's] guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id*. To determine whether there is probable cause to believe Mr. Shibley committed a crime, the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (2003)). The Federal Rules of Evidence do not apply in proceedings to determine whether to grant or revoke supervised release. Fed. R. Evid. 1101(d)(3).

**C.    Probable Cause to Believe Mr. Shibley Committed a Crime on Release**

Having reviewed the totality of the circumstances, the Court concludes there is probable cause to believe Mr. Shibley committed a crime while on pretrial release. First, neither party disputes that M.B. was injured, and with good reason: Officer Montgomery observed her injuries on both nights, he took photos of them, and, on the second night, paramedics transported M.B. to the hospital to receive medical treatment. (*See* Dkt. Nos. 25-1 at 2, 25-2 at 2, 27-1, 27-2.)

Second, M.B. told Officer Montgomery that Mr. Shibley assaulted her. (Dkt. Nos. 25-1 at 2, 25-2.) Third, Mr. Shibley and M.B. live together at the residence to which M.B. called the police, nobody else was present when police arrived, nor is there any evidence that anyone else had been at the residence on the nights on which M.B. was injured. (*Id.*) Fourth, Mr. Shibley's behavior after police were called suggests consciousness of guilt: the first night he locked himself in a bedroom and refused to come out while the police were present, and the second night he was found sitting in his car near the residence, even though it was after 1 a.m. on a Tuesday. (*Id.*) Fifth, Officer Montgomery had been called to Mr. Shibley and M.B.'s residence in the past and "they have a history of DV issues." (Dkt. No. 25-1 at 2.) Based on the totality of this evidence, the Court concludes there is probable cause to believe Mr. Shibley assaulted M.B. on September 12, 2020 and September 15, 2020.

### D.    Detention

The presumption of detention for committing a felony on pretrial release does not apply. Mr. Shibley was arrested for assault in the fourth degree under Washington Revised Code section 9A.36.041. (*See* Dkt. No. 25-2 at 3.) Assault in the fourth degree is generally a gross misdemeanor, unless the State proves that the defendant "has two or more prior adult convictions . . . for [certain domestic violence offenses] occurring after July 23, 2017." *See* Wash. Rev. Code § 9A.36.041(2)-(3). There is no evidence in the record showing that Mr. Shibley was convicted of the qualifying offenses within the relevant time period. Therefore, as far as the record shows, the offense Mr. Shibley is alleged to have committed on release is a misdemeanor.

Although the presumption of detention does not apply, the Court concludes that Mr. Shibley should be detained because he is unlikely to abide by any conditions of release that would ensure M.B. and the community's safety. The Court has concluded that there is probable cause to believe Mr. Shibley assaulted M.B. while he was simultaneously on federal supervised release and state probation. (*See* Dkt. No. 1 at 6–7.) The fact that he committed crimes on two nights in a row, even after the police were called to his home, suggests that he is unlikely to

abide by conditions of release necessary to ensure the safety of M.B. and the community.

In addition, the Government has uncovered evidence suggesting that Mr. Shibley violated another condition of his release. When Mr. Shibley was released, he was prohibited from "incurring new credit charges, opening additional lines of credit, or obtaining a loan without approval of [his] U.S. Probation Officer." (Dkt. No. 6 at 2.) In July 2020, while he was on release, Mr. Shibley agreed to purchase some property for $425,000. (Dkt. No. 50-1 at 2.) David Madrid, Mr. Shibley's "commercial real estate broker and occasional property manager," (Dkt. No. 22 at 4), told the Government that Mr. Shibley took out a loan for the property in M.B.'s name, (Dkt. No. 50 at 6), even though she "has no money," has nowhere to live aside from Mr. Shibley's residence, and Mr. Shibley "has supported her financially" over the past few years, (Dkt. No. 22 at 5.) This evidence suggests that Mr. Shibley took out a loan in violation of a condition of his release and attempted to hide that violation by using M.B. as a straw borrower. Although the Court does not rely on this violation to meet the first element for revocation under Section 3148(b)(1)(b), the Court finds that the evidence of this violation is sufficiently compelling for this incident to inform the Court's assessment of whether Mr. Shibley is likely to abide by his conditions of release under Section 3148(b)(2)(B).

## IV.    CONCLUSION

For the foregoing reasons, the Court FINDS that Mr. Shibley is competent, and a formal competency hearing is not necessary. The Court also DENIES Mr. Shibley's motion (Dkt. No. 59) to revoke Magistrate Judge Peterson's detention order.

DATED this 24th day of February 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE