**DUPLICATE**

# FEDERAL DEPOSIT INSURANCE CORPORATION

### W A S H I N G T O N, D. C.

Hereby certifies that the deposits of each depositor in



**CELTIC BANK**

**SALT LAKE CITY**

**UTAH**

are insured to the maximum amount provided by the
Federal Deposit Insurance Act



No: **57056**

In testimony whereof, witness my signature and the seal of the
Corporation this **1ST** day of **MARCH, 2001**

Attest:

EXECUTIVE SECRETARY

CHAIRMAN OF THE BOARD OF DIRECTORS

DOJ-10-0000025209

U.S. v. Shibley
CR20-174 JCC
Government Exhibit No. 211
Admitted _____



# Federal Deposit Insurance Corporation

## 550 17th Street, NW

## WASHINGTON, DC 20429

## Financial Institution Structure Report

**Excerpt From FDIC Records**

| | |
|---|---|
| Institution Name: | Celtic Bank |
| | 268 South State Street, Suite 300 |
| | Salt Lake City, UT 84111 - 0000 |
| Insurance Date: | 03/1/2001 |
| Certificate #: | 57056 |
| Registration Date: | |
| Official Mailing Address: | 268 South State Street, Suite 300 |
| | Salt Lake City, UT 84111 - 0000 |
| Class: | Insured Commercial Banks, State, Not Members of FRS |
| Active: | Active |
| Status: | Historical |
| Former Bank Name(s): | |

---

## ACTION DATE

03/01/2001 - Celtic Bank, Salt Lake City, UT was admitted to membership in the FDIC

06/13/2001 - Main office relocated to 340 East 400 South , Salt Lake City, UT

08/28/2009 - Main office relocated to 340 East 400 South , Salt Lake City, UT

04/09/2012 - Main office relocated to 268 South State Street, Suite 300 , Salt Lake City, UT

EXHIBIT A

DOJ-10-0000025207

**DUPLICATE**

# FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

Hereby certifies that the deposits of each depositor in



**CUSTOMERS BANK**

**PHOENIXVILLE**

**PENNSYLVANIA**

are insured to the maximum amount provided by the

Federal Deposit Insurance Act



No: **34444**

In testimony whereof, witness my signature and the seal of the Corporation this **6TH** day of **APRIL, 2011**

Attest: *Robert E. Feldman*

EXECUTIVE SECRETARY

*Sheila C. Bair*

CHAIRMAN OF THE BOARD OF DIRECTORS

DOJ-10-000025214

U.S. v. Shibley
CR20-174 JCC
Government Exhibit No. 212
Admitted _____

# Federal Deposit Insurance Corporation

## 550 17th Street, NW

## WASHINGTON, DC 20429

## Financial Institution Structure Report

**Excerpt From FDIC Records**

| | |
|---|---|
| Institution Name: | Customers Bank |
| | 99 Bridge  St |
| | Phoenixville, PA 19460 - 0000 |
| Insurance Date: | 06/26/1997 |
| Certificate #: | 34444 |
| Registration Date: | |
| Official Mailing Address: | 513 Kimberton Road |
| | Phoenixville, PA 19460 - 0000 |
| Class: | Insured Commercial or Savings Banks, State, Members FRS |
| Active: | Active |
| Status: | Historical |
| Former Bank Name(s): | New Century Bank |

### ACTION DATE

06/26/1997 - New Century Bank, Phoenixville, PA was admitted to membership in the FDIC

06/30/2002 - Main office relocated to 513 Kimberton Road , Phoenixville, PA

04/06/2011 - Title changed to Customers Bank

04/06/2011 - Main office relocated to 99 Bridge  St , Phoenixville, PA

EXHIBIT A

Run Date:Wed, Oct 20 2021 10:34

DOJ-10-000025212

**DUPLICATE**

# FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

Hereby certifies that the deposits of each depositor in



**TCF NATIONAL BANK**

**SIOUX FALLS**

**SOUTH DAKOTA**

Merged 6-9-2021

are insured to the maximum amount provided by the

Federal Deposit Insurance Act



No: **28330**

In testimony whereof, witness my signature and the seal of the

Corporation this **6TH** day of **APRIL, 2009**

Attest: *Robert E. Feldman*
EXECUTIVE SECRETARY

*Sheila C. Bair*
CHAIRMAN OF THE BOARD OF DIRECTORS

DOJ-10-000025219

U.S. v. Shibley
CR20-174 JCC
Government Exhibit No. 213
Admitted _____



# Federal Deposit Insurance Corporation
## 550 17th Street, NW
## WASHINGTON, DC 20429

## Financial Institution Structure Report

**Excerpt From FDIC Records**

| | |
|---|---|
| Institution Name: | TCF National Bank |
| | 2508 South Louise Avenue |
| | Sioux Falls, SD 57106 - 4331 |
| Insurance Date: | 03/25/1936 |
| Certificate #: | 28330 |
| Registration Date: | |
| Official Mailing Address: | 801 Marquette Avenue Legal Department, Mail Code Exo-01-A |
| | Minneapolis, MN 55402 - 0000 |
| Class: | Insured Commercial Bank, National, Member FRS |
| Active: | Inactive |
| Status: | Current |
| Former Bank Name(s): | TCF Bank Minnesota, fsb |
| | TCF Bank Savings FSB |
| | TCF Banking and Savings, FA |
| | TCF National Bank Minnesota |

## ACTION DATE

06/30/1986 - Title changed to TCF Banking and Savings, FA

09/13/1993 - Title changed to TCF Bank Minnesota, fsb

04/07/1997 - Converted to an insured state member bank

04/07/1997 - Title changed to TCF National Bank Minnesota

04/01/2000 - Title changed to TCF National Bank

04/08/2003 - Main office relocated to 200 Lake Street East , Wayzata, MN

04/06/2009 - Main office relocated to 2508 South Louise Avenue , Sioux Falls, SD

06/09/2021 - Merged under the charter and title of The Huntington National Bank, Columbus, OH

EXHIBIT A

Run Date:Wed, Oct 20 2021 10:36

DOJ-10-0000025217

1

2                                       The Honorable John C. Coughenour

3

4

5                      UNITED STATES DISTRICT COURT FOR THE
                       WESTERN DISTRICT OF WASHINGTON

6                                  AT SEATTLE

7

8 UNITED STATES OF AMERICA.       NO. CR20-174JCC

9                Plaintiff,                   **STIPULATION**

10

11                v.

12 ERIC SHIBLEY.

13               Defendant.

14

15       The United States of America and the Defendant, Eric Shibley, hereby stipulate

16 and agree to the following facts.

17      1.      On June 10, 2020, Defendant Eric Shibley was served with subpoenas for

18             documents from a federal grand jury sitting in the District of Columbia.

19             The subpoenas requested documents related to the business operations of

20             ES1 LLC, SS1 LLC, The A Team Holdings LLC, Dituri Construction LLC

21             and Eric R Shibley MD PLLC.

22      2.      Working through his attorney, Eric Shibley provided the following

23             documents in response to the subpoena via email:

24          a.   Certificates of Formation for ES1 LLC. SS1 LLC, The A Team

25               Holdings LLC, and Eric R Shibley MD PLLC;

26

27 STIPULATION - 1
*U.S. v. Eric Shibley*, CR20-174JCC

U.S. v. Shibley
CR20-174 JCC
Government Exhibit No. 225
Admitted _____

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE. WASHINGTON 98101
(206) 553-7970

b. Operating Agreements for ES1 LLC, SS1 LLC, The A Team Holdings LLC, Dituri Construction LLC and Eric R Shibley MD PLLC;

c. A Purchase Agreement for Dituri Construction LLC, dated May 9, 2020;

d. Internal Revenue Service Form W-3 (Transmittal of Wage and Tax Statements) for SS1 LLC dated April 22, 2020;

e. Internal Revenue Service Form W-3 (Transmittal of Wage and Tax Statements) for ES1 LLC dated April 22, 2020; and

f. Internal Revenue Service Form W-3 (Transmittal of Wage and Tax Statements) for Eric R. Shibley MD PLLC dated April 24, 2020.

g. SS1 LLC Form 941 Employer's Quarterly Federal Tax Return (4th Quarter 2019);

h. A Team Holding, LLC Form 941 Employer's Quarterly Federal Tax Return (4th Quarter 2019);

i. SS1 LLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

j. A Team Holding, LLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

k. Dituri Construction1 LLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

l. SFC LLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

m. Eric Shibley MD, PLLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

n. ES1 LLC Form 941 Employer's Quarterly Federal Tax Return (1st Quarter 2020);

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

o.  Certificate of Existence for SFC LLC;

p.  Business Information for SFC LLC;

q.  Operating Agreement for SFC LLC;

r.  IRS Form W-3 form (Transmittal of Wage and Tax Statement) for SFC LLC, dated April 24, 2020;

s.  Photograph of Washington State Driver License of Eric Shibley;

t.  PPP Borrower Application Form for Dituri Construction LLC, dated June 4, 2020;

u.  PPP Borrower Application Form for ES1 LLC, dated April 15, 2020;

v.  PPP Borrower Application Form for The A Team Holding LLC, dated April 15, 2020;

w.  PPP Borrower Application Form for SS1 LLC, dated April 20, 2020;

x.  PPP Borrower Application Form for Eric Shibley MD PLLC, dated April 24, 2020;

y.  PPP Borrower Application Form for SFC LLC, dated April 25, 2020;

z.  Wells Fargo bank statements for Eric Shibley MD PLLC, acct #3220067247;

aa. Wells Fargo bank statements for ES1 LLC, acct #7621559124;

bb. Wells Fargo bank statements for ES1 LLC, acct #3365602378;

cc. Wells Fargo bank statements for Eric Shibley MD PLLC, acct #6621617262;

dd. Redacted email string re: SS1 LLC loan application; and

ee. Eric Shibley email to Mario Davis, dated June 25, 2020.

3.   Eric Shibley produced no other documents in response to the subpoenas.

STIPULATION - 3
*U.S. v. Eric Shibley*, CR20-174JCC

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.   The production of these documents occurred in the Western District of
     Washington when they were sent via email.

5.   All of the documents listed in Paragraph 2 are attached to this stipulation.


DATED this __14__ day of __June__, 2021.


By: _____
Laura Connelly
Brian Werner
U.S. Department of Justice


By: _____
Defendant Eric Shibley


By: _____
Michael C. Nance, WSBA #13933
Attorney for Defendant Eric Shibley


STIPULATION - 4
*U.S. v. Eric Shibley*, CR20-174JCC

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



# UNITED STATES OF AMERICA

# The State of Washington

## Secretary of State

**I, KIM WYMAN,** Secretary of State of the State of Washington and custodian of its seal, hereby issue this

### CERTIFICATE OF FORMATION

to

### ES1 LLC

a/an WA Limited Liability Company. Charter documents are effective on the date indicated below.

Date: 10/25/2012

UBI Number: 603-248-905



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital

Kim Wyman, Secretary of State

U.S. v. Shibley
CR20-174 JCC
Government Exhibit No. 225
Admitted _____

Date Issued:  6/19/2015

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  11-01-2012

Employer Identification Number:
███ 5849

Form:  SS-4

Number of this notice:  CP 575 G

ES1 LLC
ERIC R SHIBLEY SOLE MBR
4425 MERIDIAN AVE N 6
MARYSVILLE, WA  98271

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

        Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ███ 5849.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

        When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

        A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

        To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

   *  Keep a copy of this notice in your permanent records.  **This notice is issued only
      one time and the IRS will not be able to generate a duplicate copy for you.**

   *  Use this EIN and your name exactly as they appear at the top of this notice on all
      your federal tax forms.

   *  Refer to this EIN on your tax-related correspondence and documents.

        If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.  Thank you for your cooperation.

(IRS USE ONLY)     575G           11-01-2012  ES1L  O  9999999999  SS-4

Keep this part for your records.        CP 575 G (Rev. 7-2007)

------------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                              CP 575 G
correct any errors in your name or address.
                                                                  9999999999

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  11-01-2012
(     )        -                           EMPLOYER IDENTIFICATION NUMBER:  ████5849
                                           FORM:  SS-4              NOBOD


INTERNAL REVENUE SERVICE                   ES1 LLC
CINCINNATI   OH    45999-0023              ERIC R SHIBLEY SOLE MBR
ldldlddddddddddllldddddlldl                4425 MERIDIAN AVE N 6
                                           MARYSVILLE, WA  98271

Page 1 of 2



**STATE OF WASHINGTON
SECRETARY OF STATE**

**Limited Liability Company**
*See attached detailed instructions*

☐ Filing Fee $180.00

☒ Filing Fee with Expedited Service $230.00

*This Box For Office Use Only*

10/25/12
22/25/12 7284479.
002 2284479
$230.00 R
tid: 2411830

┌─────────────────────────┐
│         FILED           │
│   SECRETARY OF STATE    │
│       SAM REED          │
│                         │
│    OCTOBER 25, 2012     │
│                         │
│   STATE OF WASHINGTON   │
└─────────────────────────┘

UBI Number:     603 248 905

# CERTIFICATE OF FORMATION
Chapter 25.15 RCW

**ARTICLE 1**

NAME OF LIMITED LIABILITY COMPANY:
ES1 LLC

*(Must contain one of the following designations: Limited Liability Company, Limited Liability Co or one of these abbreviations: L.L.C. or LLC)*

**ARTICLE 2**

ADDRESS OF THE PRINCIPAL PLACE OF BUSINESS:
*Street Address* 4425 Meridian Ave. N. #6   *City* Marysville   *State* WA   *Zip* 98271
*PO Box* _____   *City* _____   *State* _____   *Zip* _____

**ARTICLE 3**

EFFECTIVE DATE OF FORMATION: *(Please check one of the following)*

☒   Upon filing by the Secretary of State

☐   Specific Date: _____ *(Specified effective date must be within 90 days AFTER the Certificate of Formation has been filed by the Office of the Secretary of State)*

**ARTICLE 4**

TENURE: *(Please check one of the following and indicate the date if applicable)*

☒   Perpetual existence

☐   Specific term of existence _____ *(Number of years or date of termination)*

Washington LLC - Formation        Washington Secretary of State        Revised 07/10

002 2284479
$230.00 R
tid: 2411830

*This Box For Office Use Only*

FILED
SECRETARY OF STATE
SAM REED

OCTOBER 25, 2012

STATE OF WASHINGTON

**Page 1 of 2**



**STATE OF WASHINGTON
SECRETARY OF STATE**

## Limited Liability Company
*See attached detailed instructions*

☐ Filing Fee $180.00

☒ Filing Fee with Expedited Service $230.00

UBI Number:   603 248 905

# CERTIFICATE OF FORMATION
Chapter 25.15 RCW

### ARTICLE 1

NAME OF LIMITED LIABILITY COMPANY:
ES1 LLC

*(Must contain one of the following designations: Limited Liability Company, Limited Liability Co or one of these abbreviations: L.L.C. or LLC)*

### ARTICLE 2

ADDRESS OF THE PRINCIPAL PLACE OF BUSINESS:

Street Address 4425 Meridian Ave. N. #6      City Marysville      State WA      Zip 98271

PO Box _____      City _____      State _____      Zip _____

### ARTICLE 3

EFFECTIVE DATE OF FORMATION: *(Please check one of the following)*

☒   Upon filing by the Secretary of State

☐   Specific Date: _____ *(Specified effective date must be within 90 days AFTER the Certificate of Formation has been filed by the Office of the Secretary of State)*

### ARTICLE 4

TENURE: *(Please check one of the following and indicate the date if applicable)*

☒   Perpetual existence

☐   Specific term of existence _____ *(Number of years or date of termination)*

---

Washington LLC - Formation      Washington Secretary of State      Revised 07/10

Page 2 of 2

---

## ARTICLE 5

THE LIMITED LIABILITY COMPANY IS MANAGED BY:     ☒ Members     or     ☐ Managers
*(see instructions)*

---

## ARTICLE 6

NAME AND ADDRESS OF THE WASHINGTON STATE REGISTERED AGENT:

Name: Eric R. Shibley

Physical Location Address *(required)*:

█████████████████

City Marysville _____ WA Zip Code ████████

Mailing or Postal Address *(optional)*:

City _____ WA Zip Code _____

**CONSENT TO SERVE AS REGISTERED AGENT:**
I consent to serve as Registered Agent in the State of Washington for the above named Limited Liability Company. I understand it will be my responsibility to accept Service of Process on behalf of the Limited Liability Company; to forward mail to the Limited Liability Company; and to immediately notify the Office of the Secretary of State if I resign or change the Registered Office Address.

X _____       Eric R. Shibley           10/22/2012
   **Signature of Registered Agent**        Printed Name              Date

---

## ARTICLE 7

NAME, ADDRESS AND SIGNATURE OF EACH EXECUTOR:
*(If necessary, attach additional names, addresses and signatures)*

Name: Karla Figueroa

Address: ████████████ City _____ Glendale _____ State_ CA _ Zip Code ████

This document is hereby executed under penalties of perjury, and is, to the best of my knowledge, true and correct.

X _____       Karla Figueroa          10/22/2012   323-962-8600, ext. 883
   **Signature of Executor**            Printed Name              Date         Phone

Name: _____

Address: _____ City _____ State _____ Zip Code _____

This document is hereby executed under penalties of perjury, and is, to the best of my knowledge, true and correct.

X _____
   **Signature of Executor**            Printed Name              Date         Phone

---

Washington LLC - Formation          Washington Secretary of State          Revised 07/10

## Attachment to Articles of Organization

### For

## ES1 LLC

The personal liability of the members of the Limited Liability Company for monetary damages for breach of fiduciary duty shall be eliminated to the fullest extent permissible under Washington law. The Limited Liability Company is authorized to indemnify its members and managers to the fullest extent permissible under Washington law.



UNITED STATES OF AMERICA

# The State of Washington

## Secretary of State

I, KIM WYMAN, Secretary of State of the State of Washington and custodian of its seal, hereby issue this

### CERTIFICATE OF FORMATION

to

**SS1 LLC**

a/an WA Limited Liability Company. Charter documents are effective on the date indicated below.

Date: 10/3/2017

UBI Number: 604-175-163



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital

Kim Wyman, Secretary of State

Date Issued: 10/9/2017

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH   45999-0023

Date of this notice:  04-20-2020

Employer Identification Number:
█████509

Form:  SS-4

Number of this notice:  CP 575 A

SS1
4700 36TH AVE SW
SEATTLE, WA 98126

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ████509.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                    Form 941             04/30/2020
                    Form 940             01/31/2021
                    Form 1120            04/15/2021

If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods.*

We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election.*  See Form 8832 and its instructions for additional information.

### IMPORTANT INFORMATION FOR S CORPORATION ELECTION:

If you intend to elect to file your return as a small business corporation, an
election to file a Form 1120-S must be made within certain timeframes and the
corporation must meet certain tests.  All of this information is included in the
instructions for Form 2553, *Election by a Small Business Corporation.*

(IRS USE ONLY)    575A              04-20-2020  SS1   B  9999999999  SS-4

If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945, CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a Welcome Package shortly, which includes instructions for making your deposits electronically through the Electronic Federal Tax Payment System (EFTPS). A Personal Identification Number (PIN) for EFTPS will also be sent to you under separate cover. Please activate the PIN once you receive it, even if you have requested the services of a tax professional or representative. For more information about EFTPS, refer to Publication 966, *Electronic Choices to Pay All Your Federal Taxes*. If you need to make a deposit immediately, you will need to make arrangements with your Financial Institution to complete a wire transfer.

The IRS is committed to helping all taxpayers comply with their tax filing obligations. If you need help completing your returns or meeting your tax obligations, Authorized e-file Providers, such as Reporting Agents (payroll service providers) are available to assist you. Visit the IRS Web site at www.irs.gov for a list of companies that offer IRS e-file for business products and services. The list provides addresses, telephone numbers, and links to their Web sites.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.** You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub.

Your name control associated with this EIN is SS1. You will need to provide this information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

(IRS USE ONLY)    575A              04-20-2020   SS1   B   9999999999   SS-4

Keep this part for your records.          CP 575 A (Rev. 7-2007)

-------------------------------------------------------------------------------

Return this part with any correspondence                              CP 575 A
so we may identify your account.  Please
correct any errors in your name or address.                        9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  04-20-2020
(     )        -                            EMPLOYER IDENTIFICATION NUMBER:      7509
                                            FORM:  SS-4              NOBOD

INTERNAL REVENUE SERVICE                    SS1
CINCINNATI  OH    45999-0023                4700 36TH AVE SW
|||||||||||||||||||||||||||||||||||||||     SEATTLE, WA  98126

Operating Agreement

## SS1 LLC,
### a Washington Limited Liability Company

THIS OPERATING AGREEMENT of SS1LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

The Members have formed the Company as a Washington limited liability company under the Washington Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Washington Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, decreased by any distributions made by the Company to such Member, and otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

" Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Manager" means each Person who has authority to manage the business and affairs of the Company pursuant to this Agreement; such Persons are listed on Exhibit B, as may be updated from time to time according to the terms of this Agreement. A Manager may be, but is not required to be, a Member.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be eJ1titled as provided in this Agreement and under the Washington Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.     If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.    If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)    the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

(2)    the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

Percentage Interest= $\dfrac{MU}{TU}$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1  Initial Capital Contributions . The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Membe1's name on Exhibit A to become a Member of the Company.

2.2  Subsequent Capital Contributions. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3  Additional Members.

A.      With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Managers deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4  Capital Accounts. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  Interest. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  Limited Liability; No Authority. A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Washington Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  Allocations. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

*I'\\*

3.2  Distributions. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Managers in accordance with the Washington Limited Liability Company Act.

3.3  Limitations on Distributions. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.     The Company would be unable to pay its debts as they become due in the usual course of business; or

B.     The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

## ARTICLE 4: MANAGEMENT

4.1  Management.

A.     Generally. Subject to the terms of this Agreement and the Washington Limited Liability Company Act, the business and affairs of the Company will be managed by the Board of Managers, as further described below. The Members initially nominate and elect the Person(s) set forth on Exhibit B to serve as the Manager(s) of the Company. The Managers will act under the direction of the Members and may be elected or removed at any time, for any reason or no reason, by the Members holding a majority of the Voting Interest of the Company. Exhibit B must be amended to reflect any changes in Managers.

B.     Approval and Action. Unless greater or other authorization is required pursuant to this Agreement or under the Washington Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by a majority of Managers, to constitute the act of the Company or serve to bind the Company, but if the Managers cannot reach a majority vote, the dispute will be submitted to the Members to be resolved by the affirmative vote of the Members holding at least a majority of the Voting Interest of the Company. With such approval, the signature of any Managers authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved.

-5-

Without such approval, no Managers acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

    C.    Certain Decisions Requiring Greater Authorization. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

        (i)    A material change in the purposes or the nature of the Company's business;

        (ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

        (iii)    The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and

        (iv)    The amendment of this Agreement.

    4.2  Meetings of Managers. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference call, or by any other means permitted under the Washington Limited Liability Company Act. In addition, Company actions requiring a vote may be carried out without a meeting if all of the Managers consent in writing to approve the action.

    4.3  Officers. The Managers are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Managers determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Managers; or (b) the officer is dismissed or terminated by the Managers, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Managers, and may be terminated, at any time and for any reason, by the Managers.

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1  Accounts. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2  Records. The Managers will keep or cause the Company to keep the following business records.

      (i)    An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

      (ii)   A copy of the Company's federal, state, and local tax in.formation and income tax returns and reports, if any, for the six most recent taxable years;

      (iii)  A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

      (iv)  An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3  Income Tax Returns. Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and rep or ts and a copy of the Company's federal, state, and local tax information or income tax retun1S and reports for such year.

5.4  Subchapter S Election. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

-7-

5.5  Tax Matters Member. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6  Banking. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Managers are authorized to establish such accounts and complete, sign, and de live r any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP - VOTING AND MEETINGS

Members and Voting Rights. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Washington Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c)) or required under the Washing ton Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

Meetings of Members. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Washington Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Washington Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

Withdrawal. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amoU11t equal to such Member's Capital Account.

Restrictions on Transfer; Admission of Transferee. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

Dissolution . The Company will be dissolved upon the first to occur of the following events:

The unanimous agreement of all Members in a consent in writing to dissolve the Company;

Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

At any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

-9-

"

Company Agent seeking indemnification) or a majority of the Managers that are not seeking indemnification, as the case may be. Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 Notice. (a)-Any notices (including requests, demands, or other communications ) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 Entire Agreement; Amendment. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Washington Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members except as otherwise required or permitted by the Washington Limited Liability Company Act.

10.3 Governing Law; Severability. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining

EXHIBIT A
**MEMBERS**

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit Accurate  and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric Ryan Shibley<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | | 100% |

**IN WITNESS WHEREOF** the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 10/03/2017

_____
Signature of Eric Ryan Shibley



# UNITED STATES OF AMERICA

# The State of Washington

## Secretary of State

I, KIM WYMAN, Secretary of State of the State of Washington and custodian of its seal, hereby issue this

### CERTIFICATE OF FORMATION

to

### THE A TEAM HOLDINGS LLC

A WA LIMITED LIABILITY COMPANY, effective on the date indicated below.

Effective Date: 12/10/2018
UBI Number: 604 330 288



Given under my hand and the Seal of the State
of Washington at Olympia, the State Capital

Kim Wyman, Secretary of State

Date Issued: 12/10/2018



Office of the Secretary of State

Corporations & Charities Division

(360) 725 - 0377 | www.sos.wa.gov/corps

801 Capitol Way S, Olympia, WA 98504-0234

This Box For Office Use Only

**FILED**
Secretary of State
State of Washington
Date Filed: 12/10/2018
Effective Date: 12/10/2018
UBI No: 604 330 288

☐ Filing Fee $180

☒ Filing Fee with Expedited Service  $230

## Certificate of Formation
## Limited Liability Company
## RCW 25.15

---

Do you already have a UBI Number? (Check one) ☐ Yes  ☒ No   If Yes, provide UBI # _____

If No, a new UBI# will be issued to you upon successful completion of the filing.

If you have previously filed with another state agency (for example, the Department of Revenue, the Department of Labor and Industries, or the Employment Security Department), you may already have a 9 digit UBI Number that you can enter above. Please do not enter the UBI Number of a Sole Proprietorship or General Partnership. If you do not have a UBI Number, please select "no" above and continue with the filing.

**ENTITY NAME :**

Does the entity have a name reserved?  (Check one) ☐ Yes  ☒ No

If Yes, provide the Name Reservation Number and Name   If No, provide only the name

Reservation Number: _____

Name: The A Team Holdings LLC

**For name requirements review the following RCW(s): Limited Liability Company - RCW 23.95.305 (5)**

**PERIOD OF DURATION :** Please check **ONE** of the following

☒ This Company shall have a perpetual duration (default)  ☐ This Company shall have a duration of _____ years.

☐ This Company shall expire on _____

**EFFECTIVE DATE:** Please check **ONE** of the following:

☒ Date of filing   ☐ Specify a Date _____     cannot be more than 90 days following received date

---

Certificate of Formation - Limited Liability Company
Pg 1 | Revised 7.2018

Page: 1 of 5

Work Order #: 2018120700583230 - 1
Received Date: 12/07/2018
Amount Received: $230.00

**REGISTERED AGENT:**

Is the Registered Agent a Commercial Registered Agent?  ☐ Yes  ☒ No

**If Yes**, provide the name of the Commercial Registered Agent:

A Commercial Registered Agent is an entity or individual that is registered with the Office of the Secretary of State to receive legal documents on behalf of a corporation. A Commercial Registered Agent has the entities/individual's address on record with the office.

**A Registered Agent consent is still required for a Commercial Registered Agent located below.**

If No, please continue below

Please complete **ONE** type of Registered Agent below, be sure to include the name below the checked box. Then continue to provide the required street address. Mailing address if needed.

| ☐  Individual | ☒  Entity | ☐  Office or Position |
|---|---|---|
| | United States Corporation Agents, Inc. | |
| First and last name of a Non-commercial Registered Agent. (Any person not registered as a Commercial Registered Agent.) | Name of a Non-commercial Registered Agent. (Any business not registered as a Commercial Registered Agent.) | List the Office or Position serves as agent. (Only if using the specific office or position as the registered agent, no matter who holds the position like: Secretary, Member or Treasurer.) |

Phone:  866-698-0052                    Email:  rimanagement@legalzoom.com

| **Registered Agent Street Address (required)** (Must be a physical address No PO Box or PMB) | **Registered Agent Mailing Address (optional)** ☐ Check if mailing address is the same as street address |
|---|---|
| Country: **United States**     State: **Washington** | Country: **United States**     State: **Washington** |
| Address : 14205 SE 36th Street, Suite 100 | Address : 14205 SE 36th Street, Suite 100 - 288 |
| Zip:  98006     City:  Bellevue | Zip  98006     City:  Bellevue |

**CONSENT TO SERVE AS REGISTERED AGENT - REQUIRED FOR ALL TYPES**

I hereby consent to serve as Registered Agent in the State of Washington for the named entity. I understand it will be my responsibility to accept service of process, notices, and demands on behalf of the entity; to forward mail to the entity; and to immediately notify the Office of the Secretary of State if I resign or change the Registered Office Address.

_____        Cheyenne Moseley, Assistant Secretary        12/05/2018

Signature of Registered Agent                Printed Name/Title                Date

Certificate of Formation - Limited Liability Company
Pg 2 | Revised 7.2018

Page: 2 of 5

Work Order #: 2018120700583230 - 1
Received Date: 12/07/2018
Amount Received: $230.00

| **Principal Office Street Address**<br>(Must be a physical address; No PO Box or PMB) | **Mailing Address** (optional)<br>☐ Check if mailing address is the same as street address. |
|---|---|
| Address: 4700 36th Ave SW | Address: |

| | |
|---|---|
| Zip: 98126    City: Seattle | Zip:        City: |
| State: WA    Country: USA | State:        Country: |

Phone: (optional) _____   Email: (optional) _____

**RETURN ADDRESS FOR THIS FILING:** *(Optional)*

This address will be sent document(s) regarding this specific filing in addition to document(s) being sent to the Registered Agent's street/mailing address.

Attention to: Cheyenne Moseley, Legalzoom.com, Inc.

Email: onlinefilings@legalzoom.com

Address: 101 N Brand Blvd., 11th Floor

City Glendale        State CA        Zip 91203

**EXECUTOR INFORMATION:**

Name, address, and signature required. Attach additional sheets if necessary.

This record is hereby executed under penalties of perjury, and is, to the best of my knowledge, true and correct.

Address: 101 N. Brand Blvd., 11th Floor

City Glendale        State CA        Zip 91203

| | | |
|---|---|---|
| | Cheyenne Moseley<br>Assistant Secretary, LegalZoom.com, Inc. | 12/05/2018 |
| **Signature of Executor** | **Printed Name/Title** | **Date** |

Certificate of Formation - Limited Liability Company
Pg 3 | Revised 7.2018

Page: 3 of 5

Work Order #: 2018120700583230 - 1
Received Date: 12/07/2018
Amount Received: $230.00

Attachment to Articles of Organization

For

The A Team Holdings LLC

The personal liability of the members of the Limited Liability Company for monetary damages for breach of fiduciary duty shall be eliminated to the fullest extent permissible under Washington law. The Limited Liability Company is authorized to indemnify its members and managers to the fullest extent permissible under Washington law.

Work Order #: 2018120700583230 - 1
Received Date: 12/07/2018
Amount Received: $230.00

Attachment to Articles of Organization

For

The A Team Holdings LLC

The personal liability of the members of the Limited Liability Company for monetary damages for breach of fiduciary duty shall be eliminated to the fullest extent permissible under Washington law. The Limited Liability Company is authorized to indemnify its members and managers to the fullest extent permissible under Washington law.

Work Order #: 201812070058323 0 - 1
Received Date: 12/07/2018
Amount Received: $230.00



James M. Dolliver Building
801 Capitol Way South • PO Box 40234
Olympia, WA 98504-0234
Tel: 360.725.0377
www.sos.wa.gov/corps

**Office of the Secretary of State**
Corporations & Charities Division

Congratulations:

You have completed the initial filing to create a new business entity. **The next step in opening your new business is to complete a Business License Application.** You may have completed this step already. The Business License Application can be completed online or downloaded at: http://www.bls.dor.wa.gov/.

If you have any questions about the Business License Application, or would like a Business License Application package mailed to you, please call the Department of Revenue at 1-800-451-7985.

If you have questions about annual reports or registered agent requirements, please contact the Corporations Division at 360-725-0377 or visit our website at: http://www.sos.wa.gov/corps.

UNITED STATES CORPORATION AGENTS, INC
14205 SE 36TH ST STE 100-288
BELLEVUE WA 98006-1596

**IMPORTANT**

To keep your filing status active and avoid administrative dissolution, you must:

1. **File an Initial Report** within 120 days of the date your corporation or limited liability company (LLC) was filed. The date of filing is stated on your certificate. Please go online to file your initial report at www.sos.wa.gov/ccfs.

2. **File an Annual Report** each year before the anniversary of the filing date for the entity. The registered agent will be sent notice of the Annual Report requirement. It is the corporation or LLC's responsibility to file the report on time even if no notice is received.

3. **Maintain a Registered Agent** and registered office in this state. You must file a statement of change or designation of registered agent if there are any changes in your registered agent, agent's address, or registered office address. Failure to file changes with the Corporations Division will result in misrouted mail, and possibly lead to administrative dissolution.

If you have questions please contact our office at: corps@sos.wa.gov, 360-725-0377, or visit our website www.sos.wa.gov/corps.

**Form SS-4**
(Rev. December 2017)
Department of the Treasury
Internal Revenue Service

**Application for Employer Identification Number**
(For use by employers, corporations, partnerships, trusts, estates, churches, government agencies, Indian tribal entities, certain individuals, and others.)
► Go to www.irs.gov/FormSS4 for instructions and the latest information.
► See separate instructions for each line.   ► Keep a copy for your records.

OMB No. 1545-0003

EIN ▮▮▮▮7088

*(left margin: EIN OBTAINED    530502156 - 02)*

| | | |
|---|---|---|
| **1** Legal name of entity (or individual) for whom the EIN is being requested | | |

The A Team Holdings LLC

**2** Trade name of business (if different from name on line 1)

**3** Executor, administrator, trustee, "care of" name

**4a** Mailing address (room, apt., suite no. and street, or P.O. box)
4700 36th Ave SW

**5a** Street address (if different) (Do not enter a P.O. box.)

**4b** City, state, and ZIP code (if foreign, see instructions)
Seattle, WA 98126

**5b** City, state, and ZIP code (if foreign, see instructions)

**6** County and state where principal business is located
King, WA

**7a** Name of responsible party
Eric Shibley

**7b** SSN, ITIN, or EIN
▮▮▮-5264

**8a** Is this application for a limited liability company (LLC) (or a foreign equivalent)? ☑ Yes ☐ No

**8b** If 8a is "Yes," enter the number of LLC members ► 1

**8c** If 8a is "Yes," was the LLC organized in the United States? ☑ Yes ☐ No

**9a** Type of entity (check only one box). Caution. If 8a is "Yes," see the instructions for the correct box to check.
☐ Sole proprietor (SSN)
☐ Partnership
☐ Corporation (enter form number to be filed) ►
☐ Personal service corporation
☐ Church or church-controlled organization
☐ Other nonprofit organization (specify) ►
☑ Other (specify) ► Disregarded Entity - Single Member LLC
☐ Estate (SSN of decedent)
☐ Plan administrator (TIN)
☐ Trust (TIN of grantor)
☐ Military/National Guard   ☐ State/local government
☐ Farmers' cooperative   ☐ Federal government
☐ REMIC   ☐ Indian tribal governments/enterprises
Group Exemption Number (GEN) if any ►

**9b** If a corporation, name the state or foreign country (if applicable) where incorporated — State / Foreign country

**10** Reason for applying (check only one box)
☑ Started new business (specify type) ► Real Estate
☐ Hired employees (Check the box and see line 13.)
☐ Compliance with IRS withholding regulations
☐ Other (specify) ►
☐ Banking purpose (specify purpose) ►
☐ Changed type of organization (specify new type) ►
☐ Purchased going business
☐ Created a trust (specify type) ►
☐ Created a pension plan (specify type) ►

**11** Date business started or acquired (month, day, year). See instructions.
12/10/2018

**12** Closing month of accounting year  December

**13** Highest number of employees expected in the next 12 months (enter -0- if none). If no employees expected, skip line 14.

| Agricultural | Household | Other |
|---|---|---|
| 0 | 0 | 0 |

**14** If you expect your employment tax liability to be $1,000 or less in a full calendar year and want to file Form 944 annually instead of Forms 941 quarterly, check here. (Your employment tax liability generally will be $1,000 or less if you expect to pay $4,000 or less in total wages.) If you do not check this box, you must file Form 941 for every quarter. ☐

**15** First date wages or annuities were paid (month, day, year). Note: If applicant is a withholding agent, enter date income will first be paid to nonresident alien (month, day, year). N/A

**16** Check one box that best describes the principal activity of your business.
☐ Construction ☐ Rental & leasing ☐ Transportation & warehousing ☐ Accommodation & food service ☐ Wholesale-other ☐ Retail
☑ Real estate ☐ Manufacturing ☐ Finance & insurance ☐ Health care & social assistance ☐ Wholesale-agent/broker ☐ Other (specify) ►

**17** Indicate principal line of merchandise sold, specific construction work done, products produced, or services provided.
Property development

**18** Has the applicant entity shown on line 1 ever applied for and received an EIN? ☐ Yes ☑ No
If "Yes," write previous EIN here ►

**Third Party Designee**
Complete this section only if you want to authorize the named individual to receive the entity's EIN and answer questions about the completion of this form.
Designee's name: Cheyenne Moseley
Address and ZIP code: 101 N. Brand Ave., 10th Floor, Glendale, CA 91203
Designee's telephone number (include area code): (800) 773-0888 x5208
Designee's fax number (include area code): (323) 962-0227

Under penalties of perjury, I declare that I have examined this application, and to the best of my knowledge and belief, it is true, correct, and complete.
Name and title (type or print clearly) ► Eric Shibley, Member
Applicant's telephone number (include area code): (206) 771-7868
Applicant's fax number (include area code):

Signature ►     Date ►

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 16055N   Form **SS-4** (Rev. 12-2017)



 **IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI   OH   45999-0023

Date of this notice:   02-07-2019

Employer Identification Number:
███████7088

Form:  SS-4

Number of this notice:  CP 575 A

A TEAM HOLDINGS LLC
ERIC SHIBLEY SOLE MBR
4700 36TH AVE SW
SEATTLE, WA  98126

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ███████7088.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                         Form 720                        02/07/2019

After our review of your information, we have determined that you have not filed
tax returns for the above-mentioned tax period(s) dating as far back as 2019.   Please
file your return(s) by 02/22/2019.  If there is a balance due on the return(s),
penalties and interest will continue to accumulate from the due date of the return(s)
until it is filed and paid.  If you were not in business or did not hire any employees
for the tax period(s) in question, please file the return(s) showing you have no
liabilities.

If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods.*

We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election.*  See Form 8832 and its instructions for additional information.

(IRS USE ONLY)     575A          02-07-2019  ATEA  B  9999999999  SS-4

 

 

    If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945,
CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a
Welcome Package shortly, which includes instructions for making your deposits
electronically through the Electronic Federal Tax Payment System (EFTPS).  A Personal
Identification Number (PIN) for EFTPS will also be sent to you under separate cover.
Please activate the PIN once you receive it, even if you have requested the services of a
tax professional or representative.  For more information about EFTPS, refer to
Publication 966, *Electronic Choices to Pay All Your Federal Taxes*.  If you need to
make a deposit immediately, you will need to make arrangements with your Financial
Institution to complete a wire transfer.

    The IRS is committed to helping all taxpayers comply with their tax filing
obligations.  If you need help completing your returns or meeting your tax obligations,
Authorized e-file Providers, such as Reporting Agents (payroll service providers) are
available to assist you.  Visit the IRS Web site at www.irs.gov for a list of companies
that offer IRS e-file for business products and services.  The list provides addresses,
telephone numbers, and links to their Web sites.

    To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS**:

    *  Keep a copy of this notice in your permanent records.  **This notice is issued only
       one time and the IRS will not be able to generate a duplicate copy for you.**  You
       may give a copy of this document to anyone asking for proof of your EIN.

    *  Use this EIN and your name exactly as they appear at the top of this notice on all
       your federal tax forms.

    *  Refer to this EIN on your tax-related correspondence and documents.

    If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

    Your name control associated with this EIN is ATEA.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

    Thank you for your cooperation.

(IRS USE ONLY)    575A            02-07-2019   ATEA  B  9999999999  SS-4

                        Keep this part for your records.        CP 575 A (Rev. 7-2007)

-----------------------------------------------------------------------------------------

    Return this part with any correspondence
    so we may identify your account.  Please                        CP 575 A
    correct any errors in your name or address.
                                                                9999999999

    Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  02-07-2019
    (     )      -                             EMPLOYER IDENTIFICATION NUMBER:  ████7088
    _____   _____                 FORM:  SS-4            NOBOD

    INTERNAL REVENUE SERVICE                         A TEAM HOLDINGS LLC
    CINCINNATI  OH   45999-0023                      ERIC SHIBLEY SOLE MBR
    հիմնականարկություն                                4700 36TH AVE SW
                                                     SEATTLE, WA  98126

Operating Agreement

Dituri Construction  LLC,
a Washington Limited Liability Company


THIS OPERATING AGREEMENT Dituri Construction  LLC of (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

      A.      The Members have formed the Company as a Washington limited liability company under the Washington Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

      B.      The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.


ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Washington Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this agreement.

" Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Manager" means each Person who has authority to manage the business and affairs of the Company pursuant to this Agreement; such Persons are listed on Exhibit B, as may be updated from time to time according to the terms of this Agreement. A Manager may be, but is not required to be, a Member.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified i..n this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be en1titled as provided in this agreement and under the Washington Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

-2-

B.     If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)     the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

(2)     the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).
Percentage Interest $= \dfrac{MU}{TU}$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITIONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1  Initial Capital Contributions . The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Membe1's name on Exhibit A to become a Member of the Company.

2.2  Subsequent Capital Contributions. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

-3-

2.3   Additional Members.

A.      With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Managers deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4   Capital Accounts. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5   Interest. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6   Limited Liability; No Authority. A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Washington Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1   Allocations. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

*I'\*

3.2  Distributions. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Managers in accordance with the Washington Limited Liability Company Act.

3.3  Limitations on Distributions. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.     The Company would be unable to pay its debts as they become due in the usual course of business; or

B.     The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

ARTICLE 4: MANAGEMENT

4.1  Management.

A.     Generally. Subject to the terms of this Agreement and the Washington Limited Liability Company Act, the business and affairs of the Company will be managed by the Board of Managers, as further described below. The Members initially nominate and elect the Person(s) set forth on Exhibit B to serve as the Manager(s) of the Company. The Managers will act under the direction of the Members and may be elected or removed at any time, for any reason or no reason, by the Members holding a majority of the Voting Interest of the Company. Exhibit B must be amended to reflect any changes in Managers.

B.     Approval and Action. Unless greater or other authorization is required pursuant to this Agreement or under the Washington Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by a majority of Managers, to constitute the act of the Company or serve to bind the Company, but if the Managers cannot reach a majority vote, the dispute will be submitted to the Members to be resolved by the affirmative vote of the Members holding at least a majority of the Voting Interest of the Company. With such approval, the signature of any Managers authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved.

-5-

/\

without such approval, no Managers acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.    Certain Decisions Requiring Greater Authorization. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

(i)    A material change in the purposes or the nature of the Company's business;

(ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

(iii)    The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and

(iv)    The amendment of this Agreement.

4.2    Meetings of Managers. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference call, or by any other means permitted under the Washington Limited Liability Company Act. In addition, Company actions requiring a vote may be carried out without a meeting if all of the Managers consent in writing to approve the action.

4.3    Officers. The Managers are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Managers determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Managers; or (b) the officer is dismissed or terminated by the Managers, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Managers, and may be terminated, at any time and for any reason, by the Managers.

-6-

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1   Accounts. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2 Records . The Managers will keep or cause the Company to keep the following business records.

(i}      An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

(ii)     A copy of the Company's federal, state, and local tax information and income tax returns and reports, if any, for the six most recent taxable years;

(iii}    A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

(iv)     An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3   Income Tax Returns. Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and copy of the Company's federal, state, and local tax information or income tax return and reports for such year.

5.4   Subchapter S Election. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5  Tax Matters Member. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6  Banking. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Managers are authorized to establish such accounts and complete, sign, and de live r any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP - VOTING AND MEETINGS

6.1  Members and Voting Rights. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Washington Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.l(c))or required under the Washing ton Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2  Meetings of Members. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Washington Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Washington Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

-8-

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1     Withdrawal. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amoU11t equal to such Member's Capital Account.

7.2     Restrictions on Transfer; Admission of Transferee. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1   Dissolution. The Company will be dissolved upon the first to occur of the following events:

 (i) The unanimous agreement of all Members in a consent in writing to dissolve the Company;

 (ii) Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

 (iii) **At** any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

Company Agent seeking indemnification) or a majority of the Managers that are not seeking indemnification, as the case may be. Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1  Notice. (a)-Any notices (including requests, demands, or other communications) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2  Entire Agreement; Amendment. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Washington Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members except as otherwise required or permitted by the Washington Limited Liability Company Act.

10.3  Governing Law; Severability. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining

-11-

provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4  Further Action. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5  No Third Party Beneficiary. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6  Incorporation by Reference. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7  Counterparts. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

**IN WITNESS WHEREOF**, the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 01/07/2020



Signature of Eric Ryan Shibley

Signature of Thomas Dituri

<u>EXHIBIT A</u>
**MEMBERS**

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit A and updated in accordance with the terms of this Agreement, including, but not limited to,  Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage interest |
|---|---|---|
| Eric Ryan Shibley<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | 90% | 90% |
| Thomas di'Turi<br>Address:<br>██████████<br>Seattle , WA ██████ | 10% | 10% |



# UNITED STATES OF AMERICA

# The State of Washington

## Secretary of State

**I, SAM REED,** Secretary of State of the State of Washington and custodian of its seal, hereby issue this

### CERTIFICATE OF FORMATION

to

### ERIC R SHIBLEY MD PLLC

a/an WA Professional Limited Liability Company. Charter documents are effective on the date indicated below.

Date: 12/12/2012

UBI Number: 603-260-109



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital

Sam Reed, Secretary of State

analysis

Page 1 of 2



**STATE OF WASHINGTON SECRETARY OF STATE**

This box for office use only
This Box For Office Use Only

12/12/12 2315750-002
$230.00 R
tid: 2440951

FILED
SECRETARY OF STATE
SAM REED
DECEMBER 12, 2012
STATE OF WASHINGTON

## Professional Limited Liability Company
*See attached detailed instructions*

☐ **Filing Fee $180.00**

☐ **Filing Fee with Expedited Service $230.00**

UBI Number:   603 260 109

# CERTIFICATE OF FORMATION
Chapter 25.15.045 and 18.100 RCW

### ARTICLE 1

**NAME OF PROFESSIONAL LIMITED LIABILITY COMPANY:**

Eric R Shibley MD PLLC

*(Must contain one of the following designations: Professional Limited Liability Company, Professional Limited Liability Co or one of these abbreviations: P.L.L.C. or PLLC. If the designation is omitted, it will default to PLLC when processed)*

### ARTICLE 2

**ADDRESS OF THE PRINCIPAL PLACE OF BUSINESS:**

*Street Address* 4425 Meridian Ave. N, #6      *City* Tulalip      *State* WA   *Zip* 98271

*PO Box* _____ *City* _____ *State* _____ *Zip* _____

### ARTICLE 3

**EFFECTIVE DATE OF FORMATION:** *(Please check one of the following)*

☑   Upon filing by the Secretary of State

☐   Specific Date: _____ *(Specified effective date must be within 90 days AFTER the Certificate of Formation has been filed by the Office of the Secretary of State)*

### ARTICLE 4

**TENURE:** *(Please check one of the following and indicate the date if applicable)*

☑   Perpetual existence

☑   Specific term of existence _____ *(Number of years or date of termination)*

Page 2 of 2

## ARTICLE 5

**THE PROFESSIONAL LIMITED LIABILITY COMPANY IS MANAGED BY:** ☑ Members   or   ☑ Managers
*(see instructions)*

## ARTICLE 6

**NAME AND ADDRESS OF THE WASHINGTON STATE REGISTERED AGENT:**

**Name:** Eric R. Shibley

**Physical Location Address** *(required)*:

████████████

City Tulalip _____ WA  Zip Code ██████

**Mailing** or Postal Address *(optional)*:

_____

City _____ State_____ Zip Code _____

### CONSENT TO SERVE AS REGISTERED AGENT:

I consent to serve as Registered Agent in the State of Washington for the above named Professional Limited Liability Company. I understand it will be my responsibility to accept Service of Process on behalf of the Professional Limited Liability Company; to forward mail to the Professional Limited Liability Company; and to immediately notify the Office of the Secretary of State if I resign or change the Registered Office Address.

X _____       Eric R. Shibley                      11/30/2012
**Signature of Registered Agent**       Printed Name                      Date

## ARTICLE 7

**NAME, ADDRESS AND SIGNATURE OF EACH EXECUTOR: (RCW 18.100.050)**
*(if necessary, attach additional names, addresses and signatures)*

**Name:** Eric R. Shibley _____

**Address:** ████████████ ____ City Tulalip _____ State WA ____ Zip Code ██████

*This document is hereby executed under penalties of perjury, and is, to the best of my knowledge, true and correct.*

X _____       Eric R. Shibley       11/30/2012      615-554-7156
**Signature of Executor**       Printed Name       Date       Phone

**Name:** _____

**Address:** _____ City _____ State_____ Zip Code_____

*This document is hereby executed under penalties of perjury, and is, to the best of my knowledge, true and correct.*

X _____
**Signature of Executor**       Printed Name       Date       Phone

Washington PLLC - Formation          Washington Secretary of State          Revised 08/12

**Additional Provisions to the Articles of Organization for**

**Eric R Shibley MD PLLC**

Eric R Shibley MD PLLC, is incorporated as a professional limited liability company under the provisions of RWC of Washington Chapter 25.15.045 for the purposes of rendering Physician and Surgeon professional services.



**Washington**
# Secretary of State
### SAM REED

# INITIAL REPORT
## FEE: $10.00

**RETURN COMPLETED FORM AND PAYMENT TO:**
*(Checks made payable to "Secretary of State")*

Corporations Division
801 Capitol Way South
PO Box 40234
Olympia, WA 98504-0234

**Entity Name: ERIC R SHIBLEY MD PLLC**

**Payment Due By: 4/11/2013**

**Unified Business Identifier: 603-260-109**

**State of Incorporation: WA**

*Inc./Qual. Date: 12/12/2012*

**TO AVOID DISSOLUTION/REVOCATION, AN INITIAL REPORT MUST BE FILED AND PROCESSED PRIOR TO: 4/11/2013**

| Current Registered Agent/Office | Registered Agent/Office Changes *(Changes must be approved by the Board of Directors)* |
|---|---|
| ERIC  R SHIBLEY<br>4425 MERIDIAN AVE N #6<br><br>TULALIP, WA98271 | New Registered Agent Name _____<br><br>Consent to<br>Appointment_____<br>*Signature of New Registered Agent*<br><br>**Required Street**<br>Address_____<br><br>City_____State **WA** Zip Code_____<br><br>Optional Mailing Address_____<br><br>City_____State **WA** Zip Code_____ |

**INITIAL REPORT SECTION MUST BE FILLED IN COMPLETELY – TYPE OR PRINT IN BLACK INK**

Principal place of business in WA_____ WA _____

                               *Address*                   *City*            *Zip*

Telephone (___)_____ Email _____ Nature of Business_____

Foreign Entities - Principal office address in state/country of Origin

_____

      *Address*       *City*       *State*       *Zip*       *Country*

**CORPORATION:** Print or type names and addresses of corporate officers and directors including President, Vice President, Secretary, and Treasurer. If applicable the Chair of the Board of Directors and Directors. **LLC:** Print or type names and addresses of Members or Managers. *(attach additional list if necessary)*

| *Name* | *Title* | *Address* | *City* | *State* | *Zip* |
|---|---|---|---|---|---|
| *Name* | *Title* | *Address* | *City* | *State* | *Zip* |
| *Name* | *Title* | *Address* | *City* | *State* | *Zip* |
| *Name* | *Title* | *Address* | *City* | *State* | *Zip* |
| *Name* | *Title* | *Address* | *City* | *State* | *Zip* |

**SIGNATURE**    *Signature of Chairman of the Board, Officer, Member or Manager listed above*    *Type or Print Name and Title*    *Date*

**CORPORATIONS INFORMATION AND ASSISTANCE – 360/725-0377 (TDD 360/753-1485)**

Rev. 01-004 11/03



*Washington*
# Secretary of State
SAM REED

CORPORATIONS DIVISION
James M. Dolliver Building
801 Capitol Way South • PO Box 40234
Olympia, WA 98504-0234
Tel: 360.725.0377
www.sos.wa.gov/corps

## IMPORTANT

To keep your filing status active and avoid administrative dissolution, you must:

1.  **File an Initial Report** within 120 days of the date your corporation or limited liability company (LLC) was filed. The date of filing is stated on your certificate. Please complete and return the enclosed Initial Report, together with the $10 filing fee.

2.  **File an Annual Report** and pay the annual license fee each year before the anniversary of the filing date for the entity. The registered agent will be sent notice of the Annual Report requirement. But it is the corporation or LLC's responsibility to file the report even if no notice is received.

3.  **Maintain a Registered Agent** and registered office in this state. You must notify the Corporations Division if there are any changes in your registered agent, agent's address, or registered office address. Failure to notify the Corporations Division of changes will result in misrouted mail, and possibly administrative dissolution.

If you have questions about report and registered agent requirements, please contact the Corporations Division at 360-725-0377 or visit our website at: http://www.sos.wa.gov/corps.

Congratulations:

You have completed the initial filing to create a new business entity. **The next step in opening your new business is to complete a Business License Application.** You may have completed this step already. The Business License Application can be completed online or downloaded at: http://www.bls.dor.wa.gov/

If you have any questions about the Business License Application, or would like a Business License Application package mailed to you, please call the Department of Revenue at 1-800-451-7985.

If you have questions about report and registered agent requirements, please contact the Corporations Division at 360-725-0377 or visit our website at: http://www.sos.wa.gov/corps.

ERIC R SHIBLEY
4425 MERIDIAN AVE N #6
TULALIP, WA 98271

## Operating Agreement

## ES1 LLC,
## a Washington Limited Liability Company

THIS OPERATING AGREEMENT of ES1 LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.     The Members have formed the Company as a Washington limited liability company under the Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.     The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

"Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be entitled as provided in this Agreement and under the Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.      If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)      the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

    (2)    the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

$$\text{Percentage Interest} = \frac{MU}{TU}$$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITIONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1 **Initial Capital Contributions**. The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Member's name on Exhibit A to become a Member of the Company.

2.2 **Subsequent Capital Contributions**. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3 **Additional Members**.

A.    With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Members deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4  **Capital Accounts**. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  **Interest**. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  **Limited Liability; No Authority.** A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  **Allocations**. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

3.2  **Distributions**. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Members in accordance with the Limited Liability Company Act.

3.3  **Limitations on Distributions**. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.      The Company would be unable to pay its debts as they become due in the usual course of business; or

B.      The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

## ARTICLE 4: MANAGEMENT

4.1 **Management**.

A.      **Generally**. Subject to the terms of this Agreement and the Limited Liability Company Act, the business and affairs of the Company will be managed by the Members.

B.      **Approval and Action**. Unless greater or other authorization is required pursuant to this Agreement or under the Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by the Members, to constitute the act of the Company or serve to bind the Company. With such approval, the signature of any Members authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved. Without such approval, no Members acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.      **Certain Decisions Requiring Greater Authorization**. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

(i)     A material change in the purposes or the nature of the Company's business;

(ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

(iii)   The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and

(iv)    The amendment of this Agreement.

4.2  **Officers**. The Members are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Members determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Members; or (b) the officer is dismissed or terminated by the Members, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Members, and may be terminated, at any time and for any reason, by the Members.

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1  **Accounts**. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2  **Records**. The Members will keep or cause the Company to keep the following business records.

(i)    An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

(ii)   A copy of the Company's federal, state, and local tax information and income tax returns and reports, if any, for the six most recent taxable years;

(iii)  A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

(iv)   An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3 **Income Tax Returns.** Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and reports and a copy of the Company's federal, state, and local tax information or income tax returns and reports for such year.

5.4 **Subchapter S Election.** The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5 **Tax Matters Member.** Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6 **Banking.** All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Members are authorized to establish such accounts and complete, sign, and deliver any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP – VOTING AND MEETINGS

6.1 **Members and Voting Rights.** The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c)) or required under the Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2 **Meetings of Members.** Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable

period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1     **Withdrawal**. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amount equal to such Member's Capital Account.

7.2 **Restrictions on Transfer; Admission of Transferee**. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1 **Dissolution.** The Company will be dissolved upon the first to occur of the following events:

(i)     The unanimous agreement of all Members in a consent in writing to dissolve the Company;

(ii)    Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

(iii)   At any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

(iv)   The sale or transfer of all or substantially all of the Company's assets;

(v)   A merger or consolidation of the Company with one or more entities in which the Company is not the surviving entity.

8.2 **No Automatic Dissolution Upon Certain Events**. Unless otherwise set forth in this Agreement or required by applicable law, the death, incapacity, disassociation, bankruptcy, or withdrawal of a Member will not automatically cause a dissolution of the Company.

## ARTICLE 9: INDEMNIFICATION

9.1 **Indemnification**. The Company has the power to defend, indemnify, and hold harmless any Person who was or is a party, or who is threatened to be made a party, to any Proceeding (as that term is defined below) by reason of the fact that such Person was or is a Member, officer, employee, representative, or other agent of the Company, or was or is serving at the request of the Company as a director, Governor, officer, employee, representative or other agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise (each such Person is referred to as a "Company Agent"), against Expenses (as that term is defined below), judgments, fines, settlements, and other amounts (collectively, "Damages") to the maximum extent now or hereafter permitted under Washington law. "Proceeding," as used in this Article 9, means any threatened, pending, or completed action, proceeding, individual claim or matter within a proceeding, whether civil, criminal, administrative, or investigative. "Expenses," as used in this Article 9, includes, without limitation, court costs, reasonable attorney and expert fees, and any expenses incurred relating to establishing a right to indemnification, if any, under this Article 9.

9.2 **Mandatory.** The Company must defend, indemnify and hold harmless a Company Agent in connection with a Proceeding in which such Company Agent is involved if, and to the extent, Washington law requires that a limited liability company indemnify a Company Agent in connection with a Proceeding.

9.3 **Expenses Paid by the Company Prior to Final Disposition.** Expenses of each Company Agent indemnified or held harmless under this Agreement that are actually and reasonably incurred in connection with the defense or settlement of a Proceeding may be paid by the Company in advance of the final disposition of a Proceeding if authorized by a vote of the Members that are not seeking indemnification holding a majority of the Voting Interests (excluding the Voting Interest of the Company Agent seeking indemnification). Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1 or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 **Notice.** (a) Any notices (including requests, demands, or other communications) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 **Entire Agreement; Amendment.** This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Limited Liability Company Act. There are no

representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members, except as otherwise required or permitted by the Limited Liability Company Act.

10.3 **Governing Law; Severability**. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4 **Further Action**. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5 **No Third Party Beneficiary**. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6 **Incorporation by Reference**. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7 **Counterparts**. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentionally Left Blank.]*

**IN WITNESS WHEREOF**, the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated:___8/30/2018_____

_____

Signature of Eric R. Shibley

## EXHIBIT A
## MEMBERS

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit A current and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric R. Shibley<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | | 100% |

-13-

Operating Agreement

## SS1 LLC,
### a Washington Limited Liability Company

THIS OPERATING AGREEMENT of SS1 LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.   The Members have formed the Company as a Washington limited liability company under the Washington Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.   The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Washington Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

" Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Manager" means each Person who has authority to manage the business and affairs of the Company pursuant to this Agreement; such Persons are listed on Exhibit B, as may be updated from time to time according to the terms of this Agreement. A Manager may be, but is not required to be, a Member.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be eJ1titled as provided in this Agreement and under the Washington Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.     If ownership in the Company is expressed in terms of percentage. the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.      If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

    (1)      the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

    (2)      the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).
Percentage Interest= $\dfrac{MU}{TU}$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1  Initial Capital Contributions . The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Membel's name on Exhibit A to become a Member of the Company.

2.2  Subsequent Capital Contributions. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3  Additional Members.

A.      With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Managers deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4  Capital Accounts. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  Interest. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  Limited Liability; No Authority. A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Washington Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  Allocations. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

-4-

*Γ\*

3.2  Distributions. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Managers in accordance with the Washington Limited Liability Company Act.

3.3  Limitations on Distributions. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.     The Company would be unable to pay its debts as they become due in the usual course of business; or

B.     The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

## ARTICLE 4: MANAGEMENT

4.1  Management.

A.     Generally. Subject to the terms of this Agreement and the Washington Limited Liability Company Act, the business and affairs of the Company will be managed by the Board of Managers, as further described below. The Members initially nominate and elect the Person(s) set forth on Exhibit B to serve as the Manager(s) of the Company. The Managers will act under the direction of the Members and may be elected or removed at any time, for any reason or no reason, by the Members holding a majority of the Voting Interest of the Company. Exhibit B must be amended to reflect any changes in Managers.

B.     Approval and Action. Unless greater or other authorization is required pursuant to this Agreement or under the Washington Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by a majority of Managers, to constitute the act of the Company or serve to bind the Company, but if the Managers cannot reach a majority vote, the dispute will be submitted to the Members to be resolved by the affirmative vote of the Members holding at least a majority of the Voting Interest of the Company. With such approval, the signature of any Managers authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved.

Without such approval, no Managers acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.      Certain Decisions Requiring Greater Authorization. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

> (i)      A material change in the purposes or the nature of the Company's business;
>
> (ii)     With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;
>
> (iii)    The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and
>
> (iv)     The amendment of this Agreement.

4.2  Meetings of Managers. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference call, or by any other means permitted under the Washington Limited Liability Company Act. In addition, Company actions requiring a vote may be carried out without a meeting if all of the Managers consent in writing to approve the action.

4.3  Officers. The Managers are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Managers determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Managers; or (b) the officer is dismissed or terminated by the Managers, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Managers, and may be terminated, at any time and for any reason, by the Managers.

-6-

# ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1  Accounts. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2  Records. The Managers will keep or cause the Company to keep the following business records.

(i)  An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

(ii)  A copy of the Company's federal, state, and local tax in.formation and income tax returns and reports, if any, for the six most recent taxable years;

(iii)  A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

(iv)  An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3  Income Tax Returns. Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and rep or ts anda copy of the Company's federal, state, and local tax information or income tax retun1S and reports for such year.

5.4  Subchapter S Election. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5  Tax Matters Member. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6  Banking. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Managers are authorized to establish such accounts and complete, sign, and de live r any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP - VOTING AND MEETINGS

6.1  Members and Voting Rights. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Washington Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c))or required under the Washing ton Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2  Meetings of Members. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Washington Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Washington Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

-8-

# ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1    Withdrawal. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amoU11t equal to such Member's Capital Account.

7.2    Restrictions on Transfer; Admission of Transferee. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1    Dissolution . The Company will be dissolved upon the first to occur of the following events:

   (i)    The unanimous agreement of all Members in a consent in writing to dissolve the Company;

   (ii)    Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

   (iii)    At any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

-9-

Company Agent seeking indemnification) or a majority of the Managers that are not seeking indemnification, as the case may be. Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 Notice. (a)-Any notices (including requests, demands, or other communications ) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 Entire Agreement; Amendment. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Washington Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members except as otherwise required or permitted by the Washington Limited Liability Company Act.

10.3 Governing Law; Severability. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining

-11-

provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4 Further Action. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5 No Third Party Beneficiary. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6 Incorporation by Reference. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7 Counterparts. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentio1111lly Left Blank.]*

-12-

## EXHIBIT A
**MEMBERS**

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit Accurate and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric Ryan Shibley, Manager/Governor<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | 100% | 100% |

**IN WITNESS WHEREOF** the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 10/03/2017

_____
Signature of Eric Ryan Shibley

## Operating Agreement

### The A Team Holdings,LLC,
### a Washington Limited Liability Company

THIS OPERATING AGREEMENT of **The A Team Holdings** LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.      The Members have formed the Company as a Washington limited liability company under the Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.      The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

"Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be entitled as provided in this Agreement and under the Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.      If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)      the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

(2)      the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

$$\text{Percentage Interest} = \frac{MU}{TU}$$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITIONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1 **Initial Capital Contributions**. The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Member's name on Exhibit A to become a Member of the Company.

2.2 **Subsequent Capital Contributions**. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3 **Additional Members**.

A.    With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.    Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Members deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4 **Capital Accounts**. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  **Interest**. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  **Limited Liability; No Authority.** A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  **Allocations**. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

3.2  **Distributions**. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Members in accordance with the Limited Liability Company Act.

3.3  **Limitations on Distributions**. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.      The Company would be unable to pay its debts as they become due in the usual course of business; or

B.      The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

ARTICLE 4: MANAGEMENT

4.1 **Management**.

A.     **Generally**. Subject to the terms of this Agreement and the Limited Liability Company Act, the business and affairs of the Company will be managed by the Members.

B.     **Approval and Action**. Unless greater or other authorization is required pursuant to this Agreement or under the Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by the Members, to constitute the act of the Company or serve to bind the Company. With such approval, the signature of any Members authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved. Without such approval, no Members acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.     **Certain Decisions Requiring Greater Authorization**. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

       (i)     A material change in the purposes or the nature of the Company's business;

       (ii)     With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

       (iii)     The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and

       (iv)     The amendment of this Agreement.

4.2 **Officers**. The Members are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Members determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Members; or (b) the officer is dismissed or terminated by the Members, which termination will be subject to applicable law and, if an effective

employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Members, and may be terminated, at any time and for any reason, by the Members.

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1 **Accounts**. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2 **Records**. The Members will keep or cause the Company to keep the following business records.

      (i)    An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

      (ii)   A copy of the Company's federal, state, and local tax information and income tax returns and reports, if any, for the six most recent taxable years;

      (iii)  A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

      (iv)  An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3 **Income Tax Returns.** Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and reports and a copy of the Company's federal, state, and local tax information or income tax returns and reports for such year.

5.4 **Subchapter S Election**. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5 **Tax Matters Member**. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6 **Banking**. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Members are authorized to establish such accounts and complete, sign, and deliver any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP – VOTING AND MEETINGS

6.1 **Members and Voting Rights**. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c)) or required under the Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2 **Meetings of Members**. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1      **Withdrawal**. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amount equal to such Member's Capital Account.

7.2 **Restrictions on Transfer; Admission of Transferee**. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1 **Dissolution.** The Company will be dissolved upon the first to occur of the following events:

(i)      The unanimous agreement of all Members in a consent in writing to dissolve the Company;

(ii)     Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

(iii)    At any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

-8-

(iv)   The sale or transfer of all or substantially all of the Company's assets;

(v)    A merger or consolidation of the Company with one or more entities in which the Company is not the surviving entity.

8.2 **No Automatic Dissolution Upon Certain Events**. Unless otherwise set forth in this Agreement or required by applicable law, the death, incapacity, disassociation, bankruptcy, or withdrawal of a Member will not automatically cause a dissolution of the Company.


ARTICLE 9: INDEMNIFICATION

9.1 **Indemnification**. The Company has the power to defend, indemnify, and hold harmless any Person who was or is a party, or who is threatened to be made a party, to any Proceeding (as that term is defined below) by reason of the fact that such Person was or is a Member, officer, employee, representative, or other agent of the Company, or was or is serving at the request of the Company as a director, Governor, officer, employee, representative or other agent of another limited liability company, corporation, partnership, joint venture, trust, or other enterprise (each such Person is referred to as a "Company Agent"), against Expenses (as that term is defined below), judgments, fines, settlements, and other amounts (collectively, "Damages") to the maximum extent now or hereafter permitted under Washington law. "Proceeding," as used in this Article 9, means any threatened, pending, or completed action, proceeding, individual claim or matter within a proceeding, whether civil, criminal, administrative, or investigative. "Expenses," as used in this Article 9, includes, without limitation, court costs, reasonable attorney and expert fees, and any expenses incurred relating to establishing a right to indemnification, if any, under this Article 9.

9.2 **Mandatory.** The Company must defend, indemnify and hold harmless a Company Agent in connection with a Proceeding in which such Company Agent is involved if, and to the extent, Washington law requires that a limited liability company indemnify a Company Agent in connection with a Proceeding.

9.3 **Expenses Paid by the Company Prior to Final Disposition**. Expenses of each Company Agent indemnified or held harmless under this Agreement that are actually and reasonably incurred in connection with the defense or settlement of a Proceeding may be paid by the Company in advance of the final disposition of a Proceeding if authorized by a vote of the Members that are not seeking indemnification holding a majority of the Voting Interests (excluding the Voting Interest of the Company Agent seeking indemnification). Before the Company makes any such

payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1 or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 **Notice**. (a) Any notices (including requests, demands, or other communications) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 **Entire Agreement; Amendment**. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members, except as otherwise required or permitted by the Limited Liability Company Act.

10.3 **Governing Law; Severability**. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and

replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

      10.4 **Further Action**. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

      10.5 **No Third Party Beneficiary**. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

      10.6 **Incorporation by Reference**. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

      10.7 **Counterparts**. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentionally Left Blank.]*

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated:_____ 12/05/208 _____

_____
Signature of Eric R. Shibley

-12-

## EXHIBIT A
## MEMBERS

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit A current and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric R. Shibley<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | | 100% |

-13-

Operating Agreement

Dituri Construction LLC,
a Washington Limited Liability Company

THIS OPERATING AGREEMENT for Dituri Construction LLC of (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.   The Members have formed the Company as a Washington limited liability company under the Washington Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.   The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Washington Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

-1-

## Operating Agreement

### Eric R Shibley MD PLLC,
### a Washington Limited Liability Company

THIS OPERATING AGREEMENT of ES1 LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.    The Members have formed the Company as a Washington limited liability company under the Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.    The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

"Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be entitled as provided in this Agreement and under the Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.      If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

(1)     the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

(2)     the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

$$\text{Percentage Interest} = \frac{MU}{TU}$$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

-2-

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITIONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1 **Initial Capital Contributions**. The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Member's name on Exhibit A to become a Member of the Company.

2.2 **Subsequent Capital Contributions**. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3 **Additional Members**.

A.     With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.     Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instruments, in the form and containing the information required by the Company, that the Members deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4 **Capital Accounts**. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

-3-

2.5  **Interest**. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  **Limited Liability; No Authority.** A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  **Allocations**. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

3.2  **Distributions**. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Members in accordance with the Limited Liability Company Act.

3.3  **Limitations on Distributions**. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.      The Company would be unable to pay its debts as they become due in the usual course of business; or

B.      The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

ARTICLE 4: MANAGEMENT

4.1 **Management**.

A.      **Generally**. Subject to the terms of this Agreement and the Limited Liability Company Act, the business and affairs of the Company will be managed by the Members.

B.      **Approval and Action**. Unless greater or other authorization is required pursuant to this Agreement or under the Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by the Members, to constitute the act of the Company or serve to bind the Company. With such approval, the signature of any Members authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved. Without such approval, no Members acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.      **Certain Decisions Requiring Greater Authorization**. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

> (i)     A material change in the purposes or the nature of the Company's business;
>
> (ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;
>
> (iii)   The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and
>
> (iv)    The amendment of this Agreement.

4.2 **Officers**. The Members are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Members determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Members; or (b) the officer is dismissed or terminated by the Members, which termination will be subject to applicable law and, if an effective

employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Members, and may be terminated, at any time and for any reason, by the Members.

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1 **Accounts**. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2 **Records**. The Members will keep or cause the Company to keep the following business records.

        (i)     An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

        (ii)    A copy of the Company's federal, state, and local tax information and income tax returns and reports, if any, for the six most recent taxable years;

        (iii)   A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

        (iv)   An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3 **Income Tax Returns.** Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and reports and a copy of the Company's federal, state, and local tax information or income tax returns and reports for such year.

5.4 **Subchapter S Election**. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

5.5 **Tax Matters Member**. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6 **Banking**. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Members are authorized to establish such accounts and complete, sign, and deliver any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP – VOTING AND MEETINGS

6.1 **Members and Voting Rights**. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c)) or required under the Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2 **Meetings of Members**. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

## ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1     **Withdrawal**. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amount equal to such Member's Capital Account.

7.2  **Restrictions on Transfer; Admission of Transferee**. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1  **Dissolution.** The Company will be dissolved upon the first to occur of the following events:

> (i)     The unanimous agreement of all Members in a consent in writing to dissolve the Company;
>
> (ii)    Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;
>
> (iii)   At any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

(iv)    The sale or transfer of all or substantially all of the Company's
assets;

(v)     A merger or consolidation of the Company with one or more
entities in which the Company is not the surviving entity.

8.2  **No Automatic Dissolution Upon Certain Events**. Unless otherwise set forth
in this Agreement or required by applicable law, the death, incapacity, disassociation,
bankruptcy, or withdrawal of a Member will not automatically cause a dissolution of
the Company.

## ARTICLE 9: INDEMNIFICATION

9.1  **Indemnification**. The Company has the power to defend, indemnify, and
hold harmless any Person who was or is a party, or who is threatened to be made a
party, to any Proceeding (as that term is defined below) by reason of the fact that such
Person was or is a Member, officer, employee, representative, or other agent of the
Company, or was or is serving at the request of the Company as a director, Governor,
officer, employee, representative or other agent of another limited liability company,
corporation, partnership, joint venture, trust, or other enterprise (each such Person is
referred to as a "Company Agent"), against Expenses (as that term is defined below),
judgments, fines, settlements, and other amounts (collectively, "Damages") to the
maximum extent now or hereafter permitted under Washington law. "Proceeding," as
used in this Article 9, means any threatened, pending, or completed action, proceeding,
individual claim or matter within a proceeding, whether civil, criminal, administrative,
or investigative. "Expenses," as used in this Article 9, includes, without limitation, court
costs, reasonable attorney and expert fees, and any expenses incurred relating to
establishing a right to indemnification, if any, under this Article 9.

9.2  **Mandatory.** The Company must defend, indemnify and hold harmless a
Company Agent in connection with a Proceeding in which such Company Agent is
involved if, and to the extent, Washington law requires that a limited liability company
indemnify a Company Agent in connection with a Proceeding.

9.3  **Expenses Paid by the Company Prior to Final Disposition**. Expenses of
each Company Agent indemnified or held harmless under this Agreement that are
actually and reasonably incurred in connection with the defense or settlement of a
Proceeding may be paid by the Company in advance of the final disposition of a
Proceeding if authorized by a vote of the Members that are not seeking indemnification
holding a majority of the Voting Interests (excluding the Voting Interest of the
Company Agent seeking indemnification). Before the Company makes any such

payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1 or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 **Notice**. (a) Any notices (including requests, demands, or other communications) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 **Entire Agreement; Amendment**. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members, except as otherwise required or permitted by the Limited Liability Company Act.

10.3 **Governing Law; Severability**. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and

replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4 **Further Action**. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5 **No Third Party Beneficiary**. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6 **Incorporation by Reference**. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7 **Counterparts**. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentionally Left Blank.]*

**IN WITNESS WHEREOF**, the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 11/30/2012

_____
Signature of Eric R. Shibley

-12-

## EXHIBIT A
## **MEMBERS**

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit A current and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric R. Shibley<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | | 100% |

-13-

# PURCHASE AGREEMENT

This PURCHASE AGREEMENT (the "**Agreement**") is made and entered into on May 5, 2020 (the "**Effective Date**") by and between Thomas Dituri (the "**Seller**") and Eric Shibley (the "**Buyer**"). Buyer and Seller may be referred to individually as the **Party**", or collectively, the "**Parties**".

# RECITALS

**WHEREAS**, Seller desires to sell certain property to Buyer in an "as is" condition; and

**WHEREAS**, Buyer desires to purchase certain property from Seller in an "as is" condition.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

# TERMS

1.   **PROPERTY**

Seller agrees to sell, convey, assign, and transfer to Buyer, and Buyer agrees to purchase from Seller, the following property (the "**Property**"):

Ownership interest of Dituri Construction LLC, UBI no: 604-175-163, a Washington Limited Liability corporation

It is located at N/A, , . The sale, conveyance, assignment, and transfer of said Property shall become effective as of the Effective Date.

2.   **"AS IS" CONDITION**

Seller agrees to sell, convey, assign, and transfer to Buyer, on an "AS-IS" basis, and makes no warranties, either expressed or implied, unless otherwise stated herein, and Buyer agrees to purchase from Seller, on an "AS-IS" basis. The sale, conveyance, assignment, and transfer of said Property shall become effective as of the date set forth above, and the Seller shall deliver said Property to Buyer in "AS-IS" condition.

3.   **PURCHASE PRICE**

Buyer shall purchase Property from Seller for the total sum of $10.00.

4.   **LIMITATION OF DAMAGES**

Each Party hereby waives any right which it may have to claim or recover any incidental, special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages.

5.   **FORCE MAJEURE**

Neither Party shall be in default nor liable to the other for any failure to perform directly caused by events beyond that Party's reasonable control, such as acts of nature, labor strikes, war, insurrections, riots, acts of governments, embargoes and unusually severe weather provided the affected Party notifies the other party within ten (10) days of the occurrence. Such an event is an excusable delay. THE PARTY AFFECTED BY AN EXCUSABLE DELAY SHALL TAKE ALL REASONABLE STEPS TO PERFORM DESPITE THE DELAY.

6.   **AMENDMENTS**

This Agreement may only be changed or supplemented by a written amendment, signed by authorized representatives of each Party.

7.   **ASSIGNMENT**

Neither Party may assign its rights or delegate its obligations under this Agreement without the prior written approval of the other Party. Any attempted assignment or delegation without such an approval shall be void.

8.   **GOVERNING LAW; CHOICE OF FORUM**

8.1   To the extent not preempted by federal law, the provisions of this Agreement shall be construed and enforced in accordance with the laws of the State of , notwithstanding any choice-of-law or conflicts-of-law rules to the contrary.

8.2   The Parties agree that any legal action relating to this Agreement shall be commenced and maintained exclusively before any appropriate state court of record in the State of .

9.   **SEVERABILITY**

If any provision of this Agreement is held to be illegal, invalid or unenforceable by a court of competent jurisdiction, the remaining provisions shall not be affected.

10.   **EFFECT OF TITLE AND HEADINGS**

The title of the Agreement and the headings of its Sections are included for convenience and shall not affect the meaning of the Agreement or the Section.

## 11.   WAIVER

Failure of either Party to insist in any strict conformance to any term herein or failure by either Party to act in the event of a breach or default shall not be construed as a consent to or waiver of that breach or default or any subsequent breach or default of the same or any other term contained herein.

## 12.   ENTIRE AGREEMENT

This Agreement is the complete statement of the Parties' agreement and supersedes all previous and contemporaneous written and oral communication about its subject.

## 13.   COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same document.

## 14.   AUTHORITY

The Parties represent that they have full capacity and authority to grant all rights and assume all obligations they have granted and assumed under this Agreement.

## 15.   ATTORNEYS FEES

If any legal proceeding is brought for the enforcement of this Agreement, or because of an alleged breach, default or misrepresentation in connection with any provision of this Agreement or other dispute concerning this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees incurred in connection with such legal proceeding. The term "**prevailing party**" shall mean the Party that is entitled to recover its costs in the proceeding under applicable law, or the party designated as such by the court.

*IN WITNESS WHEREOF*, the Parties hereto have executed this Agreement on the date first written above.

_____          05/09/2020
(Authorized Seller(s) Signature)          (Date Signed)

_____          05/09/2020
(Buyer(s) Signature)                      (Date Signed)

# WASHINGTON NOTARY ACKNOWLEDGMENT

State of Washington

County of _King_

Thomas Dituri &
Eric Ryan Shibley

I certify that I know or have satisfactory evidence that _____ (name of

person) is the person who appeared before me, and said person acknowledged

that (he/she) signed this instrument and acknowledged it to be (his/her) free and

voluntary act for the uses and purposes mentioned in the instrument.

Dated: _05/09/2020_

(Seal or Stamp)

HANNAH GRACE POTTER
Notary Public
State of Washington
Commission # 209762
My Comm. Expires Jul 29, 2023

_Hannah Grace Potter_

Signature

WA Notary Public

Title

My Appointment Expires: _07/29/2023_

Purchase Agreement
4700 36th Ave SW
Seattle, WA 98126

Page 1 of 1



DO NOT STAPLE

| 33333 | a Control number | For Official Use Only OMB No. 1545-0008 | | |
|---|---|---|---|---|

| b Kind of Payer (Check one) | 941 ☐  Military 943 ☐  944 ☐  CT-1 ☐  Hshld. emp. ☐  Medicare govt. emp. ☐  [X] | Kind of Employer (Check one) | None apply 501c non-govt. ☐  State/local non-501c [X]  State/local 501c  Federal govt. ☐ | Third-party sick pay (Check if applicable) ☐ |

| c Total number of Forms W-2 | d Establishment number | 1 Wages, tips, other compensation | 538000 | 2 Federal income tax withheld | 0 |
|---|---|---|---|---|---|
| 41 | | | | | |
| e Employer identification number (EIN) | 7509 | 3 Social security wages | 538000 | 4 Social security tax withheld | 66712 |
| f Employer's name | | 5 Medicare wages and tips | 538000 | 6 Medicare tax withheld | 15602 |
| SS1 LLC | | 7 Social security tips | | 8 Allocated tips | |
| | | 9 | | 10 Dependent care benefits | |
| 4700 36th Ave SW Seattle WA 98126-2716 | | 11 Nonqualified plans | | 12a Deferred compensation | |
| g Employer's address and ZIP code | | | | | |
| h Other EIN used this year | | 12 For third-party sick pay use only | | 12b | |

| 15 State  WA | Employer's state ID number  604-183-433 | 14 Income tax withheld by payer of third-party sick pay | |
|---|---|---|---|
| 16 State wages, tips, etc. | 17 State income tax  0 | 18 Local wages, tips, etc.  0 | 19 Local income tax  0 |

| Employer's contact person | Employer's telephone number | For Official Use Only |
|---|---|---|
| Eric R Shibley | 206-938-4291 | |
| Employer's fax number  206-260-1412 | Employer's email address  shibleenyc@yahoo.com | |

Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature _____    Title  Manager    Date  04/22/202020

## Form W-3 Transmittal of Wage and Tax

**2019**

Department of the Treasury Internal Revenue Service

### Statements

Send this entire page with the entire Copy A page of Form(s) W-2 to the Social Security Administration (SSA). Photocopies are not acceptable. Do not send Form W-3 if you filed electronically with the SSA. Do not send any payment (cash, checks, money orders, etc.) with Forms W-2 and W-3.

### Reminder

Separate instructions. See the 2019 General Instructions for Forms W-2 and W-3 for information on completing this form. Do not file Form W-3 for Form(s) W-2 that were submitted electronically to the SSA.

### Purpose of Form

Complete a Form W-3 Transmittal only when filing paper Copy A of Form(s) W-2, Wage and Tax Statement. Don't file Form W-3 alone. All paper forms must comply with IRS standards and be machine readable. Photocopies are not acceptable. Use a Form W-3 even if only one paper Form W-2 is being filed. Make sure both the Form W-3 and Form(s) W-2 show the correct tax year and Employer Identification Number (EIN). Make a copy of this form and keep it with Copy D (For Employer) of Form(s) W-2 for your records. The IRS recommends retaining copies of these forms for four years.

### E-Filing

The SSA strongly suggests employers report Form W-3 and Forms W-2 Copy A electronically instead of on paper. The SSA provides two free e-filing options on its Business Services Online (BSO) website.

• W-2 Online. Use fill-in forms to create, save, print, and submit up to 50 Forms W-2 at a time to the SSA.

• File Upload. Upload wage files to the SSA you have created using payroll or tax software that formats the files according to the SSA's Specifications for Filing Forms W-2 Electronically (EFW2).

W-2 Online fill-in forms or file uploads will be on time if submitted by January 31, 2020. For more information, go to www.SSA.gov/bso. First time filers, select "Register"; returning filers select "Log in."

33333

a Control number

For Official Use Only ▶
OMB No. 1545-0008

| b Kind of Payer (Check one) | 941 ☐ | Military ☐ | 943 ☐ | 944 ☐ | Kind of Employer (Check one) | None apply ☒ | 501c non-govt. ☐ | Third-party sick pay ☐ |
| | CT-1 ☐ | Hsmd. emp. ☐ | Medicare govt. emp. ☐ | | | State/local non-501c ☐ | State/local 501c ☐  Federal govt. ☐ | Check if applicable ☐ |

| c Total number of Forms W-2 | d Establishment number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
| 6 | | 459600 | 0 |

| e Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
| ▮▮5849 | 459600 | 56990.04 |

| f Employer's name | 5 Medicare wages and tips | 6 Medicare tax withheld |
| ES1 LLC | 459300 | 13328.40 |

| | 7 Social security tips | 8 Allocated tips |

| | 9 | 10 Dependent care benefits |

| 4700 36th Ave SW Seattle WA 98126-2716 | 11 Nonqualified plans | 12a Deferred compensation |
| g Employer's address and ZIP code | | |

| h Other EIN used this year | 13 For third-party sick pay use only | 12b |

| 15 State  WA | Employer's state ID number  603260109 | 14 Income tax withheld by payer of third-party sick pay |

| 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax |
| | 0 | 0 | 0 |

| Employer's contact person  Eric R Shibley | Employer's telephone number  206-938-4291 | For Official Use Only |

| Employer's fax number  206-260-1412 | Employer's email address  shibleenyc@yahoo.com | |

Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature ▶ _____     Title ▶ Manager     Date ▶ 04/22/202020

Form **W-3** Transmittal of Wage and Tax Statements    **2019**

Department of the Treasury
Internal Revenue Service

Send this entire page with the entire Copy A page of Form(s) W-2 to the Social Security Administration (SSA).
Photocopies are not acceptable. Do not send Form W-3 if you filed electronically with the SSA.
Do not send any payment (cash, checks, money orders, etc.) with Forms W-2 and W-3.

### Reminder

Separate instructions. See the 2019 General Instructions for Forms W-2 and W-3 for information on completing this form. Do not file Form W-3 for Form(s) W-2 that were submitted electronically to the SSA.

### Purpose of Form

Complete a Form W-3 Transmittal only when filing paper Copy A of Form(s) W-2, Wage and Tax Statement. Don't file Form W-3 alone. All paper forms must comply with IRS standards and be machine readable. Photocopies are not acceptable. Use a Form W-3 even if only one paper Form W-2 is being filed. Make sure both the Form W-3 and Form(s) W-2 show the correct tax year and Employer Identification Number (EIN). Make a copy of this form and keep it with Copy D (For Employer) of Form(s) W-2 for your records. The IRS recommends retaining copies of these forms for four years.

### E-Filing

The SSA strongly suggests employers report Form W-3 and Forms W-2 Copy A electronically instead of on paper. The SSA provides two free e-filing options on its Business Services Online (BSO) website.

• W-2 Online. Use fill-in forms to create, save, print, and submit up to 50 Forms W-2 at a time to the SSA.

• File Upload. Upload wage files to the SSA you have created using payroll or tax software that formats the files according to the SSA's Specifications for Filing Forms W-2 Electronically (EFW2).

W-2 Online fill-in forms or file uploads will be on time if submitted by January 31, 2020. For more information, go to www.SSA.gov/bso. First time filers, select "Register"; returning filers select "Log In."

### When To File Paper Forms

Mail Form W-3 with Copy A of Form(s) W-2 by January 31, 2020.

### Where To File Paper Forms

Send this entire page with the entire Copy A page of Form(s) W-2 to:

**Social Security Administration
Direct Operations Center
Wilkes-Barre, PA 18769-0001**

Note: If you use "Certified Mail" to file, change the ZIP code to "18769-0002." If you use an IRS-approved private delivery service, add "ATTN: W-2 Process, 1150 E. Mountain Dr." to the address and change the ZIP code to "18702-7997." See Pub. 15 (Circular E), Employer's Tax Guide, for a list of IRS-approved private delivery services.

For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.

Cat. No. 10159Y

| 33333 | a. Control number | | For Official Use Only ►<br>OMB No. 1545-0008 | | | | |

| b. Kind of Payer (Check one) | 941 ☐ Military ☐ 943 ☐ 944 ☐<br>CT-1 ☐ Hshld emp. ☐ Medicare govt. emp. ☐ | Kind of Employer (Check one) | None apply ☐ 501c non-govt. ☐<br>State/local non-501c ☒ State/local 501c ☐ Federal govt. ☐ | Third-party sick pay ☐ (Check if applicable) |
|---|---|---|---|---|

| c. Total number of Forms W-2 | d. Establishment number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|
| 6 | | 451152 | 0 |

| e. Employer identification number (EIN) | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| 9052 | 451152 | 55942.8 |

| f. Employer's name | 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|---|
| Eric R Shibley MD PLLC | 451152 | 13083.4 |

| | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| | | |

| | 9 | 10 Dependent care benefits |
|---|---|---|

| g. Employer's address and ZIP code<br>4700 36th Ave SW Seattle WA 98126-2716 | 11 Nonqualified plans | 12a Deferred compensation |
|---|---|---|

| h. Other EIN used this year | 13 For third-party sick pay use only | 12b |
|---|---|---|

| 15 State | Employer's state ID number | 14 Income tax withheld by payer of third-party sick pay |
|---|---|---|
| WA | 603260109 | |

| 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax |
|---|---|---|---|
| | 0 | 0 | 0 |

Employer's contact person
Eric R Shibley

Employer's telephone number
206-938-4291

Employer's fax number
206-269-1412

Employer's email address
shibleenyc@yahoo.com

Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature ►    Title ► Manager    Date ► 04/24/202020

Form **W-3** Transmittal of Wage and Tax Statements    **2019**    Department of the Treasury<br>Internal Revenue Service

Send this entire page with the entire Copy A page of Form(s) W-2 to the Social Security Administration (SSA).
Photocopies are not acceptable. Do not send Form W-3 if you filed electronically with the SSA.
Do not send any payment (cash, checks, money orders, etc.) with Forms W-2 and W-3.

## Reminder

**Separate instructions.** See the 2019 General Instructions for Forms W-2 and W-3 for information on completing this form. Do not file Form W-3 for Form(s) W-2 that were submitted electronically to the SSA.

## Purpose of Form

Complete a Form W-3 Transmittal only when filing paper Copy A of Form(s) W-2, Wage and Tax Statement. Don't file Form W-3 alone. All paper forms **must** comply with IRS standards and be machine readable. Photocopies are **not** acceptable. Use a Form W-3 even if only one paper Form W-2 is being filed. Make sure both the Form W-3 and Form(s) W-2 show the correct tax year and Employer Identification Number (EIN). Make a copy of this form and keep it with Copy D (For Employer) of Form(s) W-2 for your records. The IRS recommends retaining copies of these forms for four years.

## E-Filing

The SSA strongly suggests employers report Form W-3 and Forms W-2 Copy A electronically instead of on paper. The SSA provides two free e-filing options on its Business Services Online (BSO) website.

• **W-2 Online.** Use fill-in forms to create, save, print, and submit up to 50 Forms W-2 at a time to the SSA.

• **File Upload.** Upload wage files to the SSA you have created using payroll or tax software that formats the files according to the SSA's *Specifications for Filing Forms W-2 Electronically (EFW2)*.

W-2 Online fill-in forms or file uploads will be on time if submitted by **January 31, 2020.** For more information, go to *www.SSA.gov/bso*. First time filers, select "*Register*"; returning filers select "*Log In*."

## When To File Paper Forms

Mail Form W-3 with Copy A of Form(s) W-2 by **January 31, 2020.**

## Where To File Paper Forms

Send this entire page with the entire Copy A page of Form(s) W-2 to:

**Social Security Administration
Direct Operations Center
Wilkes-Barre, PA 18769-0001**

**Note:** If you use "Certified Mail" to file, change the ZIP code to "18769-0002." If you use an IRS-approved private delivery service, add "ATTN: W-2 Process, 1150 E. Mountain Dr." to the address and change the ZIP code to "18702-7997." See Pub. 15 (Circular E), Employer's Tax Guide, for a list of IRS-approved private delivery services.

**For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.**

# Form **941 for 2019:** Employer's QUARTERLY Federal Tax Return

(Rev. January 2019)  Department of the Treasury — Internal Revenue Service

950117

OMB No. 1545-0029

Employer identification number (EIN) ☐☐☐ — ☐☐ ☐ 7 5 0 9

Name (not your trade name)  SS1 LLC

Trade name (if any)

Address  4700 36th Ave SW

Number   Street                                          Suite or room number

Seattle                                   WA    98126

City                                      State  ZIP code

Foreign country name      Foreign province/county   Foreign postal code

**Report for this Quarter of 2019**
(Check one.)

☐ 1: January, February, March

☐ 2: April, May, June

☐ 3: July, August, September

☒ 4: October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

## Part 1:  Answer these questions for this quarter.

| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: Mar. 12 (Quarter 1), June 12 (Quarter 2), Sept. 12 (Quarter 3), or Dec. 12 (Quarter 4) | **1** | 41 |
|---|---|---|---|
| 2 | Wages, tips, and other compensation . . . . . . . . . . . . . . . . . | **2** | 538000 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation . . . . . . | **3** | 0 . 00 |

4 If no wages, tips, and other compensation are subject to social security or Medicare tax   ☐ Check and go to line 6.

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages . . | 538000 . | × 0.124 = | 66712 . | 00 |
| 5b | Taxable social security tips . . . | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips . . | 538000 . | × 0.029 = | 15602 . | 00 |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d . . . . . . . . . . . . . . | **5e** | 82314 . 00 |
|---|---|---|---|
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) . . | **5f** | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f . . . . . . . . . . | **6** | 82314 . 00 |
| 7 | Current quarter's adjustment for fractions of cents . . . . . . . . . . . | **7** | . |
| 8 | Current quarter's adjustment for sick pay . . . . . . . . . . . . . . | **8** | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance . . . . . . | **9** | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 . . . . . . . . . . | **10** | 82314 . 00 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | **11** | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 . . . . . . | **12** | 82314 . 00 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | **13** | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions . . . | **14** | 82314 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference | . | Check one: ☐ Apply to next return. ☐ Send a refund. |

► **You MUST complete both pages of Form 941 and SIGN it.**

Next ►

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2019)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| SSI LLC | ███████ 7509 |

**Part 2:** Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

**16 Check one:** ☐ Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒ You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 27438 . 00 |
|---|---|---|
| | Month 2 | 27438 . 00 |
| | Month 3 | 27438 . 00 |
| Total liability for quarter | | 82314 . 20 | Total must equal line 12.

☐ You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

**Part 3:** Tell us about your business. If a question does NOT apply to your business, leave it blank.

17 If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . – ☐ Check here, and

enter the final date you paid wages [ / / ]

18 If you are a seasonal employer and you don't have to file a return for every quarter of the year . . ☐ Check here.

**Part 4:** May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number [ ] [ ]

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS. ☐☐☐☐☐

☐ No.

**Part 5:** Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X Sign your name here

| Print your name here | Eric R Shibley |
|---|---|
| Print your title here | Manager |

Date 4/22/2020

Best daytime phone 2069384291

**Paid Preparer Use Only**

Check if you are self-employed . . . ☐

| Preparer's name | | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | / / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | ZIP code | |

Form **941** (Rev. 1-2019)

950117

Form **941 for 2019:** **Employer's QUARTERLY Federal Tax Return**
(Rev. January 2019)
Department of the Treasury — Internal Revenue Service

OMB No. 1545-0029

Employer identification number (EIN) [redacted] – [redacted] ☐ 7 ☐ 0 ☐ 8 ☐ 8

Name (not your trade name) The A Team Holdings LLC

Trade name (if any)

Address 4700 36th Ave SW
Number    Street        Suite or room number
Seattle                    WA        98126
City                        State      ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2019**
(Check one.)

☐ 1: January, February, March
☐ 2: April, May, June
☐ 3: July, August, September
☒ 4: October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:** Answer these questions for this quarter.

| | | | |
|---|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | 1 | 48 |
| 2 | Wages, tips, and other compensation | 2 | 975000 . |
| 3 | Federal income tax withheld from wages, tips, and other compensation | 3 | 0 . |
| 4 | If no wages, tips, and other compensation are subject to social security or Medicare tax | | ☐ Check and go to line 6. |

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages | 975000 . | × 0.124 = | 120900 . | 00 |
| 5b | Taxable social security tips | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips. | 975000 . | × 0.029 = | 28275 . | 00 |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| | | | | |
|---|---|---|---|---|
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d | | 5e | 149175 . 00 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) | | 5f | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f | | 6 | 149175 . 00 |
| 7 | Current quarter's adjustment for fractions of cents | | 7 | . |
| 8 | Current quarter's adjustment for sick pay | | 8 | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance | | 9 | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 | | 10 | 149175 . 00 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | | 11 | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 | | 12 | 149175 . 00 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | | 13 | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions | | 14 | 149175 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference | . | Check one: ☐ Apply to next return. ☐ Send a refund. | |

▶ **You MUST complete both pages of Form 941 and SIGN it.**

Next ▶

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.

Cat. No. 17001Z        Form **941** (Rev. 1-2019)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| The A Team Holdings LLC | ▓7088 |

**Part 2:  Tell us about your deposit schedule and tax liability for this quarter.**

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16  Check one: ☐  Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒  You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 49725 . 00 |
|---|---|---|
| | Month 2 | 49725 . 00 |
| | Month 3 | 49725 . 00 |
| Total liability for quarter | | 149175 . 00 | Total must equal line 12. |

☐  You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

**Part 3:  Tell us about your business. If a question does NOT apply to your business, leave it blank.**

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . ☐ Check here, and

enter the final date you paid wages  __/__/__ .

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year . . ☐ Check here.

**Part 4:  May we speak with your third-party designee?**

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number _____

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS. ☐☐☐☐☐

☐ No.

**Part 5:  Sign here. You MUST complete both pages of Form 941 and SIGN it.**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Sign your name here  /signature/

Print your name here: Eric R Shibley
Print your title here: Manager

Date 4/21/2020

Best daytime phone: 2069384291

**Paid Preparer Use Only**  Check if you are self-employed ☐

| Preparer's name | | PTIN | |
| Preparer's signature | | Date | __/__ |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | | ZIP code | |

Page 2

Form **941** (Rev. 1-2019)

Form **941 for 2020:** **Employer's QUARTERLY Federal Tax Return**

(Rev. January 2020)   Department of the Treasury — Internal Revenue Service

950117

OMB No. 1545-0029

Employer identification number (EIN) [ ] – [ ] [7] [5] [0] [9]

Name (not your trade name) **SS1 LLC**

Trade name (if any)

Address **4700 36th Ave SW**

Number    Street    Suite or room number

Seattle    **WA**    98126

City    State    ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

[X] 1: January, February, March

[ ] 2: April, May, June

[ ] 3: July, August, September

[ ] 4: October, November, December

Go to *www.irs.gov/Form941* for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:    Answer these questions for this quarter.**

| | | | |
|---|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | 1 | 41 |
| 2 | Wages, tips, and other compensation . . . . . . . . . . . . . . . . . . | 2 | 656,000 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation . . . . . | 3 | 0 . 00 |
| 4 | If no wages, tips, and other compensation are subject to social security or Medicare tax | | Check and go to line 6. |

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages . . | 656000 . 00 | × 0.124 = | 81344 . 00 | |
| 5b | Taxable social security tips . . . | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips. . | 656000 . 00 | × 0.029 = | 1885 . 00 | |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| | | | |
|---|---|---|---|
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d . . . . . . . . . . . . . . . | 5e | 83229 . 00 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) . . . | 5f | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f . . . . . . . . . . . . | 6 | 83229 . 00 |
| 7 | Current quarter's adjustment for fractions of cents . . . . . . . . . . . . . | 7 | . |
| 8 | Current quarter's adjustment for sick pay . . . . . . . . . . . . . . . | 8 | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance . . . . . . | 9 | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 . . . . . . . . . . . | 10 | 83229 . 00 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11 | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 . . . . . . | 12 | . |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13 | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions . . . | 14 | 83229 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference [ ] . Check one: [ ] Apply to next return. [ ] Send a refund. | | |

► **You MUST complete both pages of Form 941 and SIGN it.**    Next ►

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| SS1 LLC | ▮7509 |

## Part 2: Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16 Check one: ☐  Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒  You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| | | |
|---|---|---|
| Tax liability: | Month 1 | 41614 . 50 |
| | Month 2 | 41614 . 50 |
| | Month 3 | . |
| Total liability for quarter | | 83229 . 00 |  Total must equal line 12.

☐  You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

## Part 3: Tell us about your business. If a question does NOT apply to your business, leave it blank.

17 If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . ☐ Check here, and

enter the final date you paid wages ___ / ___

18 If you are a seasonal employer and you don't have to file a return for every quarter of the year . . ☐ Check here.

## Part 4: May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number [ ]

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.   ☐ ☐ ☐ ☐ ☐

☐ No.

## Part 5: Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X Sign your name here

Print your name here: Eric R Shibley

Print your title here: Manager

Date 4/22/2020

Best daytime phone: 2069384291

### Paid Preparer Use Only

Check if you are self-employed . . . ☐

| | | | |
|---|---|---|---|
| Preparer's name | | PTIN | |
| Preparer's signature | | Date | / / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | ZIP code |

Page 2

Form **941** (Rev. 1-2020)

950117

Form **941 for 2020:** **Employer's QUARTERLY Federal Tax Return**
(Rev. January 2020)   Department of the Treasury — Internal Revenue Service

OMB No. 1545-0029

Employer identification number (EIN)  [redacted] – [redacted] 7 0 8 8

Name (not your trade name)  The A Team Holdings LLC

Trade name (if any)

Address  4700 36th Ave SW
Number   Street                                    Suite or room number

Seattle                                      WA      98126
City                                         State   ZIP code

Foreign country name        Foreign province/county    Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

- [X] 1: January, February, March
- [ ] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Go to www.irs.gov/Form941 for
instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:    Answer these questions for this quarter.**

| | | | |
|---|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | 1 | 48 |
| 2 | Wages, tips, and other compensation | 2 | 768,000 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation | 3 | 0 . 00 |

4   If no wages, tips, and other compensation are subject to social security or Medicare tax    [ ] Check and go to line 6.

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages | 768000 . 00 | × 0.124 = | 95232 . 00 | |
| 5b | Taxable social security tips | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips | 768,000 . 00 | × 0.029 = | 22,272 . 00 | |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| | | | |
|---|---|---|---|
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d | 5e | 117,504 . 00 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) | 5f | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f | 6 | 117,504 . 00 |
| 7 | Current quarter's adjustment for fractions of cents | 7 | . |
| 8 | Current quarter's adjustment for sick pay | 8 | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance | 9 | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 | 10 | 117,504 . 00 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11 | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 | 12 | . |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13 | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions | 14 | 117504 . 00 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference [        ] .   Check one: [ ] Apply to next return. [ ] Send a refund. | | |

Next ▶

▶ **You MUST complete both pages of Form 941 and SIGN it.**

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| The A Team Holdings LLC | 7088 |

**Part 2:** **Tell us about your deposit schedule and tax liability for this quarter.**

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16   Check one: ☐ Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒ You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 58752. 00 |
|---|---|---|
| | Month 2 | 58752. 00 |
| | Month 3 | 0. 00 |
| Total liability for quarter | | 117504. 00  Total must equal line 12. |

☐ You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

**Part 3:** **Tell us about your business. If a question does NOT apply to your business, leave it blank.**

17   If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . .   ☐ Check here, and

enter the final date you paid wages   /   /   .

18   If you are a seasonal employer and you don't have to file a return for every quarter of the year   . . .   ☒ Check here.

**Part 4:** **May we speak with your third-party designee?**

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.

☒ No.

**Part 5:** **Sign here. You MUST complete both pages of Form 941 and SIGN it.**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X   Sign your name here

| Print your name here | Eric R Shibley |
|---|---|
| Print your title here | Manager |
| Date   4/23/2020 | |
| Best daytime phone | 2069384291 |

**Paid Preparer Use Only**   Check if you are self-employed   . . . . ☐

| Preparer's name | Bal Singh | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | /   / |
| Firm's name (or yours if self-employed) | Freedom Tax | EIN | |
| Address | | Phone | |
| City | State | ZIP code | |

Page 2                                                         Form **941** (Rev. 1-2020)

# Form 941 for 2020: Employer's QUARTERLY Federal Tax Return

Form **941** (Rev. January 2020)   Department of the Treasury — Internal Revenue Service

950117

OMB No. 1545-0029

Employer identification number (EIN)  ▮▮ – ▮▮ 8 5 0 8

Name (not your trade name)  Dituri Construction LLC

Trade name (if any)

Address  4700 36th Ave SW
Number   Street   Suite or room number

City  Seattle   State  WA   ZIP code

Foreign country name   Foreign province/county   Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

- [x] 1: January, February, March
- [ ] 2: April, May, June
- [ ] 3: July, August, September
- [ ] 4: October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

## Part 1: Answer these questions for this quarter.

| | | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|---|
| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: Mar. 12 (Quarter 1), June 12 (Quarter 2), Sept. 12 (Quarter 3), or Dec. 12 (Quarter 4) | 1 | | | 49 | |
| 2 | Wages, tips, and other compensation | 2 | | | 784000 . 00 | |
| 3 | Federal income tax withheld from wages, tips, and other compensation | 3 | | | 0 . 00 | |
| 4 | If no wages, tips, and other compensation are subject to social security or Medicare tax | | | [ ] Check and go to line 6. | | |
| 5a | Taxable social security wages | 784000 . 00 | × 0.124 = | 97216 . 00 | | |
| 5b | Taxable social security tips | . | × 0.124 = | . | | |
| 5c | Taxable Medicare wages & tips | 784000 . 00 | × 0.029 = | 22736 . 00 | | |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | | |
| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d | 5e | | | 119952 . 00 | |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) | 5f | | | . | |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f | 6 | | | 119952 . 00 | |
| 7 | Current quarter's adjustment for fractions of cents | 7 | | | . | |
| 8 | Current quarter's adjustment for sick pay | 8 | | | . | |
| 9 | Current quarter's adjustments for tips and group-term life insurance | 9 | | | . | |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 | 10 | | | 119952 . 00 | |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11 | | | . | |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 | 12 | | | 119952 . 00 | |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13 | | | . | |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions | 14 | | | 119952 . 00 | |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference | | . | Check one: [ ] Apply to next return. [ ] Send a refund. | | |

Next ▶

▶ You MUST complete both pages of Form 941 and SIGN it.

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.   Cat. No. 17001Z   Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| Dituri Construction LLC | ███ 8508 |

## Part 2: Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

**16 Check one:**

[ ] Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

[x] **You were a monthly schedule depositor for the entire quarter.** Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 59976 . 00 |
|---|---|---|
| | Month 2 | 59976 . 00 |
| | Month 3 | 0 . 00 |
| Total liability for quarter | | 119952 . 00 | Total must equal line 12.

[ ] **You were a semiweekly schedule depositor for any part of this quarter.** Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

## Part 3: Tell us about your business. If a question does NOT apply to your business, leave it blank.

17 If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . . [ ] Check here, and

enter the final date you paid wages [ / / ]

18 If you are a seasonal employer and you don't have to file a return for every quarter of the year . . [ ] Check here.

## Part 4: May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

[ ] Yes. Designee's name and phone number [_____] [_____]

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS. [ ][ ][ ][ ][ ]

[ ] No.

## Part 5: Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

**X** Sign your name here

| Print your name here | Eric R Shibley |
|---|---|
| Print your title here | Manager |

Date 4/22/2020

Best daytime phone 2069384291

### Paid Preparer Use Only

Check if you are self-employed . . . [ ]

| Preparer's name | | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | / / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | ZIP code | |

Page 2

Form **941** (Rev. 1-2020)

950117

**Form 941 for 2020:** Employer's QUARTERLY Federal Tax Return
(Rev. January 2020)    Department of the Treasury — Internal Revenue Service

OMB No. 1545-0029

Employer identification number (EIN) ██ – ██ 3 5 8 0

Name (not your trade name)  **SFC LLC**

Trade name (if any)

Address  4700 36th Ave SW
Number    Street    Suite or room number

Seattle    WA    98126
City    State    ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

[x] **1:** January, February, March

[ ] **2:** April, May, June

[ ] **3:** July, August, September

[ ] **4:** October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:    Answer these questions for this quarter.**

| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: Mar. 12 (Quarter 1), June 12 (Quarter 2), Sept. 12 (Quarter 3), or Dec. 12 (Quarter 4) | 1 | 6 |
| 2 | Wages, tips, and other compensation . . . . . . . . . . . . . . . . . . . | 2 | 75200 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation . . . . . . | 3 | 0 . 00 |

4   If no wages, tips, and other compensation are subject to social security or Medicare tax    [ ] Check and go to line 6.

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages . . | 75200 . 00 | × 0.124 = | 9324 . 80 | |
| 5b | Taxable social security tips . . . | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips. . | 75200 . 00 | × 0.029 = | 2180 . 80 | |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d . . . . . . . . . . . . . . . | 5e | 11505 . 60 |
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) . . | 5f | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f . . . . . . . . . . . | 6 | 11505 . 60 |
| 7 | Current quarter's adjustment for fractions of cents . . . . . . . . . . . . . | 7 | . |
| 8 | Current quarter's adjustment for sick pay . . . . . . . . . . . . . . . . | 8 | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance . . . . . . | 9 | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 . . . . . . . . . . | 10 | 11505 . 60 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11 | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 . . . . . | 12 | 11505 . 60 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13 | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions . . . | 14 | 11505 . 60 |

15   Overpayment. If line 13 is more than line 12, enter the difference [ . ]   Check one: [ ] Apply to next return.  [ ] Send a refund.

Next ▶

▶ **You MUST complete both pages of Form 941 and SIGN it.**

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.    Cat. No. 17001Z    Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| SFS LLC | ▮▮3580 |

## Part 2: Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16  Check one: ☐  Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒  You were a monthly schedule depositor for the entire quarter. Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 5752 . 80 |
|---|---|---|
| | Month 2 | 5752 . 80 |
| | Month 3 | 0 . 00 |
| Total liability for quarter | | 11505 . 60 | Total must equal line 12.

☐  You were a semiweekly schedule depositor for any part of this quarter. Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

## Part 3: Tell us about your business. If a question does NOT apply to your business, leave it blank.

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . .  ☐ Check here, and

enter the final date you paid wages   /  /   .

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year . . .  ☐ Check here.

## Part 4: May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.  ☐☐☐☐☐

☐ No.

## Part 5: Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

X  Sign your name here

Print your name here: Eric R Shibley
Print your title here: Manager

Date 4/22/2020

Best daytime phone: 2069384291

### Paid Preparer Use Only

Check if you are self-employed . . . . ☐

| Preparer's name | | PTIN | |
| Preparer's signature | | Date | /  / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | State | ZIP code | |

Page 2

Form **941** (Rev. 1-2020)

Form **941 for 2020:** **Employer's QUARTERLY Federal Tax Return**
(Rev. January 2020)     Department of the Treasury — Internal Revenue Service

950117
OMB No. 1545-0029

Employer identification number (EIN)  ▮ — ▮▮▮ 0 5 2

Name (not your trade name)  Eric R Shibley MD PLLC

Trade name (if any)

Address  4700 36th Ave SW
Number     Street                    Suite or room number

Seattle                    WA    98126
City                       State  ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

[X] 1: January, February, March

[ ] 2: April, May, June

[ ] 3: July, August, September

[ ] 4: October, November, December

Go to www.irs.gov/Form941 for instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:    Answer these questions for this quarter.**

1   Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4)   **1**   5

2   Wages, tips, and other compensation . . . . . . . . . . . . . . . . . .   **2**   75800 . 00

3   Federal income tax withheld from wages, tips, and other compensation . . . . .   **3**   0 .

4   If no wages, tips, and other compensation are subject to social security or Medicare tax   [ ] Check and go to line 6.

|     |                                                              | Column 1  |           | Column 2  |
|-----|--------------------------------------------------------------|-----------|-----------|-----------|
| 5a  | Taxable social security wages . .                            | 75800 .   | × 0.124 = | 9399 . 20 |
| 5b  | Taxable social security tips . . .                           | .         | × 0.124 = | .         |
| 5c  | Taxable Medicare wages & tips. .                             | 75800 .   | × 0.029 = | 2198 . 20 |
| 5d  | Taxable wages & tips subject to Additional Medicare Tax withholding | .   | × 0.009 = | .         |

5e   Add Column 2 from lines 5a, 5b, 5c, and 5d . . . . . . . . . . . . . .   **5e**   11597 . 40

5f   Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) . .   **5f**   .

6   Total taxes before adjustments. Add lines 3, 5e, and 5f . . . . . . . . . . .   **6**   11597 . 40

7   Current quarter's adjustment for fractions of cents . . . . . . . . . . . . .   **7**   .

8   Current quarter's adjustment for sick pay . . . . . . . . . . . . . . . .   **8**   .

9   Current quarter's adjustments for tips and group-term life insurance . . . . . .   **9**   .

10   Total taxes after adjustments. Combine lines 6 through 9 . . . . . . . . . .   **10**   11597 . 40

11   Qualified small business payroll tax credit for increasing research activities. Attach Form 8974   **11**   .

12   Total taxes after adjustments and credits. Subtract line 11 from line 10 . . . . .   **12**   11597 . 40

13   Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter   **13**   .

14   Balance due. If line 12 is more than line 13, enter the difference and see instructions . . . .   **14**   11597 . 40

15   Overpayment. If line 13 is more than line 12, enter the difference   .   Check one: [ ] Apply to next return. [ ] Send a refund.

► You MUST complete both pages of Form 941 and SIGN it.                                          Next ►
For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.      Cat. No. 17001Z      Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| Eric R Shibley MD PLLC | ████ 0052 |

## Part 2: Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

**16  Check one:** ☐  Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒  **You were a monthly schedule depositor for the entire quarter.** Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 5798 . 70 |
|---|---|---|
| | Month 2 | 5798 . 70 |
| | Month 3 | 0 . 00 |
| **Total liability for quarter** | | 11597 . 40  **Total must equal line 12.** |

☐  **You were a semiweekly schedule depositor for any part of this quarter.** Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

## Part 3: Tell us about your business. If a question does NOT apply to your business, leave it blank.

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . . . . . . . .  ☐ Check here, and

enter the final date you paid wages  [  /    /      ] .

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year  . .  ☐ Check here.

## Part 4: May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number  [                    ]   [                    ]

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.  ☐ ☐ ☐ ☐ ☐

☒ No.

## Part 5: Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| X | Sign your name here | | Print your name here | Eric R Shibley |
|---|---|---|---|---|
| | | | Print your title here | Manager |
| | Date | 4/22/2020 | Best daytime phone | 2069384291 |

### Paid Preparer Use Only

Check if you are self-employed  . . . ☐

| Preparer's name | | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | /   / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | ZIP code | |

Form **941** (Rev. 1-2020)

Form **941 for 2020:** Employer's QUARTERLY Federal Tax Return
(Rev. January 2020)   Department of the Treasury — Internal Revenue Service

950117
OMB No. 1545-0029

Employer identification number (EIN)  ▮ — ▮  5  8  4  9

Name (not your trade name) ES1 LLC

Trade name (if any)

Address  4700 36th Ave SW
Number    Street                              Suite or room number

Seattle                        WA      98126
City                           State   ZIP code

Foreign country name    Foreign province/county    Foreign postal code

**Report for this Quarter of 2020**
(Check one.)

[x] 1: January, February, March

[ ] 2: April, May, June

[ ] 3: July, August, September

[ ] 4: October, November, December

Go to www.irs.gov/Form941 for
instructions and the latest information.

Read the separate instructions before you complete Form 941. Type or print within the boxes.

**Part 1:**   Answer these questions for this quarter.

| 1 | Number of employees who received wages, tips, or other compensation for the pay period including: *Mar. 12* (Quarter 1), *June 12* (Quarter 2), *Sept. 12* (Quarter 3), or *Dec. 12* (Quarter 4) | 1 | 5 |
|---|---|---|---|
| 2 | Wages, tips, and other compensation . . . . . . . . . . . . . . | 2 | 76600 . 00 |
| 3 | Federal income tax withheld from wages, tips, and other compensation . . . . . . | 3 | 0 . |
| 4 | If no wages, tips, and other compensation are subject to social security or Medicare tax | | [ ] Check and go to line 6. |

| | | Column 1 | | Column 2 | |
|---|---|---|---|---|---|
| 5a | Taxable social security wages . . | 76600 . | × 0.124 = | 9498 . | 40 |
| 5b | Taxable social security tips . . . . | . | × 0.124 = | . | |
| 5c | Taxable Medicare wages & tips. . | 76600 . | × 0.029 = | 2221 . | 40 |
| 5d | Taxable wages & tips subject to Additional Medicare Tax withholding | . | × 0.009 = | . | |

| 5e | Add Column 2 from lines 5a, 5b, 5c, and 5d . . . . . . . . . . . . . . . . . . | 5e | 11719 . 80 |
|---|---|---|---|
| 5f | Section 3121(q) Notice and Demand—Tax due on unreported tips (see instructions) . . | 5f | . |
| 6 | Total taxes before adjustments. Add lines 3, 5e, and 5f . . . . . . . . . . . . | 6 | 11719 . 80 |
| 7 | Current quarter's adjustment for fractions of cents . . . . . . . . . . . . . | 7 | . |
| 8 | Current quarter's adjustment for sick pay . . . . . . . . . . . . . . . . . | 8 | . |
| 9 | Current quarter's adjustments for tips and group-term life insurance . . . . . . . | 9 | . |
| 10 | Total taxes after adjustments. Combine lines 6 through 9 . . . . . . . . . . | 10 | 11719 . 80 |
| 11 | Qualified small business payroll tax credit for increasing research activities. Attach Form 8974 | 11 | . |
| 12 | Total taxes after adjustments and credits. Subtract line 11 from line 10 . . . . . . | 12 | 11719 . 80 |
| 13 | Total deposits for this quarter, including overpayment applied from a prior quarter and overpayments applied from Form 941-X, 941-X (PR), 944-X, or 944-X (SP) filed in the current quarter | 13 | . |
| 14 | Balance due. If line 12 is more than line 13, enter the difference and see instructions . . . | 14 | 11719 . 80 |
| 15 | Overpayment. If line 13 is more than line 12, enter the difference [ . ]  Check one: [ ] Apply to next return [ ] Send a refund | | |

► You MUST complete both pages of Form 941 and SIGN it.                                         Next ►

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.   Cat. No. 17001Z   Form **941** (Rev. 1-2020)

950217

| Name (not your trade name) | Employer identification number (EIN) |
|---|---|
| ESI LLC | 5849 |

### Part 2: Tell us about your deposit schedule and tax liability for this quarter.

If you are unsure about whether you are a monthly schedule depositor or a semiweekly schedule depositor, see section 11 of Pub. 15.

16  Check one: ☐ Line 12 on this return is less than $2,500 or line 12 on the return for the prior quarter was less than $2,500, and you didn't incur a $100,000 next-day deposit obligation during the current quarter. If line 12 for the prior quarter was less than $2,500 but line 12 on this return is $100,000 or more, you must provide a record of your federal tax liability. If you are a monthly schedule depositor, complete the deposit schedule below; if you are a semiweekly schedule depositor, attach Schedule B (Form 941). Go to Part 3.

☒ **You were a monthly schedule depositor for the entire quarter.** Enter your tax liability for each month and total liability for the quarter, then go to Part 3.

| Tax liability: | Month 1 | 5859 . 90 |
|---|---|---|
| | Month 2 | 5859 . 90 |
| | Month 3 | 0 . 00 |
| Total liability for quarter | | 11719 . 80 | Total must equal line 12.

☐ **You were a semiweekly schedule depositor for any part of this quarter.** Complete Schedule B (Form 941), Report of Tax Liability for Semiweekly Schedule Depositors, and attach it to Form 941.

### Part 3: Tell us about your business. If a question does NOT apply to your business, leave it blank.

17  If your business has closed or you stopped paying wages . . . . . . . . . . . . . . . . .   ☐ Check here, and

enter the final date you paid wages          /   /          .

18  If you are a seasonal employer and you don't have to file a return for every quarter of the year   . . .   ☐ Check here.

### Part 4: May we speak with your third-party designee?

Do you want to allow an employee, a paid tax preparer, or another person to discuss this return with the IRS? See the instructions for details.

☐ Yes. Designee's name and phone number

Select a 5-digit Personal Identification Number (PIN) to use when talking to the IRS.   ☐ ☐ ☐ ☐ ☐

☒ No.

### Part 5: Sign here. You MUST complete both pages of Form 941 and SIGN it.

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| ✗ Sign your name here | | Print your name here | Eric R Shibley |
|---|---|---|---|
| | | Print your title here | Manager |
| Date | 4/22/2020 | Best daytime phone | 2069384291 |

**Paid Preparer Use Only**                    Check if you are self-employed  . . . .  ☐

| Preparer's name | | PTIN | |
|---|---|---|---|
| Preparer's signature | | Date | /   / |
| Firm's name (or yours if self-employed) | | EIN | |
| Address | | Phone | |
| City | | State | ZIP code | |



## UNITED STATES OF AMERICA

# The State of Washington

## Secretary of State

**I, KIM WYMAN**, Secretary of State of the State of Washington and custodian of its seal, hereby issue this

### CERTIFICATE OF EXISTENCE

### OF

### SFC LLC

**I CERTIFY** that the records on file in this office show that the above named entity was formed under the laws of the State of Washington and that its public organic record was filed in Washington and became effective on 11/03/2017.

**I FURTHER CERTIFY** that the entity's duration is Perpetual, and that as of the date of this certificate, the records of the Secretary of State do not reflect that this entity has been dissolved.

**I FURTHER CERTIFY** that all fees, interest, and penalties owed and collected through the Secretary of State have been paid.

**I FURTHER CERTIFY** that the most recent annual report has been delivered to the Secretary of State for filing and that proceedings for administrative dissolution are not pending.

Issued Date:   06/03/2020
UBI Number:   604 183 433



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital

Kim Wyman, Secretary of State

Date Issued: 06/03/2020

# BUSINESS INFORMATION

Business Name:
**SFC LLC**

UBI Number:
**604 183 433**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**4700 36TH AVE SW, SEATTLE, WA, 98126-2716, UNITED STATES**

Principal Office Mailing Address:
**4700 36TH AVE SW, SEATTLE, WA, 98126-2716, UNITED STATES**

Expiration Date:
**11/30/2020**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**11/03/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**ANY LAWFUL PURPOSE, CONSTRUCTION**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**ERIC SHIBLEY**

Street Address:
**4700 36TH AVE SW, SEATTLE, WA, 98126-2716, UNITED STATES**

Mailing Address:
**4700 36TH AVE SW, SEATTLE, WA, 98126-2716, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|-------|----------------|-------------|------------|-----------|
| GOVERNOR | INDIVIDUAL | | ERIC | SHIBLEY |

Operating Agreement

SFC LLC,
a Washington Limited Liability Company

THIS OPERATING AGREEMENT of SFC LLC (the "Company") is entered into as of the date set forth on the signature page of this Agreement by each of the Members listed on Exhibit A of this Agreement.

A.    The Members have formed the Company as a Washington limited liability company under the Washington Limited Liability Company Act. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized under the laws of the state of Washington. The Members hereby adopt and approve the certificate of formation of the Company filed with the Washington Secretary of State.

B.    The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specify their relative rights and obligations.

## ARTICLE 1: DEFINITIONS

Capitalized terms used in this Agreement have the meanings specified in this Article 1 or elsewhere in this Agreement and if not so specified, have the meanings set forth in the Washington Limited Liability Company Act.

"Agreement" means this Operating Agreement of the Company, as may be amended from time to time.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of income and gain, (2) decreased by such Member's share of losses and deductions, (3) decreased by any distributions made by the Company to such Member, and (4) otherwise adjusted as required in accordance with applicable tax laws.

"Capital Contribution" means, with respect to any Member, the total value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Company by such Member, as listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement.

" Exhibit" means a document attached to this Agreement labeled as "Exhibit A," "Exhibit B," and so forth, as such document may be amended, updated, or replaced from time to time according to the terms of this Agreement.

"Manager" means each Person who has authority to manage the business and affairs of the Company pursuant to this Agreement; such Persons are listed on Exhibit B, as may be updated from time to time according to the terms of this Agreement. A Manager may be, but is not required to be, a Member.

"Member" means each Person who acquires Membership Interest pursuant to this Agreement. The Members are listed on Exhibit A, as may be updated from time to time according to the terms of this Agreement. Each Member has the rights and obligations specified in this Agreement.

"Membership Interest" means the entire ownership interest of a Member in the Company at any particular time, including the right to any and all benefits to which a Member may be eJ1titled as provided in this Agreement and under the Washington Limited Liability Company Act, together with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

"Ownership Interest" means the Percentage Interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

"Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either:

A.      If ownership in the Company is expressed in terms of percentage, the percentage set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement; or

B.     If ownership in the Company is expressed in Units, the ratio, expressed as a percentage, of:

    (1)     the number of Units owned by the Member (expressed as "MU" in the equation below) divided by

    (2)     the total number of Units owned by all of the Members of the Company (expressed as "TU" in the equation below).

        Percentage Interest$= \dfrac{MU}{TU}$

"Person" means an individual (natural person), partnership, limited partnership, trust, estate, association, corporation, limited liability company, or other entity, whether domestic or foreign.

"Units" mean, if ownership in the Company is expressed in Units, units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest which, if applicable, is expressed as the number of Units set forth opposite the name of each Member on Exhibit A, as may be adjusted from time to time pursuant to this Agreement.

## ARTICLE 2: CAPITAL CONTRIBUTIONS, ADDITONAL MEMBERS, CAPITAL ACCOUNTS AND LIMITED LIABILITY

2.1  Initial Capital Contributions . The names of all Members and each of their respective addresses, initial Capital Contributions, and Ownership Interests must be set forth on Exhibit A. Each Member has made or agrees to make the initial Capital Contribution set forth next to such Membe1's name on Exhibit A to become a Member of the Company.

2.2  Subsequent Capital Contributions. Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Members. If subsequent Capital Contributions are unanimously agreed by all the Members in a consent in writing, the Members may make such additional Capital Contributions on a pro rata basis in accordance with each Member's respective Percentage Interest or as otherwise unanimously agreed by the Members.

2.3  Additional Members.

A.      With the exception of a transfer of interest (1) governed by Article 7 of this Agreement or (2) otherwise expressly authorized by this Agreement, additional Persons may become Members of the Company and be issued additional Ownership Interests only if approved by and on terms determined by a unanimous written agreement signed by all of the existing Members.

B.      Before a Person may be admitted as a Member of the Company, that Person must sign and deliver to the Company the documents and instrun1ents, in the form and containing the information required by the Company, that the Managers deem necessary or desirable. Membership Interests of new Members will be allocated according to the terms of this Agreement.

2.4  Capital Accounts. Individual Capital Accounts must be maintained for each Member, unless (a) there is only one Member of the Company and (b) the Company is exempt according to applicable tax laws. Capital Accounts must be maintained in accordance with all applicable tax laws.

2.5  Interest. No interest will be paid by the Company or otherwise on Capital Contributions or on the balance of a Member's Capital Account.

2.6  Limited Liability; No Authority. A Member will not be bound by, or be personally liable for, the expenses, liabilities, debts, contracts, or obligations of the Company, except as otherwise provided in this Agreement or as required by the Washington Limited Liability Company Act. Unless expressly provided in this Agreement, no Member, acting alone, has any authority to undertake or assume any obligation, debt, or responsibility, or otherwise act on behalf of, the Company or any other Member.

## ARTICLE 3: ALLOCATIONS AND DISTRIBUTIONS

3.1  Allocations. Unless otherwise agreed to by the unanimous consent of the Members any income, gain, loss, deduction, or credit of the Company will be allocated for accounting and tax purposes on a pro rata basis in proportion to the respective Percentage Interest held by each Member and in compliance with applicable tax laws.

*l'\*

3.2  Distributions. The Company will have the right to make distributions of cash and property to the Members on a pro rata basis in proportion to the respective Percentage Interest held by each Member. The timing and amount of distributions will be determined by the Managers in accordance with the Washington Limited Liability Company Act.

3.3  Limitations on Distributions. The Company must not make a distribution to a Member if, after giving effect to the distribution:

A.      The Company would be unable to pay its debts as they become due in the usual course of business; or

B.      The fair value of the Company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of Members, if any, whose preferential rights are superior to those of the Members receiving the distribution.

## ARTICLE 4: MANAGEMENT

4.1  Management.

A.      Generally. Subject to the terms of this Agreement and the Washington Limited Liability Company Act, the business and affairs of the Company will be managed by the Board of Managers, as further described below. The Members initially nominate and elect the Person(s) set forth on Exhibit B to serve as the Manager(s) of the Company. The Managers will act under the direction of the Members and may be elected or removed at any time, for any reason or no reason, by the Members holding a majority of the Voting Interest of the Company. Exhibit B must be amended to reflect any changes in Managers.

B.      Approval and Action. Unless greater or other authorization is required pursuant to this Agreement or under the Washington Limited Liability Company Act for the Company to engage in an activity or transaction, all activities or transactions must be approved by a majority of Managers, to constitute the act of the Company or serve to bind the Company, but if the Managers cannot reach a majority vote, the dispute will be submitted to the Members to be resolved by the affirmative vote of the Members holding at least a majority of the Voting Interest of the Company. With such approval, the signature of any Managers authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved.

Without such approval, no Managers acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to so bind the Company.

C.    Certain Decisions Requiring Greater Authorization. Notwithstanding clause B above, the following matters require unanimous approval of the Members in a consent in writing to constitute an act of the Company:

(i)    A material change in the purposes or the nature of the Company's business;

(ii)    With the exception of a transfer of interest governed by Article 7 of this Agreement, the admission of a new Member or a change in any Member's Membership Interest, Ownership Interest, Percentage Interest, or Voting Interest in any manner other than in accordance with this Agreement;

(iii)    The merger of the Company with any other entity or the sale of all or substantially all of the Company's assets; and

(iv)    The amendment of this Agreement.

4.2  Meetings of Managers. Regular meetings of the Managers are not required but may be held at such time and place as the Managers deem necessary or desirable for the reasonable management of the Company. Meetings may take place in person, by conference call, or by any other means permitted under the Washington Limited Liability Company Act. In addition, Company actions requiring a vote may be carried out without a meeting if all of the Managers consent in writing to approve the action.

4.3  Officers. The Managers are authorized to appoint one or more officers from time to time. The officers will have the titles, the authority, exercise the powers, and perform the duties that the Managers determine from time to time. Each officer will continue to perform and hold office until such time as (a) the officer's successor is chosen and appointed by the Managers; or (b) the officer is dismissed or terminated by the Managers, which termination will be subject to applicable law and, if an effective employment agreement exists between the officer and the Company, the employment agreement. Subject to applicable law and the employment agreement (if any), each officer will serve at the direction of Managers, and may be terminated, at any time and for any reason, by the Managers.

-6-

## ARTICLE 5: ACCOUNTS AND ACCOUNTING

5.1  Accounts. The Company must maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members during normal business hours upon reasonable notice by the Members wishing to inspect or copy the records or their authorized representatives, for purposes reasonably related to the Membership Interest of such Members. The costs of inspection and copying will be borne by the respective Member.

5.2  Records . The Managers will keep or cause the Company to keep the following business records.

> (i)  An up to date list of the Members, each of their respective full legal names, last known business or residence address, Capital Contributions, the amount and terms of any agreed upon future Capital Contributions, and Ownership Interests, and Voting Interests;

> (ii)  A copy of the Company's federal, state, and local tax in formation and income tax returns and reports, if any, for the six most recent taxable years;

> (iii)  A copy of the certificate of formation of the Company, as may be amended from time to time ("Certificate of Formation"); and

> (iv)  An original signed copy, which may include counterpart signatures, of this Agreement, and any amendments to this Agreement, signed by all then-current Members.

5.3  Income Tax Returns. Within 45 days after the end of each taxable year, the Company will use its best efforts to send each of the Members all information necessary for the Members to complete their federal and state tax information, returns, and rep or ts and a copy of the Company's federal, state, and local tax information or income tax retun1S and  reports for such year.

5.4  Subchapter S Election. The Company may, upon unanimous consent of the Members, elect to be treated for income tax purposes as an S Corporation. This designation may be changed as permitted under the Internal Revenue Code Section 1362(d) and applicable Regulations.

-7-

5.5  Tax Matters Member. Anytime the Company is required to designate or select a tax matters partner pursuant to Section 6231(a)(7) of the Internal Revenue Code and any regulations issued by the Internal Revenue Service, the Members must designate one of the Members as the tax matters partner of the Company and keep such designation in effect at all times.

5.6  Banking. All funds of the Company must be deposited in one or more bank accounts in the name of the Company with one or more recognized financial institutions. The Managers are authorized to establish such accounts and complete, sign, and de live r any banking resolutions reasonably required by the respective financial institutions in order to establish an account.

## ARTICLE 6: MEMBERSHIP - VOTING AND MEETINGS

6.1  Members and Voting Rights. The Members have the right and power to vote on all matters with respect to which the Certificate of Formation, this Agreement, or the Washington Limited Liability Company Act requires or permits. Unless otherwise stated in this Agreement (for example, in Section 4.1(c))or required under the Washing ton Limited Liability Company Act, the vote of the Members holding at least a majority of the Voting Interest of the Company is required to approve or carry out an action.

6.2  Meetings of Members. Annual, regular, or special meetings of the Members are not required but may be held at such time and place as the Members deem necessary or desirable for the reasonable management of the Company. A written notice setting forth the date, time, and location of a meeting must be sent within a reasonable period of time before the date of the meeting to each Member entitled to vote at the meeting. A Member may waive notice of a meeting by sending a signed waiver to the Company's principal executive office or as otherwise provided in the Washington Limited Liability Company Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Washington Limited Liability Company Act, including by conference call or similar communications equipment. Any action that could be taken at a meeting may be approved by a consent in writing that describes the action to be taken and is signed by Members holding the minimum Voting Interest required to approve the action. If any action is taken without a meeting and without unanimous written consent of the Members, notice of such action must be sent to each Member that did not consent to the action.

# ARTICLE 7: WITHDRAWAL AND TRANSFERS OF MEMBERSHIP INTERESTS

7.1     Withdrawal. Members may withdraw from the Company prior to the dissolution and winding up of the Company (a) by transferring or assigning all of their respective Membership Interests pursuant to Section 7.2 below, or (b) if all of the Members unanimously agree in a written consent. Subject to the provisions of Article 3, a Member that withdraws pursuant to this Section 7.1 will be entitled to a distribution from the Company in an amoU11t equal to such Member's Capital Account.

7.2     Restrictions on Transfer; Admission of Transferee. A Member may transfer Membership Interests to any other Person without the consent of any other Member. A person may acquire Membership Interests directly from the Company upon the written consent of all Members. A Person that acquires Membership Interests in accordance with this Section 7.2 will be admitted as a Member of the Company only after the requirements of Section 2.3(b) are complied with in full.

## ARTICLE 8: DISSOLUTION

8.1     Dissolution . The Company will be dissolved upon the first to occur of the following events:

(i)     The unanimous agreement of all Members in a consent in writing to dissolve the Company;

(ii)    Entry of a decree of judicial dissolution under Washington Limited Liability Company Act;

(iii)   **At** any time that there are no Members, unless and provided that the Company is not otherwise required to be dissolved and wound up, within 90 days after the occurrence of the event that terminated the continued membership of the last remaining Member, the legal representative of the last remaining Member agrees in writing to continue the Company and (i) to become a Member; or (ii) to the extent that the last remaining Member assigned its interest in the Company, to cause the Member's assignee to become a Member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining Member;

-9-

Company Agent seeking indemnification) or a majority of the Managers that are not seeking indemnification, as the case may be. Before the Company makes any such payment of Expenses, the Company Agent seeking indemnification must deliver a written undertaking to the Company stating that such Company Agent will repay the applicable Expenses to the Company unless it is ultimately determined that the Company Agent is entitled or required to be indemnified and held harmless by the Company (as set forth in Sections 9.1or 9.2 above or as otherwise required by applicable law).

## ARTICLE 10: GENERAL PROVISIONS

10.1 Notice. (a)-Any notices (including requests, demands, or other communications ) to be sent by one party to another party in connection with this Agreement must be in writing and delivered personally, by reputable overnight courier, or by certified mail (or equivalent service offered by the postal service from time to time) to the following addresses or as otherwise notified in accordance with this Section: (i) if to the Company, notices must be sent to the Company's principal executive office; and (ii) if to a Member, notices must be sent to the Member's last known address for notice on record. (b) Any party to this Agreement may change its notice address by sending written notice of such change to the Company in the manner specified above. Notice will be deemed to have been duly given as follows: (i) upon delivery, if delivered personally or by reputable overnight carrier or (ii) five days after the date of posting if sent by certified mail.

10.2 Entire Agreement; Amendment. This Agreement along with the Certificate of Formation (together, the "Organizational Documents"), constitute the entire agreement among the Members and replace and supersede all prior written and oral understandings and agreements with respect to the subject matter of this Agreement, except as otherwise required by the Washington Limited Liability Company Act. There are no representations, agreements, arrangements, or undertakings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not fully expressed in the Organizational Documents. This Agreement may not be modified or amended in any respect, except in a writing signed by all of the Members except as otherwise required or permitted by the Washington Limited Liability Company Act.

10.3 Governing Law; Severability. This Agreement will be construed and enforced in accordance with the laws of the state of Washington. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining

-11-

provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

10.4 Further Action. Each Member agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

10.5 No Third Party Beneficiary. This Agreement is made solely for the benefit of the parties to this Agreement and their respective permitted successors and assigns, and no other Person or entity will have or acquire any right by virtue of this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their heirs, personal representatives, and permitted successors and assigns.

10.6 Incorporation by Reference. The recitals and each appendix, exhibit, schedule, and other document attached to or referred to in this Agreement are hereby incorporated into this Agreement by reference.

10.7 Counterparts. This Agreement may be executed in any number of counterparts with the same effect as if all of the Members signed the same copy. All counterparts will be construed together and will constitute one agreement.

*[Remainder Intentio1111lly Left Blank.]*

-12-

## EXHIBIT A
## MEMBERS

The Members of the Company and their respective addresses, Capital Contributions, and Ownership Interests are set forth below. The Members agree to keep this Exhibit Accurate and updated in accordance with the terms of this Agreement, including, but not limited to, Sections 2.1, 2.3, 2.4, 7.1, 7.2, and 10.1.

| Members | Capital Contribution | Percentage Interest |
|---|---|---|
| Eric Ryan Shibley, Manager/Governor<br>Address:<br>4700 36th Ave. SW<br>Seattle, Washington 98126 | 100% | 100% |

**IN WITNESS WHEREOF** the parties have executed or caused to be executed this Operating Agreement and do each hereby represent and warrant that their respective signatory, whose signature appears below, has been and is, on the date of this Agreement, duly authorized to execute this Agreement.

Dated: 11/19/2017

_____
Signature of Eric Ryan Shibley

**DO NOT STAPLE**

| 33333 | a Control number | For Official Use Only ▶ OMB No. 1545-0008 | | |
|---|---|---|---|---|

| b Kind of Payer (Check one) | 941 ☒  Military ☐  943 ☐  944 ☐  CT-1 ☐  Hshld. emp. ☐  Medicare govt. emp. ☐ | Kind of Employer (Check one) | None apply ☒  State/local non-501c ☐  501c non-govt. ☐  State/local 501c ☐  Federal govt. ☐ | Third-party sick pay (Check if applicable) ☐ |
|---|---|---|---|---|

| c Total number of Forms W-2 | d Establishment number | 1 Wages, tips, other compensation | 451200 | 2 Federal income tax withheld | 0 |
|---|---|---|---|---|---|
| 6 | | | | | |

| e Employer identification number (EIN) | 3580 | 3 Social security wages | 451200 | 4 Social security tax withheld | 55948.8 |
|---|---|---|---|---|---|

| f Employer's name | | 5 Medicare wages and tips | 451200 | 6 Medicare tax withheld | 13084.8 |
|---|---|---|---|---|---|
| SFC LLC | | | | | |

| | | 7 Social security tips | | 8 Allocated tips | |
|---|---|---|---|---|---|
| | | 9 | | 10 Dependent care benefits | |
| 4700 36th Ave SW Seattle WA 98126-2716 | | 11 Nonqualified plans | | 12a Deferred compensation | |
| g Employer's address and ZIP code | | 13 For third-party sick pay use only | | 12b | |
| h Other EIN used this year | | | | | |

| 15 State WA | Employer's state ID number 603183433 | 14 Income tax withheld by payer of third-party sick pay | | | |
|---|---|---|---|---|---|
| 16 State wages, tips, etc. | 17 State income tax 0 | 18 Local wages, tips, etc. 0 | | 19 Local income tax 0 | |

| Employer's contact person | | Employer's telephone number | For Official Use Only |
|---|---|---|---|
| Eric R Shibley | | 206-938-4291 | |
| Employer's fax number | 206-260-1412 | Employer's email address shibley98271@gmail.com | |

Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature ▶ Eric R Shibley          Title ▶ Manager          Date ▶ 04/24/202020

Form **W-3** **Transmittal of Wage and Tax Statements**   **2019**   Department of the Treasury Internal Revenue Service

Send this entire page with the entire Copy A of Form(s) W-2 to the Social Security Administration (SSA).
Photocopies are not acceptable. Do not send Form W-3 if you filed electronically with the SSA.
Do not send any payment (cash, checks, money orders, etc.) with Forms W-2 and W-3.

## Reminder

**Separate instructions.** See the 2019 General Instructions for Forms W-2 and W-3 for information on completing this form. Do not file Form W-3 for Form(s) W-2 that were submitted electronically to the SSA.

## Purpose of Form

Complete a Form W-3 Transmittal only when filing paper Copy A of Form(s) W-2, Wage and Tax Statement. Don't file Form W-3 alone. All paper forms **must** comply with IRS standards and be machine readable. Photocopies are **not** acceptable. Use a Form W-3 even if only one paper Form W-2 is being filed. Make sure both the Form W-3 and Form(s) W-2 show the correct tax year and Employer Identification Number (EIN). Make a copy of this form and keep it with Copy D (For Employer) of Form(s) W-2 for your records. The IRS recommends retaining copies of these forms for four years.

## E-Filing

The SSA strongly suggests employers report Form W-3 and Forms W-2 Copy A electronically instead of on paper. The SSA provides two free e-filing options on its Business Services Online (BSO) website.

• **W-2 Online.** Use fill-in forms to create, save, print, and submit up to 50 Forms W-2 at a time to the SSA.

• **File Upload.** Upload wage files to the SSA you have created using payroll or tax software that formats the files according to the SSA's Specifications for Filing Forms W-2 Electronically (EFW2).

W-2 Online fill-in forms or file uploads will be on time if submitted by **January 31, 2020.** For more information, go to www.SSA.gov/bso. First time filers, select "Register"; returning filers select "Log In."

## When To File Paper Forms

Mail Form W-3 with Copy A of Form(s) W-2 by **January 31, 2020.**

## Where To File Paper Forms

Send this entire page with the entire Copy A page of Form(s) W-2 to:

**Social Security Administration
Direct Operations Center
Wilkes-Barre, PA 18769-0001**

**Note:** If you use "Certified Mail" to file, change the ZIP code to "18769-0002." If you use an IRS-approved private delivery service, add "ATTN: W-2 Process, 1150 E. Mountain Dr." to the address and change the ZIP code to "18702-7997." See Pub. 15 (Circular E), Employer's Tax Guide, for a list of IRS-approved private delivery services.

**For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.**

Cat. No. 10159Y

Case 2:20-cv-00174-JCC   Document 137-13   Filed 11/30/21   Page 156 of 282

WASHINGTON STATE DEPARTMENT OF
**LICENSING**

21  193392039286 5301

**CLASS ENDORSEMENTS:**
NONE

**RESTRICTIONS:**
B-Corrective Lenses must be worn

12/10/1978

Please notify the Department of Licensing within 10 days of a change of address.




20  R1206193H1225



WA
USA

# WASHINGTON

## DRIVER LICENSE

**FEDERAL LIMITS APPLY**

4d LIC#
1 SHIBLEY
2 ERIC RYAN

9CLASS

3 DOB ▮▮/1978
8 4700 36TH AVE SW
SEATTLE WA 98126-2716

4a ISS 12/06/2019

15 SEX M
16 HGT 6'-00"
12 RESTRICTIONS
            B

18 EYES BRO
17 WGT 190 lb
9a END NONE
4b EXP 12/10/2025

5 DD WDL67B54F1SBR1206193H1225

REV 11/12/2019



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable | |
|---|---|---|---|
| | **Business Legal Name** | | |
| | Dituri Construction LLC | | |
| | **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| | 4700 36th ave SW Seattle WA 98126 | ▇▇▇▇8508 | 2069384291 |
| | | **Primary Contact** | **Email Address** |
| | | Eric Shibley | shibley98271@gmail.com |

| Average Monthly Payroll: | $ 392000 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 980000 | Number of Employees: | 49 |
|---|---|---|---|---|---|
| Purpose of the loan (select more than one): | ■Payroll ☐Lease / Mortgage Interest ☐Utilities ☐Other (explain): | | | | |

## Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Eric R Shibley | Manager | 100 | ▇▇▇526 | 4700 36th Ave SW Seattle WA 98126 |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ■ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ■ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ■ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ■ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → ers | ☐ | ■ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → ers | ☐ | ■ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ■ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ■ |

**Paycheck Protection Program**
**Borrower Application Form**

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

### CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

### CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

**er**

The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

**er**

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

**er**

The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

**er**

The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

**er**

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

**er**

During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

**er**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

**er**

I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

06/04/2020

_____
Signature of Authorized Representative of Applicant
Eric R Shibley

Date
Manager

_____
Print Name

Title

2



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | **DBA or Tradename if Applicable** |
|---|---|
| **Business Legal Name** | |
| **Business Address** | **Business TIN (EIN, SSN)** ███████  **Business Phone** (   )   - |
| | **Primary Contact**  **Email Address** |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: |
|---|---|---|---|---|
| Purpose of the loan (select more than one): | ☐Payroll ☐Lease / Mortgage Interest ☐Utilities ☐Other (explain):_____ | | | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | ███████ | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → _____ | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☐ |

1

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

<u>**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**</u>

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____     The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____     Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____     The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____     The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____     I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____     During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____     I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

_____     I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____     _____
Signature of Authorized Representative of Applicant          Date

_____     _____
Print Name                                                   Title



**Paycheck Protection Program**
**Borrower Application Form**

**<u>Purpose of this form:</u>**

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**<u>Instructions for completing this form:</u>**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes.  Comments about this time or the information requested should be sent to : Small  Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination.  When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. <u>See</u>, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your  loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants  SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan or loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible  or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | **DBA or Tradename if Applicable** | |
|---|---|---|---|
| **Business Legal Name** | | | |
| | | | |
| **Business Address** | | **Business TIN (EIN, SSN)** | **Business Phone** |
| | | ███████ | (    )    - |
| | | **Primary Contact** | **Email Address** |
| | | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of<br>Advance (if Applicable)<br>Equals Loan Request: | $ | Number of Employees: |
|---|---|---|---|---|
| Purpose of the loan<br>(select more than one): | | ☐Payroll  ☐Lease / Mortgage Interest  ☐Utilities  ☐Other (explain):_____ | | |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | ███████ | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → _____ | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☐ |

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

<u>**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**</u>

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____     The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____     Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____     The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____     The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____     I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____     During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____     I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

_____     I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____          _____
Signature of Authorized Representative of Applicant                            Date

_____          _____
Print Name                                                                                    Title

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

<u>**Purpose of this form:**</u>

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

<u>**Instructions for completing this form:**</u>

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. <u>See</u>, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | **DBA or Tradename if Applicable** | |
|---|---|---|---|
| **Business Legal Name** | | | |
| | | | |
| **Business Address** | | **Business TIN (EIN, SSN)** | **Business Phone** |
| | | ███████ | (　) 　-　 |
| | | **Primary Contact** | **Email Address** |
| | | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: |
|---|---|---|---|---|
| Purpose of the loan<br>(select more than one): | ☐Payroll ☐Lease / Mortgage Interest ☐Utilities ☐Other (explain):_____ | | | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | ██████ | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → _____ | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☐ |

1

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

_____   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____            _____
Signature of Authorized Representative of Applicant                              Date

_____            _____
Print Name                                                                                        Title

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. <u>See</u>, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible  or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☒ LLC <br> ☐ Independent contractor  ☐ Eligible self-employed individual <br> ☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization <br> ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | **DBA or Tradename if Applicable** |
|---|---|---|

| **Business Legal Name** | | |
|---|---|---|
| Eric R Shibley MD PLLC | | |

| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
|---|---|---|
| 4700 36th Ave SW Seattle WA 98126 | ▮▮▮9052 | (206)938-4291 |
| | **Primary Contact** | **Email Address** |
| | Eric Shibley | shibleymedical@outlook.com |

| Average Monthly Payroll: | $ 39,250 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 98,125 | Number of Employees: | 6 |
|---|---|---|---|---|---|

| Purpose of the loan (select more than one): | ☒Payroll  ☒Lease / Mortgage Interest  ☒Utilities  ☒Other (explain): employee expenses |
|---|---|

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Eric R Shibley | Manager | 100 | ▮▮▮-5264 | 4700 36th Ave SW Seattle WA 98126 |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☒ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☒ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☒ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☒ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole? <br> Initial here to confirm your response to question 5 → ers _____ | ☐ | ☒ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? <br> Initial here to confirm your response to question 6 → ers _____ | ☐ | ☒ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☒ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☒ |

1

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

ers
_____
The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

ers
_____
Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

ers
_____
The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

ers
_____
The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

ers
_____
I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

ers
_____
During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

ers
_____
I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

ers
_____
I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

|  |  |
|---|---|
| _____ | 04/24/2020 _____ |
| Signature of Authorized Representative of Applicant | Date |
| Eric R Shibley | Manager |
| _____ | _____ |
| Print Name | Title |

SBA Form 2483 (04/20)



# Paycheck Protection Program
## Borrower Application Form

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee.  For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes.  Comments about this time or the information requested should be sent to : Small  Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination.  When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your  loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants  SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☒ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | **DBA or Tradename if Applicable** |
|---|---|---|

| **Business Legal Name** | | |
|---|---|---|
| SFC LLC | | |

| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
|---|---|---|
| 4700 36th Ave SW Seattle WA 98126 | ███3580 | (206) 938-4291 |
| | **Primary Contact** | **Email Address** |
| | Eric Shibley | shibley98271@gmail.com |

| Average Monthly Payroll: | $ 37,600 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 94,000 | Number of Employees: | 6 |
|---|---|---|---|---|---|
| Purpose of the loan<br>(select more than one): | ☒Payroll  ☒Lease / Mortgage Interest  ☒Utilities  ☐Other (explain):_____ | | | | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Eric R Shibley | Manager | 100 | ██5264 | 4700 36th Ave SW Seattle WA 98126 |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☒ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☒ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☒ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☒ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → ers _____ | ☐ | ☒ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → ers _____ | ☐ | ☒ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☒ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☒ |

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

red

_____   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

ers

_____   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

ers

_____   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

ers

_____   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

ers

_____   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

ers

_____   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

ers

_____   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

ers

_____   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

04/25/2020

_____          _____
Signature of Authorized Representative of Applicant          Date
Eric R Shibley                                              Manager

_____          _____
Print Name                                               Title

2



**Paycheck Protection Program**
**Borrower Application Form**

<u>**Purpose of this form:**</u>

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

<u>**Instructions for completing this form:**</u>

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee.  For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes.  Comments about this time or the information requested should be sent to : Small  Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination.  When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. <u>See</u>, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your  loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants  SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible  or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

SBA Form 2483 (04/20)

# Business Market Rate Savings

December 31, 2019 ■ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week.*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877 4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

---

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth,
credit, cash flow management, business planning, technology, marketing, and more.


## IMPORTANT ACCOUNT INFORMATION

We may change the statement period and monthly fee period assigned to your account without advance notification. If your account
earns interest, these changes will not affect interest calculations, but they may affect the date we post interest to your account.

For all accounts except business analyzed checking, if the first new fee period created by our change is fewer than 25 days, the bank
will automatically waive the monthly service fee for that period.

## Activity summary

| | |
|---|---|
| Beginning balance on 11/27 | $0.00 |
| Deposits/Credits | 25.00 |
| Withdrawals/Debits | - 0.00 |
| Ending balance on 12/31 | $25.00 |
| | |
| Average ledger balance this period | $25.00 |

Account number: **3220067247**

ERIC R SHIBLEY MD PLLC
**DBA SHIBLEY MEDICAL CLINIC**

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248



## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.00 |
| Average collected balance | $25.00 |
| Annual percentage yield earned | 0.00% |
| Interest earned this statement period | $0.00 |
| Interest paid this year | $0.00 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 11/27 | Etransfer IN Branch/Store - From Checking 4314 Sw Alaska St Seattle WA 9124 | 25.00 | | 25.00 |
| | Ending balance on 12/31 | | | 25.00 |
| Totals | | $25.00 | $0.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 11/27/2019 - 11/30/2019 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $25.00 ☐ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non business days. Transactions occurring after the last business day of the month will be included in your next fee period.

| Fee period 12/01/2019 - 12/31/2019 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. This is the final period with the fee waived. For the next fee period, you need to meet the requirement(s) to avoid the monthly service fee.

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $25.00 ☐ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

vanvo

December 31, 2019  ▪  Page 3 of 3



## General statement policies for Wells Fargo Bank

▪ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement ....................  $ _____

**ADD**

B. Any deposits listed in your              $ _____
   register or transfers into                $ _____
   your account which are not                $ _____
   shown on your statement.                 + $ _____

   .............................. TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

.................... TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above .... – $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register ..............    $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Business Market Rate Savings

March 31, 2020 ■ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Activity summary

| | |
|---|---|
| Beginning balance on 1/1 | $25.00 |
| Deposits/Credits | 150.00 |
| Withdrawals/Debits | - 18.00 |
| Ending balance on 3/31 | $157.00 |
| Average ledger balance this period | $158.16 |

Account number: 3220067247

ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC

Washington account terms and conditions apply

For Direct Deposit use:
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.00 |
| Average collected balance | $55.45 |
| Annual percentage yield earned | 0.00% |
| Interest earned this statement period | $0.00 |
| Interest paid this year | $0.00 |
| Total interest paid in 2019 | $0.00 |

## Transaction history

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending daily balance |
|---|---|---|---|---|
| 1/31 | Monthly Service Fee | | 6.00 | 19.00 |
| 2/28 | Monthly Service Fee | | 6.00 | 13.00 |

(120)

March 31, 2020 ▪ Page 2 of 3



---

## Transaction history (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------------|---------------------|----------------------|
| 3/2 | Online Transfer From Eric R Shibley MD Pllc Business Checking xxxxxx7262 Ref #Ib07Qft4Gz on 02/29/20 | 150.00 | | 163.00 |
| 3/31 | Monthly Service Fee | | 6.00 | 157.00 |
| | Ending balance on 3/31 | | | 157.00 |
| Totals | | $150.00 | $18.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 01/01/2020 - 01/31/2020 | Standard monthly service fee $6.00 | You paid $6.00 |
|-------------------------------------|------------------------------------|----------------|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average collected balance | $500.00 | $25.00 ☐ |
| - Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

| Fee period 02/01/2020 - 02/29/2020 | Standard monthly service fee $6.00 | You paid $6.00 |
|-------------------------------------|------------------------------------|----------------|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $19.00 ☐ |
| - Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.

| Fee period 03/01/2020 - 03/31/2020 | Standard monthly service fee $6.00 | You paid $6.00 |
|-------------------------------------|------------------------------------|----------------|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average collected balance | $500.00 | $158.00 ☐ |
| - Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

VCIFC

March 31, 2020 ■ Page 3 of 3



---

### General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . .  $ _____

**ADD**

B. Any deposits listed in your            $ _____
   register or transfers into              $ _____
   your account which are not              $ _____
   shown on your statement.              + $ _____

   . . . . . . . . . . . . . . .  . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . .       . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Business Market Rate Savings

April 30, 2020 ■ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (120)
        P.O. Box 6995
        Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

### Activity summary

| | |
|---|---|
| Beginning balance on 4/1 | $157.00 |
| Deposits/Credits | 4,700.01 |
| Withdrawals/Debits | - 3,000.00 |
| Ending balance on 4/30 | $1,857.01 |
| Average ledger balance this period | $1,227.00 |

Account number:  3220067247

ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.01 |
| Average collected balance | $1,227.00 |
| Annual percentage yield earned | 0.01% |
| Interest earned this statement period | $0.01 |
| Interest paid this year | $0.01 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 4/8 | Online Transfer From Eric R Shibley MD Pllc Business Checking xxxxxx7252 Ref #Ib07Xdzybj on 04/08/20 | 700.00 | | 857.00 |
| 4/21 | Online Transfer From Eric R Shibley MD Pllc Business Checking xxxxxx7282 Ref #Ib07Zfphvd on 04/21/20 | 4,000.00 | | 4,857.00 |

April 30, 2020 ▪ Page 2 of 3



## Transaction history  (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------------|---------------------|----------------------|
| 4/23 | ❋ Online Transfer to Enc R Shibley MD Plic Business Checking xxxxxx7262 Ref #lb07Zpmlst on 04/23/20 | | 3,000.00 | 1,857.00 |
| 4/30 | Interest Payment | 0.01 | | 1,857.01 |
| | Ending balance on 4/30 | | | 1,857.01 |
| Totals | | $4,700.01 | $3,000.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

❋  *Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 04/01/2020 - 04/30/2020 | Standard monthly service fee $6.00 | You paid $0.00 |
|-------------------------------------|-------------------------------------|----------------|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $1,227.00 ☑ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

xbfrc

April 30, 2020 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your                        $ _____
register or transfers into                            $ _____
your account which are not                            $ _____
shown on your statement.                            + $ _____

. . . . . . . . . . . .    . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . .    . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . .    . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total amount $ |  |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Business Market Rate Savings

May 31, 2020 ■ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

Write:   Wells Fargo Bank, N.A. (120)
         P.O. Box 6995
         Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 5/1 | $1,857.01 |
| Deposits/Credits | 0.01 |
| Withdrawals/Debits | - 400.00 |
| **Ending balance on 5/31** | **$1,457.02** |
| Average ledger balance this period | $1,547.33 |

Account number:   3220067247

ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.01 |
| Average collected balance | $1,547.33 |
| Annual percentage yield earned | 0.01% |
| Interest earned this statement period | $0.01 |
| Interest paid this year | $0.02 |

May 31, 2020 ■ Page 2 of 3



## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------------|---------------------|----------------------|
| 5/8 | ※ Online Transfer to Eric R Shibley MD Pllc Business Checking xxxxx7252 Ref #Ib0846Rg3Z on 05/08/20 | | 400.00 | 1,457.01 |
| 5/29 | Interest Payment | 0.01 | | 1,457.02 |
| | Ending balance on 5/31 | | | 1,457.02 |
| **Totals** | | **$0.01** | **$400.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

※ *Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 05/01/2020 - 05/31/2020 | Standard monthly service fee $6.00 | You paid $0.00 |
|-------------------------------------|-------------------------------------|-----------------|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average collected balance | $500.00 | $1,547.00 ☑ |
| - Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

*The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days Transactions occurring after the last business day of the month will be included in your next fee period*
*more*

 # IMPORTANT ACCOUNT INFORMATION

Effective June 20, 2020, we are updating the Funds Availability Policy in our Deposit Account Agreement as follows:

In the "Longer delays may apply" section, when a longer delay applies, we are making the following changes:
- The amount of your deposit that may be available on the first business day after the day of your deposit is increasing from $200 to $225.
- We are changing the check deposit amount exception that may lead to a delay of generally no more than seven business days from "You deposit checks totaling more than $5,000 on any one day" to "You deposit checks totaling more than $5,525 on any one day."

In the "Special rules for new accounts" section, setting forth special rules that apply during the first 30 days your account is open, we are updating the amounts in the two bullets in the second paragraph from $5,000 to $5,525 and from $200 to $225 as follows:
- The first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks and U.S. Postal Service money orders made payable to you will be available on the first business day after the day of your deposit.
- The excess over $5,525 and funds from all other check deposits will be available on the seventh business day after the day of your deposit. The first $225 of a day's total deposit of funds from all other check deposits, however, may be available on the first business day after the day of your deposit.

May 31, 2020 ■ Page 3 of 3



---

### General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1.  Use the following worksheet to calculate your overall account balance.

2.  Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3.  Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your          $ _____
   register or transfers into           $ _____
   your account which are not           $ _____
   shown on your statement.           + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . . – $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B – Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

October 31, 2019 ■ Page 1 of 4



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

## Activity summary

| | |
|---|---|
| Beginning balance on 10/10 | $0.00 |
| Deposits/Credits | 90,416.15 |
| Withdrawals/Debits | - 81,697.00 |
| Ending balance on 10/31 | $8,719.15 |
| Average ledger balance this period | $17,510.80 |

Account number   7621559124

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN)  125008547

For Wire Transfers use
Routing Number (RTN):  121000248



### Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■ Savings - 000003385602378

October 31, 2019 ■ Page 2 of 4



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 10/10 | | Checking Opening Deposit | 25.00 | | 25.00 |
| 10/15 | | Edeposit IN Branch/Store 10/15/19 04:20:41 Pm 4314 Sw Alaska St Seattle WA 4245 | 1,028.25 | | 1,053.25 |
| 10/18 | | WT Fed#03847 U.S. Bank, Nationa /Org=Ticor Title of Washington Inc IOLTA Srf# 191018039552 Trn#191018176070 Rtb# 191018039552 | 77,123.39 | | |
| 10/18 | | Wire Trans Svc Charge - Sequence: 191018176070 Srf# 191018039552 Trn#191018176070 Rfb# 191018039552 | | 15.00 | 78,161.64 |
| 10/22 | | Wire Trans Svc Charge - Sequence: 191022082347 Srf# 0001740294022742 Trn#191022082347 Rtb# | | 30.00 | |
| 10/22 | | Online Transfer to Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib0729Szyy on 10/21/19 | | 60,000.00 | |
| 10/22 | | WT Fed#02561 Boeing Employees C /Ftr/Bnf=Gabor Kovee Srf# 0001740294022742 Trn#191022082347 Rtb# | | 15,000.00 | 3,131.64 |
| 10/23 | | Edeposit IN Branch/Store 10/23/19 01:39:02 Pm 4314 Sw Alaska St Seattle WA 9124 | 400.00 | | 3,531.64 |
| 10/24 | | Purchase authorized on 10/23 King County DC Mrj Kent WA S30929681861/7176 Card 4245 | | 50.00 | |
| 10/24 | | Purchase authorized on 10/23 King County DC Mrj Kent WA S469296533166858 Card 4245 | | 50.00 | |
| 10/24 | | Purchase authorized on 10/23 King County DC Mrj Kent WA S389296834546306 Card 4245 | | 50.00 | 3,381.64 |
| 10/25 | | Fdeposit IN Branch/Store 10/25/19 04:27:54 Pm 4314 Sw Alaska St Seattle WA 4245 | 615.00 | | |
| 10/25 | | Transfer IN Branch/Store - From Es1 LLC DDA xxxxxx2378 4314 Sw Alaska St Seattle WA | 7,000.00 | | |
| 10/25 | | Purchase authorized on 10/24 Ncourt *Waskagitsw Mount Vernon WA S389297705293080 Card 4245 | | 52.00 | 10,944.64 |
| 10/28 | | Purchase authorized on 10/25 King County DC Mrj Kent WA S389296750123229 Card 4245 | | 50.00 | |
| 10/28 | | Check | | 3,500.00 | |
| 10/28 | | Check | | 2,900.00 | 4,494.64 |
| 10/30 | | Edeposit IN Branch/Store 10/30/19 11:54:36 Am 4314 Sw Alaska St Seattle WA 4245 | 4,224.51 | | 8,719.15 |
| Ending balance on 10/31 | | | | | 8,719.15 |
| Totals | | | $90,416.15 | $81,697.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

**Summary of checks written** *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| | 10/28 | 3,500.00 | | 10/28 | 2,900.00 |

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 10/10/2019 - 10/31/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee.



## Monthly service fee summary (continued)

| | Minimum required | This fee period |
|---|---|---|
| How to avoid the monthly service fee | | |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $17,511.00 ☑ |
| C1C1 | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 12 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |



## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

### ENTER
A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . $

### ADD
B. Any deposits listed in your       $
   register or transfers into        $
   your account which are not        $
   shown on your statement.       + $
   . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $

### CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $

### SUBTRACT
C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . - $

### CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . $

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |

Total amount $

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

November 30, 2019 ■ Page 1 of 5



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

White:   Wells Fargo Bank, N.A. (120)
         P.O. Box 6995
         Portland, OR  97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive
tools, and other resources on the topics of business growth, credit, cash flow
management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient
services with your account(s). Go to wellsfargo.com/biz or
call the number above if you have questions or if you would
like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |



Account number:  7621559124

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

## Activity summary

| | |
|---|---|
| Beginning balance on 11/1 | $8,719.15 |
| Deposits/Credits | 21,929.40 |
| Withdrawals/Debits | - 26,598.76 |
| Ending balance on 11/30 | $4,049.79 |
| Average ledger balance this period | $5,175.19 |

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■   Savings - 000003365602378

ge 197 of 282



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 11/4 | | Purchase authorized on 11/01 Fas Spu 8880500 Seattle WA S309305824249216 Card 4245 | | 672.15 | |
| 11/4 | | Purchase authorized on 11/01 The Home Depot 470 Seattle WA S389306143844773 Card 4245 | | 282.51 | 7,584.49 |
| 11/5 | | Purchase Return authorized on 11/03 The Home Depot #89 Seattle WA S619309547275576 Card 4245 | 45.88 | | 7,630.37 |
| 11/6 | | Edeposit IN Branch/Store 11/06/19 11:56:41 Am 4314 Sw Alaska St Seattle WA 4245 | 2,400.00 | | |
| 11/6 | | Withdrawal Made In A Branch/Store | | 3,107.00 | 6,923.37 |
| 11/8 | | Purchase authorized on 11/06 The Home Depot 470 Seattle WA S309310/94891462 Card 4245 | | 249.85 | 6,673.52 |
| 11/12 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib075Hg6Jf on 11/12/19 | 4,000.00 | | |
| 11/12 | | Purchase authorized on 11/07 The Home Depot 894 Seattle WA S469311879116596 Card 4245 | | 529.12 | |
| 11/12 | | Purchase authorized on 11/08 Comcast Bellingh C 800-266-2278 WA S389312628203547 Card 4245 | | 185.35 | |
| 11/12 | | Purchase authorized on 11/08 Comcast Bellingh C 800-266-2278 WA S309312636184299 Card 4245 | | 218.58 | |
| 11/12 | | Purchase authorized on 11/10 The Home Depot #89 Seattle WA S309314846705616 Card 4245 | | 75.76 | |
| 11/12 | | Purchase authorized on 11/10 The Home Depot #80 Seattle WA S589315090075279 Card 4245 | | 35.88 | |
| 11/12 | | Check | | 2,900.00 | 6,728.83 |
| 11/13 | | Purchase Return authorized on 11/11 The Home Depot 894 Seattle WA S629317543580961 Card 4245 | 480.02 | | |
| 11/13 | | Purchase Return authorized on 11/11 The Home Depot 470 Seattle WA S629317543593018 Card 4245 | 513.07 | | |
| 11/13 | | Transfer IN Branch/Store - From Es1 LLC DDA xxxxxx2378 4314 Sw Alaska St Seattle WA | 3,000.00 | | |
| 11/13 | | Transfer IN Branch/Store - From Es1 LLC DDA xxxxxx2378 4011 S 164th St Seatac WA | 2,000.00 | | |
| 11/13 | | Purchase authorized on 11/11 The Home Depot 894 Seattle WA S589315683473833 Card 4245 | | 513.07 | |
| 11/13 | | Purchase authorized on 11/11 The Home Depot 470 Seattle WA S469315751660323 Card 4245 | | 565.58 | |
| 11/13 | | Purchase authorized on 11/11 The Home Depot #47 Seattle WA S589315782582970 Card 4245 | | 192.29 | |
| 11/13 | | Purchase authorized on 11/11 Puget Sound Energy 888-225-5773 WA S469315830643973 Card 4245 | | 423.44 | |
| 11/13 | | Purchase authorized on 11/11 Puget Sound Energy 888-225-5773 WA S389315833524702 Card 4245 | | 58.14 | |
| 11/13 | | Purchase authorized on 11/11 Puget Sound Energy 888-225-5773 WA S389315836808435 Card 4245 | | 41.09 | |
| 11/13 | | Cashed Check | | 1,900.00 | |
| 11/13 | | Withdrawal Made In A Branch/Store | | 4,510.00 | 4,516.91 |
| 11/14 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib075Rmed on 11/14/19 | 4,500.00 | | |
| 11/14 | | Purchase authorized on 11/11 Valley View Sewer 206-242-3236 WA S469315842353685 Card 4245 | | 402.41 | |
| 11/14 | | Cashed Check | | 1,200.00 | 7,414.50 |
| 11/15 | | Purchase authorized on 11/13 The Home Depot 894 Seattle WA S469318149931744 Card 4245 | | 222.45 | |
| 11/15 | | Purchase authorized on 11/13 The Home Depot #80 Seattle WA S309318154240119 Card 4245 | | 120.01 | |
| 11/15 | | Check | | 2,962.90 | 4,109.14 |
| 11/18 | | Purchase Return authorized on 11/14 The Home Depot #47 Seattle WA S619320589133466 Card 4245 | 136.53 | | |
| 11/18 | | Purchase Return authorized on 11/16 The Home Depot #47 Tukwila WA S619322648939069 Card 4245 | 29.35 | | |

November 30, 2019 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 11/18 | | Purchase authorized on 11/13 Gary Marlino Const 206-768-1000 WA S589316006323921 Card 4245 | | 873.46 | |
| 11/18 | | Purchase authorized on 11/14 The Home Depot #47 Seattle WA S309318818917650 Card 4245 | | 45.63 | |
| 11/18 | | Purchase authorized on 11/14 The Home Depot #89 Seattle WA S469319033385090 Card 4245 | | 14.26 | |
| 11/18 | | Purchase authorized on 11/14 The Home Depot #89 Seattle WA S469319215145573 Card 4245 | | 56.34 | |
| 11/18 | | Purchase authorized on 11/16 The Home Depot #89 Seattle WA S309321097223325 Card 4245 | | 23.65 | |
| 11/18 | | Purchase authorized on 11/16 The Home Depot #47 Tukwila WA S389321183360563 Card 4245 | | 7.88 | 3,253.76 |
| 11/19 | | Purchase authorized on 11/17 The Home Depot #47 Tukwila WA S389322053009130 Card 4245 | | 70.29 | |
| 11/19 | | Purchase authorized on 11/17 The Home Depot #47 Tukwila WA S369322069360636 Card 4245 | | 23.62 | |
| 11/19 | | Cashed Check | | 3,000.00 | 159.87 |
| 11/20 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib076Mv8Mk on 11/19/19 | 3,000.00 | | |
| 11/20 | | Purchase authorized on 11/18 The Home Depot #47 Seattle WA S389322757510462 Card 4245 | | 19.73 | 3,140.14 |
| 11/21 | | Purchase authorized on 11/19 The Home Depot 894 Seattle WA S589323751411151 Card 4245 | | 91.74 | |
| 11/21 | | Purchase authorized on 11/19 The Home Depot #47 Seattle WA S309324173654099 Card 4245 | | 66.26 | 2,982.14 |
| 11/25 | | Purchase Return authorized on 11/22 The Home Depot #47 Seattle WA S619328545618404 Card 4245 | 136.52 | | 3,118.66 |
| 11/26 | | Edeposit IN Branch/Store 11/26/19 12:30:41 Pm 4314 Sw Alaska St Seattle WA 4245 | 1,600.00 | | |
| 11/26 | | Purchase authorized on 11/24 The Home Depot 894 Seattle WA S589328751668559 Card 4245 | | 251.55 | |
| 11/26 | | Purchase authorized on 11/24 The Home Depot 470 Seattle WA S589329003766888 Card 4245 | | 99.52 | |
| 11/26 | | Purchase authorized on 11/24 The Home Depot #89 Seattle WA S469329147165403 Card 4245 | | 118.14 | 4,251.45 |
| 11/27 | | Etransfer IN Branch/Store - to Checking 4314 Sw Alaska St Seattle WA 7262 | | 25.00 | |
| 11/27 | | Etransfer IN Branch/Store - to Savings 4314 Sw Alaska St Seattle WA 7247 | | 25.00 | 4,201.45 |
| 11/29 | | Purchase Return authorized on 11/26 The Home Depot 470 Seattle WA S629332544301294 Card 4245 | 88.03 | | |
| 11/29 | | Purchase authorized on 11/26 The Home Depot #89 Seattle WA S589330778727796 Card 4245 | | 158.86 | |
| 11/29 | | Purchase authorized on 11/27 The Home Depot 894 Seattle WA S589332216482165 Card 4245 | | 82.83 | 4,049.79 |
| Ending balance on 11/30 | | | | | 4,049.79 |
| Totals | | | $21,929.40 | $26,598.76 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|------|------|------|------|------|------|------|------|------|
| | 11/14 | 1,200.00 | | 11/19 | 3,000.00 | | 11/13 | 1,900.00 |
| | 11/15 | 2,962.90 | | 11/12 | 2,900.00 | | | |

November 30, 2019 ◼ Page 4 of 5



## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 11/01/2019 - 11/30/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. This is the final period with the fee waived. For the next fee period, you need to meet the requirement(s) to avoid the monthly service fee.

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| Average ledger balance | $500.00 | $5,175.00 ☑ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.
CV67

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 14 | 50 | 0 | 0.00 | 0.00 |
| Total service charges | | | | | $0.00 |

 # IMPORTANT ACCOUNT INFORMATION

We are updating the Wells Fargo Deposit Account Agreement as follows:

Effective December 31, 2019, in the section of the Agreement titled, "Rights and Responsibilities", the response to "Is your wireless operator authorized to provide information to assist in verifying your identity?" is deleted and replaced with the following:

Yes, and as part of your account relationship, we may rely on this information to assist in verifying your identity. You understand and agree that Wells Fargo may collect, use and retain personal or other information about you or your device pursuant to Wells Fargo's policies or as required by applicable law.

You authorize your wireless operator to disclose your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber and device details, if available, to Wells Fargo and service providers for the duration of the business relationship, solely for identity verification and fraud avoidance. Review our Privacy Policy for how we treat your data. You represent that you are the owner of the mobile phone number or have the delegated legal authority to act on behalf of the mobile subscriber to provide this consent.

November 30, 2019  ■  Page 5 of 5



---

## General statement policies for Wells Fargo Bank

■ Notice:  Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies.  If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at:  Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation.  In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

## Account Balance Calculation Worksheet

1.  Use the following worksheet to calculate your overall account balance.

2.  Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3.  Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER

A.  The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . .   $ _____

ADD

B.  Any deposits listed in your                          $ _____
    register or transfers into                           $ _____
    your account which are not                           $ _____
    shown on your statement.                           + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   TOTAL $ _____

CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

SUBTRACT

C.  The total outstanding checks and
    withdrawals from the chart above . . . . . . . .   - $ _____

CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . .   . . . . . . . . .  $ . _____

| Number | Items Outstanding | Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved.  Member FDIC.  NMLSR ID 399801

# Wells Fargo Simple Business Checking

December 31, 2019 ■ Page 1 of 5



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (120)
       P.O. Box 6995
       Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☑ |

 **IMPORTANT ACCOUNT INFORMATION**

We may change the statement period and monthly fee period assigned to your account without advance notification. If your account earns interest, these changes will not affect interest calculations, but they may affect the date we post interest to your account.

For all accounts except business analyzed checking, if the first new fee period created by our change is fewer than 25 days, the bank will automatically waive the monthly service fee for that period.

## Activity summary

| | |
|---|---|
| Beginning balance on 12/1 | $4,049.79 |
| Deposits/Credits | 21,107.12 |
| Withdrawals/Debits | - 23,961.46 |
| Ending balance on 12/31 | $1,195.45 |
| | |
| Average ledger balance this period | $4,399.24 |

Account number: **7621559124**

**ES1 LLC**

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

(120)

December 31, 2019 ■ Page 2 of 5



## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■ Savings - 000003365602378

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 12/2 | | Purchase Return authorized on 11/30 The Home Depot 472 Kent WA S629338546156665 Card 4245 | 90.94 | | |
| 12/2 | | Purchase Return authorized on 11/30 The Home Depot #47 Tukwila WA S619336549239736 Card 4245 | 194.09 | | |
| 12/2 | | Purchase authorized on 11/29 The Home Depot #89 Seattle WA S469333859627111 Card 4245 | | 194.36 | |
| 12/2 | | Purchase authorized on 11/30 The Home Depot 470 Tukwila WA S469334772649457 Card 4245 | | 96.41 | 4,044.05 |
| 12/4 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib078Y%Cn on 12/04/19 | 5,000.00 | | |
| 12/4 | | Purchase authorized on 12/04 The Home Depot #47 Kent WA S309337190603672 Card 4245 | | 61.00 | 8,983.05 |
| 12/5 | | Purchase Return authorized on 12/03 The Home Depot #47 Seattle WA S619339770529855 Card 4245 | 140.75 | | |
| 12/5 | | Purchase authorized on 12/03 The Home Depot #47 Kent WA S469337928618673 Card 4245 | | 173.66 | |
| 12/5 | | Purchase authorized on 12/03 King County Water 206-243-3990 WA S469338015628030 Card 4245 | | 70.27 | |
| 12/5 | | Purchase authorized on 12/03 King County Water 206-243-3990 WA S389338016396412 Card 4245 | | 45.97 | |
| 12/5 | | Purchase authorized on 12/03 The Home Depot #47 Seattle WA S309338046972622 Card 4245 | | 54.65 | |
| 12/5 | 1200 | Check | | 1,500.00 | |
| 12/5 | 1201 | Check | | 2,000.00 | 5,279.25 |
| 12/6 | | Purchase Return authorized on 12/04 The Home Depot #47 Kent WA S619340546175606 Card 4245 | 65.95 | | |
| 12/6 | | Purchase authorized on 12/04 Staples 0011 Seattle WA S389339080530193 Card 4245 | | 251.00 | |
| 12/6 | | Purchase authorized on 12/04 The Home Depot #47 Covington WA S589339166049157 Card 4245 | | 119.88 | |
| 12/6 | | Purchase authorized on 12/04 The Home Depot #47 Covington WA S389339168602919 Card 4245 | | 3.98 | |
| 12/6 | | Purchase authorized on 12/04 The Home Depot 472 Kent WA S309339214995183 Card 4245 | | 273.24 | |
| 12/6 | 1202 | Check | | 2,500.00 | 2,197.10 |
| 12/9 | | Purchase Return authorized on 12/05 The Home Depot 894 Seattle WA S629341544311351 Card 4245 | 221.09 | | |
| 12/9 | | Purchase Return authorized on 12/05 The Home Depot 470 Seattle WA S629341544313429 Card 4245 | 236.47 | | |
| 12/9 | | Purchase Return authorized on 12/05 The Home Depot 470 Seattle WA S629341544313442 Card 4245 | 345.71 | | |
| 12/9 | | Purchase Return authorized on 12/07 The Home Depot #47 Covington WA S619343548999722 Card 4245 | 43.10 | | |
| 12/9 | | Transfer IN Branch/Store - From Es1 LLC DDA xxxxxx2378 4314 Sw Alaska St Seattle WA | 4,427.00 | | |
| 12/9 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib079I7Yjt on 12/07/19 | 5,000.00 | | |
| 12/9 | | Purchase authorized on 12/05 The Home Depot 894 Seattle WA S389340094259464 Card 4245 | | 239.32 | |
| 12/9 | | Purchase authorized on 12/05 The Home Depot 470 Seattle WA S309340210423067 Card 4245 | | 399.70 | |
| 12/9 | | Purchase authorized on 12/06 WA Dol Lic & Reg 1 Seattle WA S389340734325963 Card 4245 | | 56.25 | |

December 31, 2019 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 12/9 | | Purchase authorized on 12/06 The Home Depot #47 Seattle WA S469340800958081 Card 4245 | | 189.36 | |
| 12/9 | | Withdrawal Made In A Branch/Store | | 4,427.00 | |
| 12/9 | | Purchase authorized on 12/07 The Home Depot #69 Seattle WA S309342194245184 Card 4245 | | 109.18 | |
| 12/9 | | Purchase authorized on 12/07 Sq *Conaway Proper Granite Falls WA S309342265850887 Card 4245 | | 1,125.00 | 5,924.66 |
| 12/10 | | Harland Clarke Check/Acc. 120919 00017407575482 Esl LLC | | 37.24 | 5,887.42 |
| 12/11 | | Promotion Bonus | 300.00 | | |
| 12/11 | 1026 | Check | | 229.25 | 5,958.17 |
| 12/12 | | Purchase Return authorized on 12/10 The Home Depot 470 Seattle WA S629346650823051 Card 4245 | 253.32 | | |
| 12/12 | | Purchase authorized on 12/10 The Home Depot 694 Seattle WA S589345157365705 Card 4245 | | 355.59 | 5,855.90 |
| 12/13 | | Purchase authorized on 12/12 Sq *Conaway Proper Seattle WA S309347097581490 Card 4245 | | 500.00 | 5,355.90 |
| 12/16 | | Purchase authorized on 12/14 The Home Depot #47 Kent WA S469349023546516 Card 4245 | | 105.14 | |
| 12/16 | | Purchase authorized on 12/14 The Home Depot #47 Kent WA S889349024109924 Card 4245 | | 7.10 | |
| 12/16 | 1028 | Check | | 392.96 | 4,850.70 |
| 12/17 | | Purchase authorized on 12/16 Panda Express 1709 Gig Harbor WA S309350739634187 Card 4245 | | 15.03 | |
| 12/17 | | Purchase authorized on 12/16 Sq *Conaway Proper Seattle WA S309350826627787 Card 4245 | | 500.00 | 4,335.67 |
| 12/18 | | Purchase authorized on 12/16 The Home Depot #47 Gig Harbor WA S469350752786018 Card 4245 | | 25.94 | |
| 12/18 | | Purchase authorized on 12/16 Shell Oil 57444961 Seattle WA S389351047288182 Card 4245 | | 54.03 | 4,255.70 |
| 12/19 | | Purchase Return authorized on 12/12 Sq *Conaway Proper Seattle WA S629353549444292 Card 4245 | 500.00 | | |
| 12/19 | | Purchase Return authorized on 12/16 Sq *Conaway Proper Seattle WA S629353549522563 Card 4245 | 500.00 | | |
| 12/19 | | Purchase authorized on 12/18 Pp*Conawayserv 402-935-2244 WA S309352584015348 Card 4245 | | 500.00 | |
| 12/19 | | Purchase authorized on 12/18 Pp*Conawayserv 402-935-2244 WA S389352675079771 Card 4245 | | 500.00 | |
| 12/19 | | Purchase authorized on 12/18 Pp*Conawayserv 402-935-2244 WA S389353025740533 Card 4245 | | 485.00 | 3,770.70 |
| 12/20 | | Purchase Return authorized on 12/19 Pp*Conawayserv Granite Fal WA S629354549219377 Card 4245 | 625.00 | | |
| 12/20 | | ATM Check Deposit on 12/20 West Seattle Seattle WA 0007278 ATM ID 1740A Card 4245 | 1,800.00 | | |
| 12/20 | | Purchase authorized on 12/19 Sq *Conaway Proper Granite Falls WA S309353646462812 Card 4245 | | 485.00 | |
| 12/20 | | Purchase authorized on 12/19 Pp*Conawayserv 402-935-2244 WA S469353684833416 Card 4245 | | 625.00 | |
| 12/20 | | Purchase authorized on 12/19 Sq *Conaway Proper Seattle WA S309354039562455 Card 4245 | | 500.00 | 4,385.70 |
| 12/23 | | Purchase Return authorized on 12/21 Sq *Conaway Proper Gosq.Com WA S629356571636251 Card 4245 | 963.70 | | |
| 12/23 | | ATM Check Deposit on 12/23 West Seattle Seattle WA 0007755 ATM ID 1740A Card 4245 | 500.00 | | |
| 12/23 | | Purchase authorized on 12/20 Sq *Conaway Proper Gosq.Com WA S309355180750375 Card 4245 | | 963.70 | |
| 12/23 | | Purchase authorized on 12/20 Sq *Conaway Proper Gosq.Com WA S589355184027195 Card 4245 | | 500.00 | |
| 12/23 | | Purchase authorized on 12/21 Sq *Conaway Proper Gosq.Com WA S580355290568729 Card 4245 | | 463.70 | 4,022.00 |
| 12/30 | 1027 | Cashed Check | | 50.00 | 3,972.00 |
| 12/31 | | Purchase authorized on 12/29 The Home Depot 473 Covington WA S589364096742432 Card 4245 | | 260.55 | |

December 31, 2019 ■ Page 4 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 12/31 | | Online Transfer to Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib07Dwz3K5 on 12/31/19 | | 2,500.00 | |
| 12/31 | 1029 | Check | | 16.00 | 1,195.45 |
| Ending balance on 12/31 | | | | | 1,195.45 |
| Totals | | | $21,107.12 | $23,981.46 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1025 | 12/11 | 229.25 | 1029 | 12/31 | 16.00 | 1201 | 12/5 | 2,000.00 |
| 1027 | 12/30 | 50.00 | 1200 * | 12/5 | 1,500.00 | 1202 | 12/6 | 2,500.00 |
| 1028 | 12/16 | 382.96 | | | | | | |

* Gap in check sequence.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 12/01/2019 - 12/31/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average ledger balance | $500.00 | $4,399.00 ☑ |
| over | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 10 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

December 31, 2019 ■ Page 5 of 5



## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . .          $ _____

**ADD**

B. Any deposits listed in your          $ _____
   register or transfers into            $ _____
   your account which are not            $ _____
   shown on your statement.            + $ _____

   . . . . . . . . . . . . . . . . . . .  . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . .  . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . − $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . .          $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | **Total amount** $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

January 31, 2020 ■ Page 1 of 5



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☑ |

## Activity summary

| | |
|---|---|
| Beginning balance on 1/1 | $1,195.45 |
| Deposits/Credits | 16,077.40 |
| Withdrawals/Debits | - 15,082.15 |
| **Ending balance on 1/31** | **$2,190.70** |
| Average ledger balance this period | $1,996.22 |

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■   Savings - 000003365602378

Account number:   **7621559124**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

January 31, 2020 ■ Page 2 of 5



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 1/2 | | Purchase Return authorized on 12/30 The Home Depot 472 Kent WA S620001544375616 Card 4245 | 84.04 | | |
| 1/2 | | Purchase Return authorized on 12/30 The Home Depot 884 Seattle WA S620001544373689 Card 4245 | 84.83 | | |
| 1/2 | | Purchase Return authorized on 12/30 The Home Depot 472 Tacoma WA S620001544375622 Card 4245 | 88.57 | | |
| 1/2 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib07Fb2Vjl on 01/02/20 | 2,000.00 | | |
| 1/2 | | Purchase authorized on 12/30 The Home Depot 472 Gig Harbor WA S309384834212723 Card 4245 | | 206.66 | |
| 1/2 | | Purchase authorized on 12/30 The Home Depot 472 Tacoma WA S589365012348631 Card 4245 | | 234.71 | |
| 1/2 | | Purchase authorized on 12/30 The Home Depot #47 Tukwila WA S309365132284/152 Card 4245 | | 120.82 | |
| 1/2 | 1001 | Cashed Check | | 1,500.00 | 1,390.50 |
| 1/6 | | Purchase authorized on 01/04 The Home Depot 470 Issaquah WA S460005169325421 Card 8026 | | 225.87 | |
| 1/6 | | Purchase authorized on 01/04 McDonald's F13369 Seattle WA S380005223501628 Card 8026 | | 13.20 | |
| 1/6 | 1030 | Check | | 627.00 | 524.43 |
| 1/7 | 1002 | Check | | 725.00 | |
| 1/7 | | Overdraft Protection From 3365602378 | 256.00 | | |
| 1/7 | | Savings OD Protection Transfer Fee | | 12.50 | 42.93 |
| 1/8 | | Overdraft Protection From 3365602378 | 25.00 | | 67.93 |
| 1/9 | | Purchase authorized on 01/07 Safeway #1082 Seattle WA S380008194322002 Card 8026 | | 42.93 | |
| 1/9 | | Purchase authorized on 01/08 Attorney's Informs Seattle WA S580008807824008 Card 8026 | | 5.00 | |
| 1/9 | 1032 | Check | | 800.00 | -780.00 |
| 1/10 | | Card Provisional Credit 11231199420 | 3,433.70 | | |
| 1/10 | | Transfer IN Branch/Store - From Es1 LLC DDA xxxxxx2378 4314 Sw Alaska St Seattle WA | 2,000.00 | | |
| 1/10 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib0/Gfrnskv on 01/09/20 | 1,500.00 | | |
| 1/10 | 1033 | Cashed Check | | 3,000.00 | 3,153.70 |
| 1/13 | | Purchase authorized on 01/10 McDonald's F13369 Seattle WA S360010022611540 Card 8026 | | 11.20 | |
| 1/13 | | Purchase authorized on 01/10 McDonald's F13369 Seattle WA S300011127656452 Card 8026 | | 4.50 | |
| 1/13 | | Purchase authorized on 01/10 The Home Depot #47 Seattle WA S300011146253212 Card 8026 | | 199.82 | |
| 1/13 | | Purchase authorized on 01/10 McDonald's F13369 Seattle WA S300011168429168 Card 8026 | | 11.98 | |
| 1/13 | | Purchase authorized on 01/10 Arco#07156Arco #07 Seattle WA S580011176561094 Card 8026 | | 20.07 | |
| 1/13 | | Purchase authorized on 01/11 McDonald's F13369 Seattle WA S300011735211127 Card 8026 | | 5.37 | |
| 1/13 | | Purchase authorized on 01/12 Sq *Thaai Beaux Arts WA S580013107336106 Card 8026 | | 57.18 | 2,843.58 |
| 1/14 | | Purchase authorized on 01/12 International Food Bellevue WA S380013117602639 Card 8026 | | 129.03 | |
| 1/14 | | Purchase authorized on 01/12 International Food Bellevue WA S460013120358458 Card 8026 | | 5.68 | |
| 1/14 | | Purchase authorized on 01/12 The Home Depot 471 Bellevue WA S460013137789431 Card 8026 | | 212.42 | |
| 1/14 | | Purchase authorized on 01/12 Safeway #1082 Seattle WA S300013214231655 Card 8026 | | 40.85 | |
| 1/14 | 1031 | Check | | 600.00 | 1,855.60 |
| 1/15 | | Purchase authorized on 01/14 Comcast Bellingh C 800-266-2278 WA S380014710952679 Card 8026 | | 104.29 | 1,751.31 |

January 31, 2020 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 1/16 | | Purchase authorized on 01/14 The Home Depot #89 Seattle WA 5300014765436/608 Card 3793 | | 82.10 | |
| 1/16 | | Purchase authorized on 01/15 Ikea Scatie Rest Renton WA S580015823823929 Card 3793 | | 16.47 | |
| 1/16 | 1035 | Cashed Check | | 1,750.00 | |
| 1/16 | | Overdraft Protection From 3365802376 | 1,001.78 | | |
| 1/16 | | Savings OD Protection Transfer Fee | | 12.50 | 892.02 |
| 1/17 | | Purchase authorized on 01/15 The Home Depot 473 Covington WA S380016022062282 Card 3793 | | 241.27 | |
| 1/17 | | Purchase authorized on 01/15 76 - Jumbos Dell Tukwila WA S660015171310024 Card 3793 | | 30.00 | |
| 1/17 | | Purchase authorized on 01/16 Sq "Justus Cafe Seattle WA 8460015605027050 Card 3793 | | 2.20 | |
| 1/17 | | Purchase authorized on 01/16 King County Dja Seattle WA S300016692093042 Card 3793 | | 31.49 | |
| 1/17 | | Purchase authorized on 01/16 McDonald's F10755 Seattle WA S300016702457192 Card 3793 | | 11.44 | |
| 1/17 | 1036 | Cashed Check | | 1,000.00 | |
| 1/17 | | Overdraft Protection From 3365802376 | 1,012.50 | | |
| 1/17 | | Savings OD Protection Transfer Fee | | 12.50 | 579.62 |
| 1/21 | | Purchase Return authorized on 01/16 The Home Depot 471 Bothell WA S620016544149063 Card 3793 | 229.57 | | |
| 1/21 | | Purchase authorized on 01/16 The Home Depot 894 Seattle WA S380016620258894 Card 3793 | | 214.85 | |
| 1/21 | | Purchase authorized on 01/16 The Home Depot #89 Scottle WA 5580016626996784 Card 3793 | | 30.08 | |
| 1/21 | | Purchase authorized on 01/16 The Home Depot 471 Bellevue WA S580017010714106 Card 3793 | | 330.89 | 229.57 |
| 1/22 | | Purchase authorized on 01/21 King County Dja Seattle WA S580021656500442 Card 3793 | | 31.49 | |
| 1/22 | 1034 | Check | | 825.00 | |
| 1/22 | 1037 | Check | | 1,000.00 | |
| 1/22 | | Overdraft Protection From 3365802376 | 1,639.42 | | |
| 1/22 | | Savings OD Protection Transfer Fee | | 12.50 | 0.00 |
| 1/24 | | Purchase authorized on 01/23 Panda Express 1650 Seattle WA S580024170824793 Card 3793 | | 18.99 | |
| 1/24 | 1039 | Check | | 500.00 | |
| 1/24 | | Overdraft Protection From 3365802376 | 531.49 | | |
| 1/24 | | Savings OD Protection Transfer Fee | | 12.50 | 0.00 |
| 1/29 | | Edeposit IN Branch/Store 01/29/20 01:01:37 Pm 4314 Sw Alaska St Seattle WA 3793 | 650.00 | | 650.00 |
| 1/30 | | Purchase Return authorized on 01/28 The Home Depot 894 Seattle WA S620030631868785 Card 3793 | 85.70 | | |
| 1/30 | | Edeposit IN Branch/Store 01/30/20 12:54:51 Pm 4314 Sw Alaska St Seattle WA 3793 | 1,455.00 | | 2,190.70 |
| Ending balance on 1/31 | | | | | 2,190.70 |
| Totals | | | $16,077.40 | $15,082.15 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1001 | 1/2 | 1,500.00 | 1030 * | 1/8 | 527.00 | 1032 | 1/9 | 800.00 |
| 1002 | 1/7 | 725.00 | 1031 | 1/14 | 600.00 | 1033 | 1/10 | 3,000.00 |

January 31, 2020 ■ Page 4 of 5



## Summary of checks written (continued)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1034 | 1/22 | 625.00 | 1037 * | 1/22 | 1,000.00 | 1039 | 1/24 | 500.00 |
| 1035 | 1/16 | 1,750.00 | 1038 | 1/17 | 1,000.00 | | | |

\* Gap in check sequence.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents. and answers to common monthly service fee questions.

| Fee period 01/01/2020 - 01/31/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $1,995.00 ☑ |
| C1/C1 | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 18 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

January 31, 2020 ▪ Page 5 of 5



---

## General statement policies for Wells Fargo Bank

▪ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . .    $ _____

ADD

B. Any deposits listed in your          $ _____
   register or transfers into           $ _____
   your account which are not           $ _____
   shown on your statement.           + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL  $ _____

CALCULATE THE SUBTOTAL
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL  $ _____

SUBTRACT

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . - $ _____

CALCULATE THE ENDING BALANCE
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register  . . . . . . . . . . . . . . . . . . .   $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

February 29, 2020 ■ Page 1 of 5



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☑ |

## Activity summary

| | |
|---|---|
| Beginning balance on 2/1 | $2,190.70 |
| Deposits/Credits | 15,615.97 |
| Withdrawals/Debits | - 12,166.61 |
| Ending balance on 2/29 | $5,640.06 |
| Average ledger balance this period | $2,365.25 |

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■ Savings - 000003385602378

Account number: **7621559124**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008864/

For Wire Transfers use
Routing Number (RTN): 121000248



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 2/3 | | Purchase Return authorized on 01/31 The Home Depot #85 Burlington WA S610033544051272 Card 3793 | 147.13 | | |
| 2/3 | | Purchase authorized on 01/30 The Home Depot #47 Bellevue WA S380030861474827 Card 3793 | | 21.18 | |
| 2/3 | | Purchase authorized on 01/30 The Home Depot #47 Redmond WA S380031210786880 Card 3793 | | 147.13 | |
| 2/3 | | Purchase authorized on 01/30 Shell Oil 57446223 Redmond WA S460031217275298 Card 3793 | | 0.93 | |
| 2/3 | | Purchase authorized on 01/30 Shell Oil 57446223 Redmond WA S300031216262768 Card 3793 | | 20.20 | |
| 2/3 | | Purchase authorized on 01/31 The Home Depot #47 Tukwila WA S380032208522014 Card 3793 | | 139.91 | |
| 2/3 | | Purchase authorized on 02/01 Paypal *Conawayser 402-935-7733 CA S460032587280099 Card 3793 | | 2.63 | 2,005.85 |
| 2/4 | | Purchase authorized on 02/03 Panda Express #215 Issaquah WA S580035161921595 Card 3793 | | 18.04 | 1,987.81 |
| 2/5 | | Purchase authorized on 02/03 7-Eleven 22561 Seattle WA S300035025847423 Card 3793 | | 22.08 | |
| 2/5 | | Purchase authorized on 02/05 USPS PO 54764600 4412 Cal Seattle WA P00300035695941405 Card 3793 | | 9.50 | 1,956.23 |
| 2/6 | | Edeposit IN Branch/Store 02/06/20 03:06:16 Pm 5414 Point Fosdick Dr NW Gig Harbor WA 3793 | 1,800.00 | | |
| 2/6 | | Purchase authorized on 02/04 WA Secretary of St .WA.Gov WA S460036048419488 Card 3793 | | 65.00 | |
| 2/6 | | Purchase authorized on 02/05 Panda Express 1709 Gig Harbor WA S460036793558974 Card 3793 | | 13.89 | |
| 2/6 | | Purchase authorized on 02/05 Walgreens #12910 Gig Harbor WA S300036607201841 Card 3793 | | 10.84 | |
| 2/6 | 1036 | Cashed Check | | 400.00 | 3,246.50 |
| 2/7 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #tb07Lwlmtz on 02/07/20 | 4,000.00 | | |
| 2/7 | | Purchase authorized on 02/06 Panda Express 1709 Gig Harbor WA S300037774697921 Card 3793 | | 21.37 | |
| 2/7 | | Withdrawal Made In A Branch/Store | | 4,427.00 | 2,798.13 |
| 2/10 | | Purchase authorized on 02/07 76 - United Pacifi Snohomish WA. S580038825768576 Card 3793 | | 21.11 | |
| 2/10 | | Purchase authorized on 02/07 Blazing Onion Snoh Snohomish WA S460039843436742 Card 3793 | | 15.06 | |
| 2/10 | | Purchase authorized on 02/07 Baskin Robbins # 3 Snohomish WA S580039002296058 Card 3793 | | 6.52 | |
| 2/10 | | Purchase authorized on 02/08 South Transfer Sta Seattle WA S460040012822343 Card 3793 | | 56.55 | |
| 2/10 | | Purchase authorized on 02/08 McDonald's F13369 Seattle WA S380040022831371 Card 3793 | | 9.88 | |
| 2/10 | | Purchase authorized on 02/08 Shell Oil 57444961 Seattle WA S580040089604261 Card 3793 | | 20.14 | |
| 2/10 | | ATM Withdrawal authorized on 02/08 Georgetown Business Cente Seattle WA 0002306 ATM ID 2593A Card 3793 | | 40.00 | |
| 2/10 | | Purchase authorized on 02/08 McDonald's F13369 Seattle WA S300040720204849 Card 3793 | | 13.83 | 2,615.04 |
| 2/11 | | Purchase authorized on 02/10 McDonald's F13369 Seattle WA S380041792387226 Card 3793 | | 12.95 | 2,602.09 |
| 2/12 | | Purchase authorized on 02/10 Shell Oil 57444035 Seattle WA S580042070645628 Card 3793 | | 23.50 | |
| 2/12 | | Purchase authorized on 02/11 Panda Express 1649 Tukwila WA S580042746503159 Card 3793 | | 36.34 | 2,540.25 |
| 2/13 | | Purchase authorized on 02/12 Puget Sound Energy 888-225-5773 WA S300043659000633 Card 3793 | | 294.85 | 2,245.40 |
| 2/14 | | Purchase authorized on 02/12 The Home Depot #89 Seattle WA S300044060004639 Card 3793 | | 77.75 | |

February 29, 2020 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|-----------|----------|---------|
| 2/14 | | Purchase authorized on 02/13 Dropbox*Qzxicc32Lr2 Db TT/Cchelp CA S580044657200489 Card 3793 | | 131.99 | |
| 2/14 | | Purchase authorized on 02/13 Panda Express 1650 Seattle WA S580045178173327 Card 3793 | | 20.37 | 2,015.29 |
| 2/18 | | Purchase Return authorized on 02/13 The Home Depot 470 Seattle WA S620046b44575566 Card 3793 | 228.66 | | |
| 2/18 | | Purchase Return authorized on 02/14 The Home Depot #47 Bothell WA S610047544315468 Card 3793 | 40.18 | | |
| 2/18 | | Purchase authorized on 02/13 Shell Oil 57444961 Seattle WA S460044738110921 Card 3793 | | 16.56 | |
| 2/18 | | Purchase authorized on 02/13 The Home Depot 470 Seattle WA S300044822560268 Card 3793 | | 350.00 | |
| 2/18 | | Purchase authorized on 02/14 7-Eleven 22561 Seattle WA S460045561063556 Card 3793 | | 42.88 | |
| 2/18 | | Purchase authorized on 02/14 The Home Depot #47 Marysville WA S380045771645084 Card 3793 | | 113.65 | 1,761.04 |
| 2/20 | | Purchase authorized on 02/19 Safeway #1062 Seattle WA S580050298813691 Card 3793 | | 38.80 | |
| 2/20 | | Purchase authorized on 02/19 Ikea Seatle Rest Renton WA S300051098585898 Card 3793 | | 20.09 | 1,702.15 |
| 2/21 | | Purchase authorized on 02/19 Arco#82542East Hil Kent WA S580051157314067 Card 3793 | | 25.85 | 1,676.30 |
| 2/24 | | Purchase authorized on 02/21 Shell Oil 57444961 Seattle WA S380053102948699 Card 3793 | | 27.14 | |
| 2/24 | | Purchase authorized on 02/23 McDonald's F13369 Seattle WA S380055050775116 Card 3793 | | 15.26 | 1,633.90 |
| 2/26 | | Purchase authorized on 02/24 McDonald's F5686 Bremerton WA S380055632348489 Card 3793 | | 12.39 | |
| 2/26 | | Purchase authorized on 02/24 Safeway #1467 Bremerton WA S300055672120611 Card 3793 | | 43.95 | 1,577.56 |
| 2/27 | | ATM Check Deposit on 02/27 West Seattle Seattle WA 0007485 ATM ID 1740A Card 3793 | 600.00 | | 2,177.56 |
| 2/28 | | ATM Check Deposit on 02/28 West Seattle Seattle WA 0007661 ATM ID 1740A Card 3793 | 6,300.00 | | |
| 2/28 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib07Q75Ltn on 02/28/20 | 2,500.00 | | |
| 2/28 | | Purchase authorized on 02/27 Paypal *Conawayser 402-935-7733 CA S460058464044353 Card 3793 | | 300.00 | |
| 2/28 | | Purchase authorized on 02/27 Paypal *Amberconaw 402-935-7733 CA S460058464541729 Card 3793 | | 300.00 | |
| 2/28 | | Purchase authorized on 02/27 Paypal *Amberconaw 402-935-7733 CA S380058569133427 Card 3793 | | 400.00 | |
| 2/28 | | Purchase authorized on 02/27 Paypal *Conawayser 402-935-7733 CA S380058612835241 Card 3793 | | 300.00 | |
| 2/28 | | Purchase authorized on 02/28 Paypal *Conawaysarv VISA Direct CA S00380059499623693 Card 3793 | | 514.80 | |
| 2/28 | | ATM Withdrawal authorized on 02/28 West Seattle Seattle WA 0007662 ATM ID 1740A Card 3793 | | 80.00 | |
| 2/28 | | Card Reversal of Credit 11231199420 | | 3,433.70 | 5,640.06 |
| Ending balance on 2/29 | | | | | 5,640.06 |
| Totals | | | $15,615.97 | $12,166.61 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount |
|--------|------|--------|
| 1036 | 2/6 | 400.00 |



## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 02/01/2020 - 02/29/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $2,365.00 ☑ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days.
Transactions occurring after the last business day of the month will be included in your next fee period.
C1/C1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 6 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your          $ _____
   register or transfers into            $ _____
   your account which are not            $ _____
   shown on your statement.            + $ _____

. . . . . . . . . . . . . . . .          . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . .    $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

March 31, 2020 ■ Page 1 of 4



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY: 1-800-877-4833*
*En español: 1-877-337-7454*

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

## Activity summary

| | |
|---|---|
| Beginning balance on 3/1 | $5,640.06 |
| Deposits/Credits | 10,534.28 |
| Withdrawals/Debits | - 15,295.63 |
| Ending balance on 3/31 | $878.71 |
| Average ledger balance this period | $2,495.15 |

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■ Savings - 000003365602378

Account number: 7621559124

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248



March 31, 2020 ▪ Page 2 of 4



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|---------|---------|---------|
| 3/2 | | Final Credit for Claim-Ref 2003010000104 | 2.63 | | |
| 3/2 | | Purchase authorized on 02/28 Arco#07155Arco #07 Seattle WA S460059/80680369 Card 3793 | | 40.72 | |
| 3/2 | | Purchase authorized on 02/28 Seattle City Light 206-684-3000 WA S460060026195491 Card 3793 | | 528.75 | |
| 3/2 | | Purchase authorized on 02/28 Sq *Muzi468@Yahoo Seattle WA S580060042040500 Card 3793 | | 28.13 | |
| 3/2 | | Purchase authorized on 02/28 The Home Depot 470 Seattle WA S30006017905725 Card 3793 | | 92.33 | |
| 3/2 | | Purchase authorized on 02/29 Paypal *Conowayserv VISA Direct CA S004800507286857299 Card 3793 | | 576.54 | |
| 3/2 | | Purchase authorized on 02/29 Paypal *Conawayser 402-935-7733 CA S300060862984835 Card 3793 | | 500.00 | |
| 3/2 | | Online Transfer to The A Team Holdings, LLC Business Checking xxxxxx9116 Ref #Ib07Qfshnr on 02/29/20 | | 3,500.00 | 376.72 |
| 3/3 | | Card Provisional Credit 10301200073 | 1,823.80 | | |
| 3/3 | | Cashed/Deposited Item Retn Unpaid Fee | | 12.00 | |
| 3/3 | | Deposited Item Retn Unpaid - Paper 200303 | | 2,700.00 | |
| 3/3 | | Overdraft Protection From 3365802378 | 477.51 | | -33.97 |
| 3/4 | | Online Transfer From The A Team Holdings, LLC Business Checking xxxxxx9116 Ref #Ib07R4Jtv5 on 03/04/20 | 100.00 | | 66.03 |
| 3/5 | | Card Provisional Credit 10301200095 | 1,076.54 | | 1,142.57 |
| 3/11 | < | Business to Business ACH Debit - Capital One Online Pmt 200311 007139910310070 Shibleyeric | | 105.43 | 1,037.14 |
| 3/12 | | Genesists Card 8009562556 200311 000001169977461 Eric R Shibley | | 212.23 | 824.91 |
| 3/24 | | ATM Check Deposit on 03/24 West Seattle Seattle WA 0000985 ATM ID 1740A Card 9012 | 600.00 | | |
| 3/24 | | ATM Check Deposit on 03/24 West Seattle Seattle WA 0000868 ATM ID 1740A Card 9012 | 1,653.80 | | |
| 3/24 | | ATM Deposit Adjustment | 100.00 | | 3,178.71 |
| 3/26 | | ATM Check Deposit on 03/25 West Seattle Seattle WA 0001006 ATM ID 1740A Card 9012 | 2,700.00 | | |
| 3/26 | | ATM Check Deposit on 03/25 West Seattle Seattle WA 0001007 ATM ID 1740A Card 9012 | 2,000.00 | | 7,878.71 |
| 3/31 | | Online Transfer to Fa1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib07Vyb96Z on 03/30/20 | | 7,000.00 | 878.71 |
| **Ending balance on 3/31** | | | | | 878.71 |
| **Totals** | | | **$10,534.28** | **$15,295.63** | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed

< Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 03/01/2020 - 03/31/2020 | Standard monthly service fee $10.00 | | You paid $0.00 |
|------|------|------|------|
| How to avoid the monthly service fee | Minimum required | | This fee period |
| Have any ONE of the following account requirements | | | |
| · Average ledger balance | $500.00 | | $2,495.00 ☑ |
| 01/01 | | | |

March 31, 2020 ▪ Page 3 of 4



## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 8 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |



## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your                      $ _____
   register or transfers into                       $ _____
   your account which are not                       $ _____
   shown on your statement.                        + $ _____

   . . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**

(Add Parts A and B)

   . . . . . . . . . . . . . . . . . .   . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**

(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . .   . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

April 30, 2020 ■ Page 1 of 4



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write:   Wells Fargo Bank, N.A. (120)
         P.O. Box 6995
         Portland, OR  97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

## Activity summary

| | |
|---|---|
| Beginning balance on 4/1 | $878.71 |
| Deposits/Credits | 16,820.00 |
| Withdrawals/Debits | - 17,515.92 |
| Ending balance on 4/30 | $182.79 |
| Average ledger balance this period | $1,437.70 |

Account number:  **7621559124**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

## Overdraft Protection

Your account is linked to the following for Overdraft Protection.

■    Savings   000003365602378

April 30, 2020 ▪ Page 2 of 4



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 4/1 | | ATM Check Deposit on 04/01 West Seattle Seattle WA 0001655 ATM ID 1740A Card 9012 | 200.00 | | |
| 4/1 | | Purchase authorized on 04/01 Los Schwab Tires 3801 Sw Seattle WA P00580093013188206 Card 9012 | | 238.89 | 842.02 |
| 4/3 | | Purchase authorized on 04/01 Metropolitan Mkt 1 Seattle WA S300092778746338 Card 9012 | | 237.88 | |
| 4/3 | | Purchase authorized on 04/01 Safeway #1062 Seattle WA S460092822724570 Card 9012 | | 184.79 | 419.35 |
| 4/7 | | Genesists Card 8009582556 200406 00000117885042O Eric R Shibley | | 86.38 | 332.97 |
| 4/10 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib0/Xqmnll on 04/10/20 | 7,800.00 | | |
| 4/10 | | Withdrawal Made In A Branch/Store | | 4,427.00 | 3,505.97 |
| 4/13 | | ATM Cash Deposit on 04/13 West Seattle Seattle WA 0002841 ATM ID 1740A Card 9012 | 520.00 | | |
| 4/13 | | Online Transfer From Es1 LLC Business Rate Savings xxxxxx2378 Ref #Ib07Y272Zb on 04/13/20 | 4,500.00 | | 8,525.97 |
| 4/14 | | Purchase authorized on 04/13 Rite Aid Store - 5 Seattle WA S460105086176162 Card 9012 | | 19.58 | 8,506.39 |
| 4/15 | | Purchase authorized on 04/13 Safeway #2932 Seattle WA S300104862238445 Card 9012 | | 73.97 | |
| 4/15 | | Fay Servicing ACH Pmts 041320 0888006560 Eric Shibey | | 7,648.59 | 783.83 |
| 4/21 | | Sbad Treas 310 Misc Pay 042120 Eidg:3600261386 Nte"Pmt"Eidg.3600261356\ | 4,000.00 | | |
| 4/21 | | Online Transfer to Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib0/Zfpkb5 on 04/21/20 | | 4,000.00 | 783.83 |
| 4/24 | 1078 | Check | | 30.00 | 753.83 |
| 4/27 | | Purchase authorized on 04/24 Wholefds West#10524 Seattle WA S460116108601562 Card 9012 | | 96.17 | 657.66 |
| 4/29 | | Purchase authorized on 04/27 Comcast Bellingh C 800-266-2278 WA S460119171214197 Card 9012 | | 251.11 | 406.55 |
| 4/30 | | Purchase authorized on 04/29 McDonald's F13369 Seattle WA S580120820365349 Card 9012 | | 20.97 | |
| 4/30 | | Purchase authorized on 04/29 O'Reilly Auto Part Seattle WA S580120626124341 Card 9012 | | 52.79 | |
| 4/30 | | Purchase with Cash Back $ 40.00 authorized on 04/30 Wal-Mart Wal-Mart Sup Renton WA P00000000189014993 Card 9012 | | 150.00 | 182.79 |
| Ending balance on 4/30 | | | | | 182.79 |
| Totals | | | $16,820.00 | $17,515.92 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

**Summary of checks written** *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount |
|------|------|------|
| 1078 | 4/24 | 30.00 |

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 04/01/2020 - 04/30/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|------|------|------|

April 30, 2020 ▪ Page 3 of 4



---

*Monthly service fee summary (continued)*

| | Minimum required | This fee period |
|---|---|---|
| How to avoid the monthly service fee | | |
| Have any ONE of the following account requirements | | |
|    Average ledger balance | $500.00 | $1,438.00 ☑ |
| cxcx | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 500 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 5 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

April 30, 2020 ■ Page 4 of 4



## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1  Use the following worksheet to calculate your overall account balance.

2  Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3  Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . $ _____

ADD

B. Any deposits listed in your    $ _____
register or transfers into       $ _____
your account which are not
shown on your statement.      + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

SUBTRACT

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . - $ _____

CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total amount $ | |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

May 31, 2020 ■ Page 1 of 5



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☐ |
| Overdraft Protection | ☑ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 5/1 | $182.79 |
| Deposits/Credits | 107,050.09 |
| Withdrawals/Debits | − 106,931.08 |
| **Ending balance on 5/31** | **$301.80** |
| Average ledger balance this period | $21,377.17 |

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

■ Savings - 000003385802378

Account number: 7621559124

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

---

May 31, 2020 ■ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 5/26 | | Purchase authorized on 05/22 McDonald's F13369 Seattle WA S300144077673530 Card 9012 | | 10.85 | 5,401.80 |
| 5/27 | | Adam Wines Consu AR Verify 016Kciufn1F10Sy Es1 LLC | 0.09 | | |
| 5/27 | ≤ | Business to Business ACH Debit - Adam Wines Consu AR Verify 016Kciufn1F10Sy Es1 LLC | | 0.09 | |
| 5/27 | ≤ | Business to Business ACH Debit - Adam Wines Consu Bill.Com 016Anxbkd1F0Mhj Adam Wines Consulting LLC - Inv #161 | | 5,100.00 | 301.80 |
| Ending balance on 5/31 | | | | | 301.80 |
| Totals | | | $107,050.09 | $106,931.08 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

≤ Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 05/01/2020 - 05/31/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $21,377.00 ☑ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days Transactions occurring after the last business day of the month will be included in your next fee period.
CVC1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 12 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

# IMPORTANT ACCOUNT INFORMATION

Effective June 20, 2020, we are updating the Funds Availability Policy in our Deposit Account Agreement as follows:

In the "Longer delays may apply" section, when a longer delay applies, we are making the following changes:
- The amount of your deposit that may be available on the first business day after the day of your deposit is increasing from $200 to $225.
- We are changing the check deposit amount exception that may lead to a delay of generally no more than seven business days from "You deposit checks totaling more than $5,000 on any one day" to "You deposit checks totaling more than $5,525 on any one day."

May 31, 2020 ■ Page 4 of 5



In the "Special rules for new accounts" section, setting forth special rules that apply during the first 30 days your account is open, we are updating the amounts in the two bullets in the second paragraph from $5,000 to $5,525 and from $200 to $225 as follows:
· The first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks and U.S. Postal Service money orders made payable to you will be available on the first business day after the day of your deposit.
· The excess over $5,525 and funds from all other check deposits will be available on the seventh business day after the day of your deposit. The first $225 of a day's total deposit of funds from all other check deposits, however, may be available on the first business day after the day of your deposit.



To provide you with additional flexibility to access accounts, we have increased the daily ATM withdrawal limit on your Wells Fargo Debit, ATM, or EasyPay Card(s) to $710. Any card that already has a daily ATM withdrawal limit of $710 or more remains the same. To view your card limits any time, sign on at wellsfargo.com/cardcontrol and click on Open Card Details.

May 31, 2020 ■ Page 5 of 5



---

### General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . $

**ADD**

B. Any deposits listed in your         $
register or transfers into             $
your account which are not             $
shown on your statement.             + $

. . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $

**SUBTRACT**

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . - $

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . $ .

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total amount | $ |

©2010 Wells Fargo Bank, N.A. All rights reserved.  Member FDIC.  NMLSR ID 399801

# Business Market Rate Savings

October 31, 2019 ∎ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**   (1-800-225-5935)

*TTY: 1-800-877-4833*
*En español: 1-877-337-7454*

*Online: wellsfargo.com/biz*

*Write:*   Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Activity summary

| | |
|---|---|
| Beginning balance on 10/10 | $0.00 |
| Deposits/Credits | 60,025.45 |
| Withdrawals/Debits | - 7,000.00 |
| **Ending balance on 10/31** | **$53,025.45** |
| Average ledger balance this period | $25,070.45 |

Account number   **3365602378**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.45 |
| Average collected balance | $25,070.45 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $0.45 |
| Interest paid this year | $0.45 |

## Transaction history

| Date | Description | | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 10/10 | Savings Opening Deposit | | 25.00 | | 25.00 |
| 10/22 | Online Transfer From Es1 LLC Business Checking xxxxxx9124 Ref #Ib0729Szyy on 10/21/19 | | 60,000.00 | | 60,025.00 |



## Transaction history (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 10/25 | Transfer IN Branch/Store - to Es1 LLC DDA xxxxxx9124 4314 Sw Alaska St Seattle WA | | 7,000.00 | 53,025.00 |
| 10/31 | Interest Payment | 0.45 | | 53,025.45 |
| | Ending balance on 10/31 | | | 53,025.45 |
| Totals | | $60,025.45 | $7,000.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 10/10/2019 - 10/31/2019 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee.

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| · Average collected balance | $500.00 | $25,070.00 ☑ |
| · Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

YCNC

October 31, 2019 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER

A. The ending balance
   shown on your statement . . . . . . . . .   $ _____

ADD

B. Any deposits listed in your        $ _____
   register or transfers into         $ _____
   your account which are not         $ _____
   shown on your statement          + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

CALCULATE THE SUBTOTAL
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

SUBTRACT

C. The total outstanding checks and
   withdrawals from the chart above . .  . . . . . . . $ _____

CALCULATE THE ENDING BALANCE
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.  NMLSR ID 399601

# Business Market Rate Savings

November 30, 2019 ■ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week.*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Activity summary

| | |
|---|---|
| Beginning balance on 11/1 | $53,025.45 |
| Deposits/Credits | 1.08 |
| Withdrawals/Debits | - 16,500.00 |
| Ending balance on 11/30 | $36,526.53 |
| Average ledger balance this period | $43,842.11 |

Account number: 3365602378

ES1 LLC

Washington account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $1.08 |
| Average collected balance | $43,842.11 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $1.08 |
| Interest paid this year | $1.53 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 11/12 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib075Hg6Jt on 11/12/19 | | 4,000.00 | 49,025.45 |
| 11/13 | Transfer IN Branch/Store - to Es1 LLC DDA xxxxxx9124 4314 Sw Alaska St Seattle WA | | 3,000.00 | |



## Transaction history (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 11/13 | Transfer IN Branch/Store - to Es1 LLC DDA xxxxxx9124 4011 S 164th St Seatac WA | | 2,000.00 | 44,025.45 |
| 11/14 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib075Rmsd on 11/14/19 | | 4,500.00 | 39,525.45 |
| 11/20 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib076Mv6Mk on 11/19/19 | | 3,000.00 | 36,525.45 |
| 11/29 | Interest Payment | 1.08 | | 36,526.53 |
| | Ending balance on 11/30 | | | 36,526.53 |
| Totals | | $1.08 | $16,500.00 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

\* Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 11/01/2019 - 11/30/2019 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. This is the final period with the fee waived. For the next fee period, you need to meet the requirement(s) to avoid the monthly service fee.

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $43,842.00 ☑ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.

YDYC

#  IMPORTANT ACCOUNT INFORMATION

We are updating the Wells Fargo Deposit Account Agreement as follows:

Effective December 31, 2019, in the section of the Agreement titled, "Rights and Responsibilities", the response to "Is your wireless operator authorized to provide information to assist in verifying your identity?" is deleted and replaced with the following:

Yes, and as part of your account relationship, we may rely on this information to assist in verifying your identity. You understand and agree that Wells Fargo may collect, use and retain personal or other information about you or your device pursuant to Wells Fargo's policies or as required by applicable law.

You authorize your wireless operator to disclose your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber and device details. If available, to Wells Fargo and service providers for the duration of the business relationship, solely for identity verification and fraud avoidance. Review our Privacy Policy for how we treat your data. You represent that you are the owner of the mobile phone number or have the delegated legal authority to act on behalf of the mobile subscriber to provide this consent.

November 30, 2019 ■ Page 3 of 3



## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1   Use the following worksheet to calculate your overall account balance.

2.  Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3.  Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . $ _____

ADD

B. Any deposits listed in your          $ _____
   register or transfers into           $ _____
   your account which are not           $ _____
   shown on your statement            + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . .   TOTAL $ _____

CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . TOTAL $ _____

SUBTRACT

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . - $ _____

CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . .   $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total amount $ |  |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Business Market Rate Savings

December 31, 2019 ■ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.



# IMPORTANT ACCOUNT INFORMATION

We may change the statement period and monthly fee period assigned to your account without advance notification. If your account earns interest, these changes will not affect interest calculations, but they may affect the date we post interest to your account.

For all accounts except business analyzed checking, if the first new fee period created by our change is fewer than 25 days, the bank will automatically waive the monthly service fee for that period.

## Activity summary

| | |
|---|---|
| Beginning balance on 12/1 | $36,526.53 |
| Deposits/Credits | 2,500.64 |
| Withdrawals/Debits | - 14,427.00 |
| **Ending balance on 12/31** | **$24,600.17** |
| | |
| Average ledger balance this period | $25,096.82 |

Account number:  **3365602378**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

December 31, 2019 ▪ Page 2 of 3



## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.64 |
| Average collected balance | $25,096.82 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $0.64 |
| Interest paid this year | $2.17 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 12/4 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib078Yf8Cn on 12/04/19 | | 5,000.00 | 31,526.53 |
| 12/9 | Transfer IN Branch/Store - to Es1 LLC DDA xxxxxx9124 4314 Sw Alaska St Seattle WA | | 4,427.00 | |
| 12/9 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib079H7Yjt on 12/07/19 | | 5,000.00 | 22,099.53 |
| 12/31 | Online Transfer From Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Dwz3K5 on 12/31/19 | 2,500.00 | | |
| 12/31 | Interest Payment | 0.64 | | 24,600.17 |
| | Ending balance on 12/31 | | | 24,600.17 |
| Totals | | $2,500.64 | $14,427.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

\* *Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 12/01/2019 - 12/31/2019 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $25,097.00 ☑ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

YCYYC

December 31, 2019 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
B. Any deposits listed in your        $ _____
   register or transfers into         $ _____
   your account which are not         $ _____
   shown on your statement.         + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . = $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399001

# Business Market Rate Savings

January 31, 2020 ▪ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Activity summary

| | |
|---|---|
| Beginning balance on 1/1 | $24,600.17 |
| Deposits/Credits | 0.37 |
| Withdrawals/Debits | - 14,423.19 |
| Ending balance on 1/31 | $10,177.35 |
| Average ledger balance this period | $14,562.29 |

Account number:  **3365602378**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.37 |
| Average collected balance | $14,562.29 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $0.37 |
| Interest paid this year | $0.37 |
| Total interest paid in 2019 | $2.17 |

## Transaction history

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending daily balance |
|---|---|---|---|---|
| 1/2 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Fb2Vjl on 01/02/20 | | 2,000.00 | 22,600.17 |
| 1/6 | Withdrawal Made In A Branch/Store | | 4,427.00 | 18,173.17 |

January 31, 2020 ■ Page 2 of 3



## Transaction history  (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 1/8 | * Overdraft Protection to 7621559124 | | 256.00 | 17,817.17 |
| 1/9 | * Overdraft Protection to 7621559124 | | 25.00 | 17,892.17 |
| 1/10 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Gfhskv on 01/09/20 | | 1,500.00 | |
| 1/10 | Transfer IN Branch/Store - to Es1 LLC DDA xxxxxx9124 4314 Sw Alaska St Seattle WA | 2,000.00 | | 14,392.17 |
| 1/17 | * Overdraft Protection to 7621559124 | | 1,001.78 | 13,390.39 |
| 1/21 | * Overdraft Protection to 7621559124 | | 1,012.50 | 12,377.89 |
| 1/23 | * Overdraft Protection to 7621559124 | | 1,639.42 | |
| 1/23 | Excess Activity Fee | | 15.00 | 10,723.47 |
| 1/27 | * Overdraft Protection to 7621559124 | | 531.49 | |
| 1/27 | Excess Activity Fee | | 15.00 | 10,176.98 |
| 1/31 | Interest Payment | 0.37 | | 10,177.35 |
| | Ending balance on 1/31 | | | 10,177.35 |
| Totals | | $0.37 | $14,423.19 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.*

*\* Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. One or more Excess Activity Fees have been assessed because the combined total limit of six (6) per monthly fee period has been exceeded. Except for outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 01/01/2020 - 01/31/2020 | Standard monthly service fee $6.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
|   Average collected balance | $500.00 | $14,552.00 ☑ |
|   - Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

VC/VC



## General statement policies for Wells Fargo Bank

▪ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

### ENTER

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . . $ _____

### ADD

B. Any deposits listed in your          $ _____
register or transfers into             $ _____
your account which are not             $ _____
shown on your statement.             + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

### CALCULATE THE SUBTOTAL

(Add Parts A and B)

. . . . . . . . . . . . . . . . . . .          TOTAL $ _____

### SUBTRACT

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . − $ _____

### CALCULATE THE ENDING BALANCE

(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total amount | $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC  NMLSR ID 399801

# Business Market Rate Savings

February 29, 2020 ■ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Activity summary

| | |
|---|---|
| Beginning balance on 2/1 | $10,177.35 |
| Deposits/Credits | 0.16 |
| Withdrawals/Debits | - 6,500.00 |
| Ending balance on 2/29 | $3,677.51 |
| Average ledger balance this period | $6,832.52 |

Account number:   3365602378

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $0.16 |
| Average collected balance | $6,832.52 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $0.16 |
| Interest paid this year | $0.53 |
| Total interest paid in 2019 | $2.17 |

February 29, 2020 ■ Page 2 of 3



---

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------------|---------------------|----------------------|
| 2/7 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Lwtmlz on 02/07/20 | | 4,000.00 | 6,177.35 |
| 2/28 | * Online Transfer to Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Q75Ltn on 02/28/20 | | 2,500.00 | |
| 2/28 | Interest Payment | 0.16 | | 3,677.51 |
| | Ending balance on 2/29 | | | 3,677.51 |
| Totals | | $0.16 | $6,500.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

\* *Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement.*

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 02/01/2020 - 02/29/2020 | Standard monthly service fee $8.00 | You paid $0.00 |
|------------------------------------|------------------------------------|----------------|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average collected balance | $500.00 | $6,633.00 ☑ |
| · Total automatic transfers from an eligible Wells Fargo business checking account. | $25.00 | $0.00 ☐ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.

VCIVC

February 29, 2020 ■ Page 3 of 3



---

### General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your          $ _____
   register or transfers into           $ _____
   your account which are not           $ _____
   shown on your statement.           + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**

(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . . $ _____

**CALCULATE THE ENDING BALANCE**

(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . $ . _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | Total amount      $ |        |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Business Market Rate Savings

March 31, 2020 ■ Page 1 of 3



ES1 LLC
4700 36TH AVE SW
SEATTLE WA 98126-2716

### Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY: 1-800-877-4833*
*En español: 1-877-337-7454*

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

### Activity summary

| | |
|---|---|
| Beginning balance on 3/1 | $3,677.51 |
| Deposits/Credits | 7,000.01 |
| Withdrawals/Debits | - 3,683.51 |
| Ending balance on 3/31 | $6,994.01 |
| Average ledger balance this period | $359.83 |

Account number:  **3365602378**

ES1 LLC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.01 |
| Average collected balance | $359.83 |
| Annual percentage yield earned | 0.03% |
| Interest earned this statement period | $0.01 |
| Interest paid this year | $0.54 |
| Total interest paid in 2019 | $2.17 |

## Transaction history

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|
| 3/2 | * Online Transfer to The A Team Holdings, LLC Business Market Rate Savings xxxxxx3536 Ref #Ib07Qfsj4G on 02/29/20 | | 3,200.00 | 477.51 |
| 3/4 | * Overdraft Protection to 7621559124 | | 477.51 | 0.00 |

March 31, 2020 ■ Page 2 of 3



## Transaction history  (continued)

| Date | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------------|---------------------|---------------------|
| 3/31 | Online Transfer From Es1 LLC Business Checking xxxxxx9124 Ref #Ib07Vyb96Z on 03/30/20 | 7,000.00 | | |
| 3/31 | Interest Payment | 0.01 | | |
| 3/31 | Monthly Service Fee | | 6.00 | 6,994.01 |
| Ending balance on 3/31 | | | | 6,994.01 |
| **Totals** | | **$7,000.01** | **$3,683.51** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed*

\# *Indicates transaction counts toward the Regulation D and Wells Fargo savings withdrawal and transfer limit. Except outgoing wire transfers, there is no limit on the number of withdrawals or transfers made in person at an ATM or Wells Fargo location or on any types of deposits. For more information, please refer to your Account Agreement*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 03/01/2020 - 03/31/2020 | Standard monthly service fee $6.00 | You paid $6.00 |
|---|---|---|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Average collected balance | $500.00 | $360.00 ☐ |
| Total automatic transfers from an eligible Wells Fargo business checking account | $25.00 | $0.00 ☐ |

YC/VC

# Wells Fargo Simple Business Checking

February 29, 2020 ■ Page 1 of 4



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 2/1 | $1,488.38 |
| Deposits/Credits | 1,427.67 |
| Withdrawals/Debits | - 2,566.74 |
| Ending balance on 2/29 | $349.31 |
| Average ledger balance this period | $839.81 |

Account number:  **6621617262**

**ERIC R SHIBLEY MD PLLC**
**DBA SHIBLEY MEDICAL CLINIC**

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

**Overdraft Protection**

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

(120)

WELLS FARGO

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 2/3 | | Purchase authorized on 01/31 Skagit Valley Food Mount Vernon WA S460031626150187 Card 1422 | | 7.88 | |
| 2/3 | | ATM Withdrawal authorized on 02/01 West Seattle Seattle WA 0003755 ATM ID 1740A Card 1422 | | 300.00 | |
| 2/3 | | Purchase authorized on 02/02 Practice Fusion 415-346-7700 CA S580033368283708 Card 1422 | | 109.00 | |
| 2/3 | < | Business to Business ACH Debit - Merchant Bankcd Fee 200202 209210953888 Shibley Medical | | 15.01 | |
| 2/3 | < | Business to Business ACH Debit - Merchant Bankcd Discount 200202 209210953888 Shibley Medical | | 57.95 | |
| 2/3 | < | Business to Business ACH Debit - Merchant Bankcd Interchng 200202 209210953888 Shibley Medical | | 114.39 | 884.15 |
| 2/7 | | Purchase Return authorized on 02/05 The Home Depot #47 Tukwila WA S610038545592812 Card 1422 | 24.66 | | 908.81 |
| 2/18 | | Purchase Return authorized on 02/14 The Home Depot #47 Bothell WA S610047544315472 Card 1422 | 18.47 | | |
| 2/18 | | Purchase Return authorized on 02/14 The Home Depot #47 Kent WA S610047544315474 Card 1422 | 78.00 | | |
| 2/18 | | Purchase Return authorized on 02/14 The Home Depot #47 Kent WA S610047544315473 Card 1422 | 111.38 | | |
| 2/18 | | Purchase Return authorized on 02/15 The Home Depot #47 Kent WA S610048552957291 Card 1422 | 59.56 | | |
| 2/18 | | Purchase Return authorized on 02/15 The Home Depot #47 Tukwila WA S610048552957290 Card 1422 | 135.60 | | |
| 2/18 | | Purchase authorized on 02/14 The Home Depot #85 Burlington WA S460045716482105 Card 1422 | | 133.81 | |
| 2/18 | | Purchase authorized on 02/14 The Home Depot #47 Bothell WA S380045811586239 Card 1422 | | 129.28 | |
| 2/18 | | Purchase authorized on 02/14 The Home Depot #47 Kent WA S460046197871965 Card 1422 | | 176.26 | |
| 2/18 | | Purchase authorized on 02/14 The Home Depot #47 Kent WA S580046216784522 Card 1422 | | 41.55 | |
| 2/18 | | Purchase authorized on 02/15 The Home Depot #47 Seattle WA S380046794750327 Card 1422 | | 163.39 | |
| 2/18 | | Purchase authorized on 02/15 The Home Depot #47 Tukwila WA S460047055785862 Card 1422 | | 122.16 | |
| 2/18 | | Purchase authorized on 02/15 Best Meats Kent WA S460047072460018 Card 1422 | | 71.22 | |
| 2/18 | | Purchase authorized on 02/15 The Home Depot #47 Kent WA S460047088296367 Card 1422 | | 32.25 | |
| 2/18 | | Purchase authorized on 02/16 McDonald's F13369 Seattle WA S460048018731147 Card 1422 | | 6.47 | 435.43 |
| 2/21 | | Online Transfer From The A Team Holdings, LLC Business Market Rate Savings xxxxxx3536 Ref #Ib07P3V8B4 on 02/21/20 | 1,000.00 | | |
| 2/21 | | Purchase authorized on 02/20 McDonald's F13369 Seattle WA S580052045613205 Card 1422 | | 29.21 | 1,406.22 |
| 2/24 | | Purchase authorized on 02/21 Sq *Conaway Proper Granite Falls WA S580052765685211 Card 1422 | | 1,000.00 | 406.22 |
| 2/27 | | Purchase authorized on 02/26 Chevron 0375344 Seattle WA S380058099450977 Card 1422 | | 4.16 | 402.06 |

February 29, 2020 ■ Page 3 of 4



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|----------|-----------|---------|
| 2/28 | | Purchase authorized on 02/26 South Park Food Ce Seattle WA S300058076072448 Card 1422 | | 5.50 | |
| 2/28 | | Purchase authorized on 02/26 The Home Depot #89 Seattle WA S380058151979171 Card 1422 | | 47.25 | 349.31 |
| Ending balance on 2/29 | | | | | 349.31 |
| Totals | | | $1,427.67 | $2,566.74 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

< *Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 02/01/2020 - 02/29/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $840.00 ☑ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period

CVC1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 3 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

February 29, 2020 ▪ Page 4 of 4



---

### General statement policies for Wells Fargo Bank

▪ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement                     $ _____

**ADD**

B. Any deposits listed in your                  $ _____
   register or transfers into                    $ _____
   your account which are not                    $ _____
   shown on your statement                     + $ _____

........................................ TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

........................................ TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above ............ $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register ...................... $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

March 31, 2020 ▪ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877 4833
En español: 1 877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228 6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 3/1 | $349.31 |
| Deposits/Credits | 1,427.72 |
| Withdrawals/Debits | - 1,475.01 |
| Ending balance on 3/31 | $302.02 |
| Average ledger balance this period | $463.91 |

Account number: 6621617262

**ERIC R SHIBLEY MD PLLC**
**DBA SHIBLEY MEDICAL CLINIC**

Washington account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

March 31, 2020 ▪ Page 2 of 3



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 3/2 | | Online Transfer to Eric R Shibley MD Pllc Business Market Rate Savings xxxxxx7247 Ref #Ib07Qft4Gz on 02/29/20 | | 150.00 | 199.31 |
| 3/3 | < | Business to Business ACH Debit - Merchant Bankcd Fee 200302 209210953888 Shibley Medical | | 12.70 | |
| 3/3 | < | Business to Business ACH Debit - Merchant Bankcd Discount 200302 209210953888 Shibley Medical | | 40.18 | |
| 3/3 | < | Business to Business ACH Debit - Merchant Bankcd Interchng 200302 209210953888 Shibley Medical | | 62.05 | 84.30 |
| 3/4 | | Card Provisional Credit 20304200163 | 1,000.00 | | |
| 3/4 | | Edeposit IN Branch/Store 03/04/20 02:21:44 Pm 4314 Sw Alaska St Seattle WA 7262 | 400.00 | | 1,484.30 |
| 3/6 | | Online Transfer to The A Team Holdings, LLC Business Market Rate Savings xxxxxx3536 Ref #Ib07Rjh95n on 03/06/20 | | 1,200.00 | 284.30 |
| 3/18 | | Wells Fargo Cashback Rewards | 27.72 | | 312.02 |
| 3/31 | | Monthly Service Fee | | 10.00 | 302.02 |
| Ending balance on 3/31 | | | | | 302.02 |
| **Totals** | | | **$1,427.72** | **$1,475.01** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

*< Business to Business ACH If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

### Items returned unpaid

| Date | Description | Amount |
|------|-------------|--------|
| 3/25 | Merchant Bankcd Chargeback 200323 209210953888 Shibley Medical  Reference #  091000010166215 | 500.00 |

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 03/01/2020 - 03/31/2020 | Standard monthly service fee $10.00 | You paid $10.00 |
|------------------------------------|--------------------------------------|------------------|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average ledger balance | $500.00 | $464.00 ☐ |

c1ic1

### Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|----------------------------|------------|----------------|--------------|-------------------------------------|--------------------------|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 5 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

March 31, 2020 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at. Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your          $ _____
   register or transfers into          $ _____
   your account which are not          $ _____
   shown on your statement.          + $ _____

                        . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved.  Member FDIC.  NMLSR ID 399801

# Wells Fargo Simple Business Checking

April 30, 2020 ■ Page 1 of 3



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 38TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (120)
        P.O. Box 6995
        Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 4/1 | $302.02 |
| Deposits/Credits | 13,900.00 |
| Withdrawals/Debits | - 13,492.21 |
| Ending balance on 4/30 | $709.81 |
| Average ledger balance this period | $822.41 |

Account number:  6621617262

**ERIC R SHIBLEY MD PLLC**
**DBA SHIBLEY MEDICAL CLINIC**
*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements, please call the number listed on your statement or visit your Wells Fargo store.

April 30, 2020 ■ Page 2 of 3



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 4/6 | | ATM Check Deposit on 04/05 West Seattle Seattle WA 0002121 ATM ID 1740A Card 9205 | 900.00 | | 1,202.02 |
| 4/7 | | Purchase authorized on 04/05 Safeway #2932 Seattle WA S460097098179087 Card 9205 | | 38.32 | 1,163.70 |
| 4/8 | | Online Transfer to Eric R Shibley MD Pllc Business Market Rate Savings xxxxxx7247 Ref #Ib07Xdzybj on 04/08/20 | | 700.00 | 463.70 |
| 4/9 | | Purchase authorized on 04/07 Staples 0011 Seattle WA 8380098818218446 Card 9205 | | 24.21 | |
| 4/9 | | Purchase authorized on 04/07 Safeway #2932 Seattle WA S590098831355735 Card 9205 | | 59.14 | 380.35 |
| 4/21 | | 5bad Treas 310 Misc Pay 042120 Eidg:3600262629 Nte*Pmt*Eidg:3600262629\ | 4,000.00 | | |
| 4/21 | | Online Transfer to Eric R Shibley MD Pllc Business Market Rate Savings xxxxxx7247 Ref #Ib07Zfphvd on 04/21/20 | | 4,000.00 | 380.35 |
| 4/22 | | Purchase authorized on 04/21 Les Schwab Tires # Seattle WA S380113026502236 Card 9205 | | 270.54 | 109.81 |
| 4/23 | | Online Transfer From Eric R Shibley MD Pllc Business Market Rate Savings xxxxxx7247 Ref #Ib07Zpnlst on 04/23/20 | 3,000.00 | | 3,109.81 |
| 4/27 | | Online Transfer From Es1 LLC Business Market Rate Savings xxxxxx2378 Ref #Ib08279Clx on 04/27/20 | 6,000.00 | | |
| 4/27 | | Singh Accounting Acct Fee Yearly Fee Shibley Medical | | 8,400.00 | 709.81 |
| Ending balance on 4/30 | | | | | 709.81 |
| Totals | | | $13,900.00 | $13,492.21 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 04/01/2020 - 04/30/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|------|------|------|
| **How to avoid the monthly service fee** | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| - Average ledger balance | $500.00 | $822.00 ☑ |
| C1C1 | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|------|------|------|------|------|------|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 3 | 50 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

April 30, 2020 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

ENTER
A. The ending balance
shown on your statement  . . . . . . . . . . . . . . . . .   $ _____

ADD
B. Any deposits listed in your           $ _____
register or transfers into              $ _____
your account which are not              $ _____
shown on your statement.              + $ _____

. . . . . . . . . . . . . . . . . . . . .   . . . . . TOTAL $ _____

CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

SUBTRACT
C. The total outstanding checks and
withdrawals from the chart above . . . . . . .   . . . . - $ _____

CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . .   . . . . . . . . . . . . . . .   $ . _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399001

# Wells Fargo Simple Business Checking

May 31, 2020 ◼ Page 1 of 5



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

Online: wellsfargo.com/biz

*Write:*  Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☐ |
| Overdraft Protection | ☐ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 5/1 | $709.81 |
| Deposits/Credits | 1,630.06 |
| Withdrawals/Debits | - 2,209.46 |
| **Ending balance on 5/31** | **$130.41** |
| Average ledger balance this period | $473.81 |

Account number:  **6621617262**

ERIC R SHIBLEY MD PLLC
**DBA SHIBLEY MEDICAL CLINIC**

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

May 31, 2020 ■ Page 2 of 5



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 5/1 | | Purchase authorized on 04/29 Staples 0011 Burien WA S300120852307838 Card 9205 | | 80.29 | 629.52 |
| 5/4 | | ATM Check Deposit on 05/04 Georgetown Business Cente Seattle WA 0002141 ATM ID 2693A Card 9205 | 149.40 | | |
| 5/4 | | Purchase authorized on 05/02 Panda Express #102 Burien WA S580124092808296 Card 9205 | | 26.40 | |
| 5/4 | | Purchase authorized on 05/02 Panda Express #102 Burien WA S380124097050211 Card 9205 | | 10.73 | |
| 5/4 | | Purchase authorized on 05/03 McDonald's F13369 Seattle WA S490124772263225 Card 9205 | | 15.92 | 725.87 |
| 5/5 | | Purchase authorized on 05/03 Shell Oil 57444981 Seattle WA S460124744460612 Card 9205 | | 33.21 | |
| 5/5 | | Purchase authorized on 05/04 Wholefds Mbd #1063 Seattle WA S380125793511588 Card 9205 | | 80.84 | 611.82 |
| 5/6 | | ATM Cash Deposit on 05/06 West Seattle Seattle WA 0005344 ATM ID 1740A Card 9205 | 440.00 | | |
| 5/6 | | ATM Cash Deposit on 05/06 West Seattle Seattle WA 0005345 ATM ID 1740A Card 9205 | 140.00 | | |
| 5/6 | | Purchase authorized on 05/04 Shell Oil 57444026 Seattle WA S380125702902698 Card 9205 | | 42.42 | |
| 5/6 | | Online Transfer to The A Team Holdings, LLC Business Checking xxxxxx9116 Ref #Ib063Tzgyv on 05/06/20 | | 600.00 | 549.40 |
| 5/7 | | Purchase authorized on 05/05 The Home Depot #89 Seattle WA S300126817231896 Card 9205 | | 128.17 | |
| 5/7 | | Purchase authorized on 05/05 McDonald's F472 Seattle WA S580127115002183 Card 9205 | | 20.31 | |
| 5/7 | | Purchase authorized on 05/06 Panda Express #102 Burien WA S580128154142425 Card 9205 | | 12.38 | 388.54 |
| 5/8 | | Overdraft Fee for a Transaction Posted on 05/07 $128.17 Purchase Authori Zed on 05/05 The Home Depot #89 Seattle | | 35.00 | |
| 5/8 | | Overdraft Fee for a Transaction Posted on 05/07 $20.31 Purchase Authori Zed on 05/05 McDonald's F472 Seattle | | 35.00 | |
| 5/8 | | Overdraft Fee for a Transaction Posted on 05/07 $12.38 Purchase Authori Zed on 05/06 Panda Express #102 Burien | | 35.00 | |
| 5/8 | | Online Transfer From Eric R Shibley MD Pllc Business Market Rate Savings xxxxxx7247 Ref #Ib0846Rg3Z on 05/08/20 | 400.00 | | |
| 5/8 | | Purchase authorized on 05/06 WA Secretary of St WA Gov WA S380127154643532 Card 9205 | | 100.00 | 583.54 |
| 5/11 | | 05/11Bankcard Deposit 0225132118 | 500.00 | | |
| 5/11 | | Purchase authorized on 05/07 Safeway #2932 Seattle WA S380129180958264 Card 9205 | | 393.08 | |
| 5/11 | | Purchase authorized on 05/08 Safeway #2932 Seattle WA S580130030389013 Card 9205 | | 46.50 | |
| 5/11 | | Purchase authorized on 05/10 Jiffy Lube 2079 Burien WA S300131846934315 Card 9205 | | 59.38 | |
| 5/11 | | Purchase authorized on 05/10 Panda Express #102 Burien WA S460132054212620 Card 9205 | | 11.00 | |
| 5/11 | | Clover App Mkt Clover App 200511 899-9348095-000 Enc R Shibley MD Pllc | | 5.44 | 568.04 |
| 5/12 | | Bankcard Fee - 0225132118 | | 10.00 | 558.04 |
| 5/19 | | Purchase authorized on 05/17 Safeway #2932 Seattle WA S380138679779702 Card 9205 | | 55.64 | 502.40 |
| 5/22 | | Eric Shibley Acctconfrm 200521 Eric Shibley | 0.11 | | |
| 5/22 | | Eric Shibley Acctconfrm 200521 Eric Shibley | 0.55 | | |
| 5/22 | | Eric Shibley Acctconfrm 200521 Eric Shibley | | 0.66 | 502.40 |
| 5/26 | | Purchase authorized on 05/22 Dropbox*Nhtwpxq91H Db.11/Cchelp DE 8380143784443810 Card 9205 | | 131.99 | |

May 31, 2020 ▪ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|--------------------|---------------------|
| 5/28 | | ATM Withdrawal authorized on 05/25 West Seattle Seattle WA 0007204 ATM ID 1740A Card 9205 | | 40.00 | |
| 5/28 | | ATM Withdrawal authorized on 05/25 West Seattle Seattle WA 0007205 ATM ID 1740A Card 9205 | | 200.00 | 130 41 |
| Ending balance on 5/31 | | | | | 130.41 |
| Totals | | | $1,630.06 | $2,209.46 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 05/01/2020 - 05/31/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|-----------------------------------|-------------------------------------|----------------|
| The bank has waived the fee for this fee period. | | |
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |
| Average ledger balance | $500.00 | $474.00 ☐ |

*The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.*
C1/C1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|----------------------------|-----------|----------------|--------------|------------------------------------|--------------------------|
| Cash Deposited ($) | 500 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 5 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

# 🔥 IMPORTANT ACCOUNT INFORMATION

Effective June 20, 2020, we are updating the Funds Availability Policy in our Deposit Account Agreement as follows:

In the "Longer delays may apply" section, when a longer delay applies, we are making the following changes:
- The amount of your deposit that may be available on the first business day after the day of your deposit is increasing from $200 to $225.
- We are changing the check deposit amount exception that may lead to a delay of generally no more than seven business days from "You deposit checks totaling more than $5,000 on any one day" to "You deposit checks totaling more than $5,525 on any one day."

In the "Special rules for new accounts" section, setting forth special rules that apply during the first 30 days your account is open, we are updating the amounts in the two bullets in the second paragraph from $5,000 to $5,525 and from $200 to $225 as follows:



- The first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks and U.S. Postal Service money orders made payable to you will be available on the first business day after the day of your deposit.
- The excess over $5,525 and funds from all other check deposits will be available on the seventh business day after the day of your deposit. The first $225 of a day's total deposit of funds from all other check deposits, however, may be available on the first business day after the day of your deposit.

To provide you with additional flexibility to access accounts, we have increased the daily ATM withdrawal limit on your Wells Fargo Debit, ATM, or EasyPay Card(s) to $710. Any card that already has a daily ATM withdrawal limit of $710 or more remains the same. To view your card limits any time, sign on at wellsfargo.com/cardcontrol and click on Open Card Details.

May 31, 2020 ■ Page 5 of 5



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous month(s) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your      $ _____
   register or transfers into       $ _____
   your account which are not       $ _____
   shown on your statement.       + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . − $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B − Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC  NMLSR ID 399801

# Wells Fargo Simple Business Checking

November 30, 2019 ■ Page 1 of 4



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 11/27 | $0.00 |
| Deposits/Credits | 25.00 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 11/30** | **$25.00** |
| Average ledger balance this period | $25.00 |

Account number:  6621617262

ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN):  125008547

For Wire Transfers use
Routing Number (RTN):  121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 11/27 | | Etransfer IN Branch/Store - From Checking 4314 Sw Alaska St Seattle WA 9124 | 25.00 | | 25.00 |
| Ending balance on 11/30 | | | | | 25.00 |
| Totals | | | $25.00 | $0.00 | |

The *Ending Daily Balance* does *not* reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 11/27/2019 - 11/30/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee.

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $25.00 ☐ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.
DA/DI

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 0 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |



# IMPORTANT ACCOUNT INFORMATION

We are updating the Wells Fargo Deposit Account Agreement as follows:

Effective December 31, 2019, in the section of the Agreement titled, "Rights and Responsibilities", the response to "Is your wireless operator authorized to provide information to assist in verifying your identity?" is deleted and replaced with the following:

Yes, and as part of your account relationship, we may rely on this information to assist in verifying your identity. You understand and agree that Wells Fargo may collect, use and retain personal or other information about you or your device pursuant to Wells Fargo's policies or as required by applicable law.

November 30, 2019   ■   Page 3 of 4



You authorize your wireless operator to disclose your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber and device details, if available, to Wells Fargo and service providers for the duration of the business relationship, solely for identity verification and fraud avoidance. Review our Privacy Policy for how we treat your data. You represent that you are the owner of the mobile phone number or have the delegated legal authority to act on behalf of the mobile subscriber to provide this consent.

November 30, 2019 ■ Page 4 of 4



## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

### ENTER

A. The ending balance
shown on your statement :   $

### ADD

B. Any deposits listed in your   $
register or transfers into   $
your account which are not   $
shown on your statement.   + $

.................................... TOTAL $

### CALCULATE THE SUBTOTAL
(Add Parts A and B)

.................................... TOTAL $

### SUBTRACT

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . - $

### CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . .   $

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

December 31, 2019 ■ Page 1 of 4



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800 225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

 IMPORTANT ACCOUNT INFORMATION

We may change the statement period and monthly fee period assigned to your account without advance notification. If your account earns interest, these changes will not affect interest calculations, but they may affect the date we post interest to your account.

For all accounts except business analyzed checking, if the first new fee period created by our change is fewer than 25 days, the bank will automatically waive the monthly service fee for that period.



## Activity summary

| | |
|---|---|
| Beginning balance on 12/1 | $25.00 |
| Deposits/Credits | 7,132.48 |
| Withdrawals/Debits | - 3,140.31 |
| Ending balance on 12/31 | $4,017.17 |
| Average ledger balance this period | $2,031.28 |

Account number: 6621517262

ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

December 31, 2019 ▪ Page 2 of 4



## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|
| 12/2 | | Edeposit IN Branch/Store 12/02/19 03:34:55 Pm 4314 Sw Alaska St Seattle WA 1422 | 2,369.34 | | 2,394.34 |
| 12/9 | | Purchase authorized on 12/07 Starbucks Store 26 Covington WA S589341821180705 Card 1422 | | 5.18 | 2,389.16 |
| 12/10 | | Harland Clarke Check/Acc. 120919 00017407575482 Eric R Shibley MD Pllc | | 37.24 | 2,351.94 |
| 12/11 | | Purchase authorized on 12/10 Waste Mgmt WM Ezpa 866-834-2080 TX S389344773506623 Card 1422 | | 452.24 | |
| 12/11 | | Purchase authorized on 12/10 Chevron 0206670 Kent WA S309344873896235 Card 1422 | | 22.16 | |
| 12/11 | | Purchase authorized on 12/10 Panda Express #102 Burien WA S309345070517375 Card 1422 | | 15.57 | |
| 12/11 | 5026 | Check | | 316.25 | 1,545.73 |
| 12/12 | | Purchase authorized on 12/10 Reliable Wrenchers Kent WA S380344819634412 Card 1422 | | 578.20 | |
| 12/12 | | Purchase authorized on 12/10 Safeway #1082 Seattle WA S309345232993644 Card 1422 | | 30.33 | |
| 12/12 | | Purchase authorized on 12/11 Panda Express #102 Burien WA S389346068918241 Card 1422 | | 21.29 | |
| 12/12 | | Purchase authorized on 12/11 Panda Express #102 Burien WA S469346071104022 Card 1422 | | 4.29 | 911.62 |
| 12/13 | | Purchase authorized on 12/11 Shell Oil 57444961 Seattle WA S469345857944905 Card 1422 | | 30.01 | |
| 12/13 | | Purchase authorized on 12/11 The Home Depot #69 Seattle WA S599346043523299 Card 1422 | | 71.83 | |
| 12/13 | | Purchase authorized on 12/11 The Home Depot #47 Seattle WA S309346174387545 Card 1422 | | 45.36 | 764.42 |
| 12/16 | | Merchant Bankcd Deposit 191215 209210953888 Shibley Medical | 750.00 | | |
| 12/16 | ◄ | Business to Business ACH Debit - Merchant Bankcd Finc! Adj 191215 209210953888 Shibley Medical | | 583.39 | 931.03 |
| 12/17 | 5032 | Check | | 47.00 | 884.03 |
| 12/18 | | Merchant Bankcd Deposit 191217 209210953888 Shibley Medical | 400.00 | | |
| 12/18 | | Wells Fargo Cashback Rewards | 4.00 | | 1,288.03 |
| 12/20 | | ATM Check Deposit on 12/20 West Seattle Seattle WA 0007277 ATM ID 1740A Card 1422 | 260.00 | | 1,548.03 |
| 12/23 | | Merchant Bankcd Deposit 191220 209210953888 Shibley Medical | 250.00 | | 1,798.03 |
| 12/24 | | Merchant Bankcd Deposit 191223 209210953888 Shibley Medical | 900.00 | | |
| 12/24 | | ATM Check Deposit on 12/24 West Seattle Seattle WA 0008074 ATM ID 1740A Card 1422 | 596.00 | | |
| 12/24 | ◄ | Business to Business ACH Debit - Merchant Bankcd Chargeback 191223 209210953888 Shibley Medical | | 100.00 | 3,096.03 |
| 12/30 | | Merchant Bankcd Deposit 191227 209210953888 Shibley Medical | 600.00 | | |
| 12/30 | | Merchant Bankcd Deposit 191228 209210953888 Shibley Medical | 350.00 | | |



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 12/30 | 5001 | Check | | 780.00 | 3,266.03 |
| 12/31 | | Edeposit IN Branch/Store 12/31/19 12:18:27 Pm 4314 Sw Alaska St Seattle WA 1422 | 751.14 | | 4,017.17 |
| Ending balance on 12/31 | | | | | 4,017.17 |
| Totals | | | $7,132.48 | $3,140.31 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed*

< *Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 5001 | 12/30 | 780.00 | 5028 * | 12/11 | 316.25 | 5032 * | 12/17 | 47.00 |

* Gap in check sequence

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 12/01/2019 - 12/31/2019 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. This is the final period with the fee waived. For the next fee period, you need to meet the requirement(s) to avoid the monthly service fee

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| · Average ledger balance | $500.00 | $2,031.00 ☑ |

C1C1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 23 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

December 31, 2019  ■  Page 4 of 4



---

## General statement policies for Wells Fargo Bank

■ Notice: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

### Account Balance Calculation Worksheet

1  Use the following worksheet to calculate your overall account balance.

2  Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3  Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your        $ _____
register or transfers into          $ _____
your account which are not          $ _____
shown on your statement.          + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# Wells Fargo Simple Business Checking

January 31, 2020 ■ Page 1 of 5



ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC
4700 36TH AVE SW
SEATTLE WA 98126-2716



## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (120)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargoworks.com to explore videos, articles, infographics, interactive tools, and other resources on the topics of business growth, credit, cash flow management, business planning, technology, marketing, and more.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ☐ |
| Business Spending Report | ✓ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 1/1 | $4,017.17 |
| Deposits/Credits | 6,333.11 |
| Withdrawals/Debits | - 8,861.90 |
| Ending balance on 1/31 | $1,488.38 |
| Average ledger balance this period | $2,932.48 |

Account number: **6621617262**

**ERIC R SHIBLEY MD PLLC
DBA SHIBLEY MEDICAL CLINIC**

*Washington account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 125008547

For Wire Transfers use
Routing Number (RTN): 121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

(120)



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 1/2 | | Merchant Banked Deposit 200101 209210953888 Shibley Medical | 1,565.00 | | |
| 1/2 | | Purchase authorized on 12/31 The Home Depot #47 Bellevue WA S589365825726929 Card 1422 | | 120.93 | |
| 1/2 | 5028 | Check | | 250.00 | 6,211.24 |
| 1/3 | | Purchase Return authorized on 01/01 The Home Depot #47 Seattle WA S610003544893416 Card 1422 | 4.03 | | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot #47 Seattle WA S300001657497630 Card 1422 | | 150.42 | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot 894 Seattle WA S300001660097496 Card 1422 | | 896.69 | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot 470 Tukwila WA S460001784436710 Card 1422 | | 242.30 | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot 470 Seattle WA S380001837656010 Card 1422 | | 223.51 | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot #89 Seattle WA S580002008491204 Card 1422 | | 1.22 | |
| 1/3 | | Purchase authorized on 01/01 The Home Depot #47 Bellevue WA S380002069229527 Card 1422 | | 129.50 | |
| 1/3 | < | Business to Business ACH Debit - Merchant Banked Interchng 200102 209210953888 Shibley Medical | | 55.71 | |
| 1/3 | < | Business to Business ACH Debit - Merchant Banked Discount 200102 209210953888 Shibley Medical | | 94.70 | |
| 1/3 | < | Business to Business ACH Debit - Merchant Banked Fee 200102 209210953888 Shibley Medical | | 142.13 | 3,270.09 |
| 1/6 | | Merchant Banked Deposit 200104 209210953888 Shibley Medical | 400.00 | | |
| 1/6 | | Purchase authorized on 01/03 Practice Fusion 415-346-7700 CA S580003665504863 Card 1422 | | 109.00 | |
| 1/6 | | Purchase authorized on 01/04 Tram'S Salon Seattle WA S300004822485023 Card 1422 | | 22.00 | |
| 1/6 | | Purchase authorized on 01/04 The Home Depot 894 Seattle WA S380005040787656 Card 1422 | | 80.13 | |
| 1/6 | | Purchase authorized on 01/04 Arco#07155Arco #07 Seattle WA S380006098926918 Card 1422 | | 20.25 | |
| 1/6 | | Purchase authorized on 01/06 USPS PO 54764600 4412 Cal Seattle WA P00380006723288964 Card 1422 | | 8.10 | 3,430.61 |
| 1/7 | | Merchant Banked Deposit 200106 209210953888 Shibley Medical | 250.00 | | |
| 1/7 | | ATM Check Deposit on 01/07 West Seattle Seattle WA 0000160 ATM ID 1740A Card 1422 | 1,430.20 | | |
| 1/7 | | Purchase authorized on 01/06 Panda Express #102 Burien WA S380006821073574 Card 1422 | | 13.20 | |
| 1/7 | | ATM Withdrawal authorized on 01/07 West Seattle Seattle WA 0000161 ATM ID 1740A Card 1422 | | 40.00 | 5,057.61 |
| 1/8 | | Purchase Return authorized on 01/06 The Home Depot 894 Seattle WA 5620008544268723 Card 1422 | 383.14 | | |
| 1/8 | | Purchase authorized on 01/06 Arco#07155Arco #07 Seattle WA S460008731428834 Card 1422 | | 16.57 | |
| 1/8 | | Purchase authorized on 01/06 The Home Depot #89 Seattle WA S580006793194548 Card 1422 | | 63.70 | |
| 1/8 | | Purchase authorized on 01/06 The Home Depot #89 Seattle WA S580007015251110 Card 1422 | | 180.08 | |
| 1/8 | | Purchase authorized on 01/06 The Home Depot #47 Seattle WA S460007143054949 Card 1422 | | 49.18 | |
| 1/8 | | Purchase authorized on 01/06 The Home Depot #89 Seattle WA S380007162272070 Card 1422 | | 2.98 | |
| 1/8 | | ATM Withdrawal authorized on 01/08 West Seattle Seattle WA 0000312 ATM ID 1740A Card 1422 | | 40.00 | 5,088.24 |

January 31, 2020 ▪ Page 3 of 5



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 1/9 | | Purchase authorized on 01/07 The Home Depot #89 Seattle WA S380008051307955 Card 1422 | | 270.59 | |
| 1/9 | | Purchase authorized on 01/07 The Home Depot #89 Seattle WA S380008141172106 Card 1422 | | 57.66 | |
| 1/9 | | Purchase authorized on 01/07 Arco#07155Arco #07 Seattle WA S460008151146747 Card 1422 | | 25.01 | |
| 1/9 | | Purchase authorized on 01/08 King County Dja Seattle WA S460008816219151 Card 1422 | | 61.49 | 4,673.49 |
| 1/13 | | Merchant Bankcd Deposit 200111 209210953888 Shibley Medical | 350.00 | | |
| 1/13 | | Merchant Bankcd Deposit 200110 209210953888 Shibley Medical | 500.00 | | |
| 1/13 | | Merchant Bankcd Deposit 200112 209210953888 Shibley Medical | 600.00 | | |
| 1/13 | | Purchase authorized on 01/09 The Home Depot #89 Seattle WA S380009747602296 Card 1422 | | 258.61 | |
| 1/13 | | WF Bus Credit Auto Pay 200112 9022526003381 Shibley.Eric | | 266.54 | 5,598.14 |
| 1/17 | | Edeposit IN Branch/Store 01/17/20 05:08:07 Pm 4314 Sw Alaska St Seattle WA 7282 | 68.07 | | |
| 1/17 | | Online Transfer to The A Team Holdings, LLC Business Market Rate Savings xxxxxx3536 Ref #Ib07Hnh4Fm on 01/17/20 | | 4,500.00 | 1,166.21 |
| 1/21 | | Purchase Return authorized on 01/16 The Home Depot #47 Bothell WA S61001854608740 Card 1422 | 182.94 | | |
| 1/21 | | Purchase Return authorized on 01/17 The Home Depot #47 Issaquah WA S610019695611436 Card 1422 | 119.90 | | |
| 1/21 | | Purchase authorized on 01/16 The Home Depot 471 Bothell WA S580017198423206 Card 1422 | | 386.96 | |
| 1/21 | | Purchase authorized on 01/17 The Home Depot 847 Tukwila WA S380018198869895 Card 1422 | | 40.92 | |
| 1/21 | | Purchase authorized on 01/17 Shell Oil 57444961 Seattle WA S460018211055663 Card 1422 | | 30.29 | 1,010.88 |
| 1/24 | | Purchase authorized on 01/23 Ncourt *Waskagitew Mount Vernon WA S300023788934083 Card 1422 | | 2.33 | 1,008.55 |
| 1/29 | | Deposit Made in A Branch/Store | 423.83 | | |
| 1/29 | | Deposit Made in A Branch/Store | 56.00 | | 1,488.38 |
| Ending balance on 1/31 | | | | | 1,488.38 |
| Totals | | | $6,333.11 | $8,861.90 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

< *Business to Business ACH:If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.*

## Summary of checks written   (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount |
|---|---|---|
| 5028 | 1/2 | 250.00 |

## Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 01/01/2020 - 01/31/2020 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period |
| Have any ONE of the following account requirements | | |

January 31, 2020 ■ Page 4 of 5



---

*Monthly service fee summary (continued)*

| How to avoid the monthly service fee | Minimum required | This fee period |
|---|---|---|
| · Average ledger balance | $500.00 | $2,932.00 ☑ |
| or | | |

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 3,000 | 0 | 0.0030 | 0.00 |
| Transactions | 20 | 50 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |



## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

### ENTER

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . $ _____

### ADD

B. Any deposits listed in your          $ _____
register or transfers into             $ _____
your account which are not             $ _____
shown on your statement             + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

### CALCULATE THE SUBTOTAL
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

### SUBTRACT

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . − $ _____

### CALCULATE THE ENDING BALANCE
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.  NMLSR ID 399801





## Fwd: WOMPLY/HARVEST SBF- PPP NOTE & ACH AUTHORIZATION Loan #4593717205 for SS1 LLC

1 message

**From:** Shibley Medical <shibleymedical@outlook.com>
**Date:** May 28, 2020 at 10:26:53 PM PDT
**To:** Jeremy Osaki <josaki@harvestcref.com>
**Subject:** Re:  WOMPLY/HARVEST SBF- PPP NOTE & ACH AUTHORIZATION Loan #4593717205 for SS1 LLC

Hi Jeremy,

Your boss called earlier and asked for couple of  names to verify that they are working on site , They know me by my name and 'A Team', they are :

1. Mataese Tela 9664
Phone: 206-629-2468

2.Eric Pula 2825
phone:253-740-2750

3.David sandoval/Tika 0074
Phone:206-326-8690

4.Ronald Reel 2237
Phone: 206-376-1683

5.Sam Morgan 3218
phone: 206-225-4313

6.  Carlita Lopez  6676

Phone: 206-806-3150

7. Lisa Velotta 0046
phone : 206-929-5458

8. Jerome Muna 3416
phone : 253-785-1441

9. Sarieck  Butler-Hem 9367
Phone: 206-376-6874

10.Ronisha Smith 0350
Phone: 206-566-9952

Please let me know when you are ready to send the funds back. I will send you a new
voided check.

Thank you.

---

**From:** Shibley Medical
**Sent:** Thursday, May 28, 2020 3:58 PM
**To:** Jeremy Osaki <josaki@harvestcref.com>
**Subject:** Re: WOMPLY/HARVEST SBF- PPP NOTE & ACH AUTHORIZATION Loan
#4593717205 for SS1 LLC

Just found out that number is not a federal case.

Sent from my iPhone

> On May 27, 2020, at 3:38 PM, Shibley Medical <shibleymedical@outlook.com> wrote:
>
>  My cell phone is 2067717868. They started a federal case # 20SZ33 , that's crazy, I am
> dumbfounded.
>
> Sent from my iPhone
>
> > On May 27, 2020, at 3:34 PM, Jeremy Osaki <josaki@harvestcref.com> wrote:
> >
> >
> > Hi there,
> >
> > My apologies for the delay. Let me check with our Finance Team to see
> > what can be done and I'll have someone from Finance reach out to
> > you, most likely some time tomorrow morning. What's the best number
> > to reach you at?
> >
> >
> > Regards,
> >
> >
> > **Jeremy Osaki**
> > Senior Vice President

Asset Acquisition Specialist

josaki@harvestsbf.com
www.harvestsbf.com

<image001.png>

The content of this email is confidential and intended for the recipient specified in message only. It is
strictly forbidden to share any part of this message with any third party, without a written consent of the
sender. If you received this message by mistake, please reply to this message and follow with its
deletion, so that we can ensure such a mistake does not occur in the future.

---

**From:** Shibley Medical [mailto:shibleymedical@outlook.com]
**Sent:** Wednesday, May 27, 2020 11:25 AM
**To:** Jeremy Osaki <josaki@harvestcref.com>; pppnotes
<pppnotes@harvestcref.com>
**Subject:** Re: WOMPLY/HARVEST SBF- PPP NOTE & ACH
AUTHORIZATION Loan #4593717205 for SS1 LLC

Hi Jeremy,

This PPP loan ACH  got returned back to your bank. Can you please send it to
another bank ? I will send you a voided check for the new account  if that is
okay.

Thank you.

---

**From:** Shibley Medical <shibleymedical@outlook.com>
**Sent:** Tuesday, May 12, 2020 9:26 PM
**To:** Jeremy Osaki <josaki@harvestcref.com>;
pppnotes@harvestcref.com <pppnotes@harvestcref.com>
**Subject:** Re: WOMPLY/HARVEST SBF- PPP NOTE & ACH
AUTHORIZATION Loan #4593717205 for SS1 LLC

Hi Jeremy,

Do you have any update  when the ACh will be initiated on this PPP loan,**PPP
NOTE & ACH AUTHORIZATION Loan #4593717205 for
SS1 LLC**

Thank you.

---

**From:** Jeremy Osaki <josaki@harvestcref.com>
**Sent:** Wednesday, May 6, 2020 1:59 AM
**To:** Shibley Medical <shibleymedical@outlook.com>
**Subject:** RE: WOMPLY/HARVEST SBF- PPP NOTE & ACH AUTHORIZATION Loan #4593717205 for SS1 LLC


Please be sure to send your executed documents directly to **pppnotes@harvestcref.com** or fax to **949.534.9007,** if you haven't already done so.



Regards,


**Jeremy Osaki**
Senior Vice President

Asset Acquisition Specialist

josaki@harvestsbf.com
www.harvestsbf.com


<image001.png>


The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

---

**From:** Shibley Medical [mailto:shibleymedical@outlook.com]
**Sent:** Tuesday, May 05, 2020 12:20 PM
**To:** Jeremy Osaki <josaki@harvestcref.com>
**Subject:** Re: WOMPLY/HARVEST SBF- PPP NOTE & ACH AUTHORIZATION Loan #4593717205 for SS1 LLC


Please find attached signed loan doc and voided check for ACH for the PPP loan.


Thank you.

---

**From:** Jeremy Osaki <notifications@venturesgo.com>
**Sent:** Tuesday, May 5, 2020 7:35 AM

**To:** Eric Shibley <shibleymedical@outlook.com>
**Subject:** WOMPLY/HARVEST SBF- PPP NOTE & ACH
AUTHORIZATION

Dear Borrower,

Congratulations! Your PPP loan request has been approved by the SBA. Please
review and execute the attached PPP Note and ACH Authorization. Once
completed, please send the executed PPP Note and ACH Authorization and a
copy of a voided check from the account you would like your loan proceeds
deposited to pppnotes@harvestcref.com or fax to **949.534.9007**. We are
working extremely hard on your behalf and anticipate disbursing funds
beginning on Friday, May 8th. We appreciate your patience. Thank you.

**IMPORTANT:** Please be sure to send all of the items below, in the same email
to pppnotes@harvestcref.com:

- Executed PPP Note
- Completed ACH Authorization
- Copy of voided check/letter from bank (including Account Name,
  Account#, Routing#)
- ***Please include the SBA Loan Number and your Business Name
  (found in your Note) in the subject line of the email to ensure timely
  processing and disbursement of your funds.***

**PLEASE NOTE:** If you already received loan documents from Round 1, you still
need to execute this new set of loan documents and return them in order for us
to comply with the ***Paycheck Protection Program Liquidity Facility***.

The language in the PPP Note is non-negotiable, however if you identify any
errors ***in the loan amount and/or borrowing entity name***, please contact
Jeremy Osaki at josaki@harvestsbf.com and copy (cc) support@womply.com to
ensure a timely response. **For ALL other questions email**
ppp@harvestcref.com. Thank you.

 Gmail

## Fw: Welcome

1 message

**From:** Shibley Medical <shibleymedical@outlook.com>
**Sent:** Thursday, June 25, 2020 10:37 PM
**To:** Mario Davis <mdavis@pinnaclesignature.com>
**Subject:** Re: Welcome

I uploaded everything for 2018,2019 and 2020 in your portal. I dont have employee payroll or demographics but my total headcount since 2019 is approx 200 , including the turnovers which is pretty high.2018 tax is going to be  bank account based ,however 2019 and 2020 tax filing is cash based. I probably won't even try to download the 2019 and 2020 bank statements and try to reconcile because its mostly cash in terms of income and expense.Major expense was employee payroll.I probably owe approx half million in payroll tax. Due to their transient nature, most of my employees received somewhere between 8k to 12K salary per year in 2019 and 2020, however they all are below 13K/year, so my understanding is no income tax withholding was necessary.

2019, I probably made around $500K net profit among the 5 businesses together with SS1 LLC making approx 200K, The A team Holdings LLC approx 100K, ES1 LLC 70k, Eric R Shibley MD PLLC approx 65K, SFC LLC approx 65K. Dituri Construction was formed in 01/2020 , so there is no 2019 filing for it.

The commercial real estate at 4700 36th Ave SW Seattle WA 98126 was bought in 06/2015 with a sale price of $1million. After that I did approx. $125K remodeling and renovations to it.I am trying to find out how to get the depreciation calculation done and offset the 2019 income tax which would probably be around 85K altogether.

Its a urgent tax filing, so please get these ready my mid or early next week or sooner , if possible. I have been trying to prevent the FBI to take my gadgets and make my life impossible before I could even file this taxes. They have already frozen all the PPP and EIDL money they approved so far.

Thank you.

**From:** Mario Davis <mdavis@pinnaclesignature.com>
**Sent:** Thursday, June 25, 2020 9:48 PM
**To:** shibleymedical@outlook.com <shibleymedical@outlook.com>
**Cc:** Carol Dewey <cdewey@guardianpointepwm.com>; Phebe Fuqua
<pfuqua@pinnaclesignature.com>
**Subject:** Welcome

Hello Doctor,
Please find the attached application for you to complete so that we can begin reviewing your case.
Once we receive this back along with your documents discussed we can develop a strategy for moving forward.

**Mario Davis**
**Senior Accountant for the firm**
**Pinnacle Signature Group Inc.**
**927 Beville Road Suite 109**
**South Daytona, Florida 32119**
**o.(386)675-6595**
**f. (386)675-6596**
**www.pinnaclesignature.com**

*CONFIDENTIALITY NOTICE: This message is confidential, is intended only for the named recipient(s) and may contain information that is privileged or exempt from disclosure under applicable law. If you are not the intended recipient(s), you are notified that the dissemination, distribution or copying of this message is strictly prohibited. If you received this message and are not the intended recipient, please delete it from your computer system without copying or forwarding it and notify the sender by either sending a return e-mail or calling the number above.*

*CIRCULAR 230 DISCLOSURE: Pursuant to Treasury Circular 230, Regulations for Practice before the Internal Revenue Service, we are advising you that any advice contained in this e-mail (including attachments) is not intended or written to be used, and cannot be relied upon or used, for purposes of avoiding tax penalties that may be imposed on any taxpayer.*

1

2

3

4

5

6

**PLAINTIFF'S EXHIBIT**

CASE NO. CR20-153

EXHIBIT NO. 226

The Honorable John C. Coughenour

7

8

9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

UNITED STATES OF AMERICA,

              Plaintiff,

        v.

ERIC SHIBLEY,

              Defendant.

NO. CR 20-174 JCC

STIPULATION OF THE PARTIES
REGARDING CITY OF ANACORTES vs.
ERIC SHIBLEY

18

19

20

21

22

23

24

25

26

27

28

    The United States of America, by and through Laura Connelly, Trial Attorney for
the United States Department of Justice, and Brian Werner, Assistant United States
Attorney for the Western District of Washington, and Defendant Eric Shibley, and his
counsel, Michael Nance, hereby stipulate to the following:

    1.      On December 13, 2018, the Defendant Eric Shibley signed a sentence order
that he was sentenced to a 24-month term of probation in Skagit County District Court
for a misdemeanor offense.  Mr. Shibley's term of supervision expired in December
2020.

    The jury may accept the above-stated facts as if they had been proven beyond a
reasonable doubt at trial.

STIPULATION REGARDING CITY OF ANCORTES V. ERIC SHIBLEY
*United States v. Eric Shibley*/CR20-174 JCC - 1

UNITED STATES ATTORNEY
900 STEWART ST, SUITE 5220
SEATTLE, WA 98104

1    Nothing in this Stipulation restricts the ability of either party to present additional

2  evidence regarding the transaction described above.

3    DATED this 16ᵗʰ day of November, 2021.

4

5

6  LAURA CONNELLY                                    ERIC SHIBLEY

7  Department of Justice Trial Attorney              Defendant

8

9

   BRIAN WERNER                                      MICHAEL NANCE

10  Assistant United States Attorney                 Attorney for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28