Honorable John Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. CR20-174 JCC |
| Plaintiff, | ) | |
| | ) | DEFENSE SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| ERIC SHIBLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Following a four-day jury trial, defendant Eric Shibley was convicted of wire

fraud (7 counts), bank fraud (3 counts), and money laundering (5 counts), respective

violations of 18 USC §1343,  §1344(2), and §1957.  The application of the advisory

guidelines is disputed, and the statutes of conviction do not provide for a mandatory

minimum sentence.  As argued below, compelling reasons support a sentence of 24

months.

Sentencing is scheduled for March 8, 2022.

**1.  Sentencing Recommendation**

1.  Twenty-four (24) months of detention with full credit for all time served;

2.  Three (3) years of supervised release;

3.  Restitution to be determined;

4.  All non-mandatory penalties should be waived.

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

### 2.  Objections to Presentence Report and U.S. Guideline application

The defense objects to all matters contained with the Presentence Report that are inconsistent with arguments made herein.  The burden of proof on the applicability of particular enhancements are on their proponents.  The defense calculates the advisory guidelines as follows:

   6 - base offense level

 16 – intended loss between $1.5 million and $3.5 million (USSG §2B1.1(b)(1)(I))

  1 - convicted under §1957 (USSG §2S1.1(b)(2)(A)

 23 – total offense level

Utilizing a Criminal History Category II, Mr. Shibley's advisory guideline range is 51 - 63 months.

### a.  Loss amount

The proper loss amount is the greater of actual or intended loss.  "Intended loss" includes "the pecuniary harm that the defendant purposely sought to inflict" .  Application Note 3(A)(ii) to USSG §2B1.1.  Mr. Shibley received approximately $2.8 million in funded loans but the great majority of that was seized or frozen before it could be diverted further.  According to an early government estimate, about $255,000 remains unrecovered.  Dkt #91, p. 22.  In calculating a proper loss amount for guideline purposes, the government seeks to count additional loan application amounts never received and which Mr. Shibley assumed would not be totally funded.  Even if the most punitive

interpretation is applied, the aggregate amount ($3.639 million) is a small percentage above the $3.5 million threshold for triggering application of level 18 loss amount.  A benefit of a doubt would accord him only a 16 level enhancement.

### b. Sophisticated means

"Sophisticated means" means especially complex or especially intricate offense conduct pertain to the execution or concealment of an offense.  Application Note 9(B) to USSG §2B1.1.  *Any* fraud of the magnitude in question must by its very nature involve some degree of sophistication.   Nothing about Mr. Shibley's fraudulent activity manifests a sophistication any greater than a garden-variety fraud of similar magnitude.  If anything, Mr. Shibley's utter *lack* of sophistication in basic business, accounting and record-keeping conventions contributed to his undoing.

### c.  Obstruction

An obstruction enhancement under USSG §3C1.1 requires that a defendant willfully obstruct or impede the administration of justice with respect to the investigation or prosecution.  The PSI (p. 8, par. 31) cites two bases for the application:  Mr. Shibley's production, in response to grand jury subpoenas, of false IRS Forms 941 and W-3 that he had abutted in support of his fraudulent PPP applications and his trial testimony that he "chose not to" turn one the names of certain employees of alleged employees fo Dituri Construction.   Neither example supports an obstruction enhancement.

### i.  The grand jury subpoena response

On or about June 9, 2020, Mr. Shibley was served with a subpoena duces tecum

that requested production of a number of documents relating to various LLC entities that

he controlled.  Among the various documents demanded were

> *All documents relating to any loans applied for*, including but not limited
> to, loans associated with the Paycheck Protection Program under the
> CARES ACT or the Economic Injury Disaster Loan (EIDL) program,
> including, but not limited to:
> . . .
>> 2. *All documents relating to payroll information submitted as part of*
>> *the loan application include but not limited to payroll information,*
>> *any underlying documents to support payroll figures, and relevant*
>> *documents including IRS Forms W-2, W-3, W-4, or MISC-1099*;
>
> (emphasis supplied).

Mr. Shibley was not able to produce many of the requested documents because

they either did not exist or could not be located.  The complained of Forms W-3 and 941

that he produced in response to the subpoenas, whether actually ever filed with the IRS

and whether facially accurate or not, *were* related to the loans in question because they

had been previously supplied in support of those applications.  Their production was a

literal compliance with the subpoenas and cannot constitute obstruction.

### ii.  Mr. Shibley's trial testimony

Mr. Shibley should not be punished for exercising his constitutional right to testify

in his own defense.  His denial of guilt is not a basis for obstruction.  Even testimony that

is not fully accurate may result from confusion, mistake or faulty memory and does not

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

necessarily reflect a willful attempt to obstruct justice.  Application Note 2 to USSG §3C1.1.

Mr. Shibley testified for several hours during which he made an offhand comment, now cited as obstructive, that "he chose not" to turn over employee names for Dituri Construction to the grand jury.   But it has never been established that his business actually possessed documents available to him that listed the names of his purported employees.  Initially, Mr. Shibley cannot be guilty of withholding the names of employees if, as the government insists, the employees do not exist.  Even if employees did exist at some point or if Mr. Shibley believed they did, the subpoena commanded only that *documents* referencing them be produced.  The subpoena did not ask that he prepare or compile a list of employees.  Mr. Shibley's trial testimony that he chose not to provide names of employees, even if true, did not evidence a willful failure to comply with a subpoena that requested only documents.

No obstruction enhancement is appropriate.

### d.  Financial Condition/Ability to Pay

The Presentence Report (par. 64-65) greatly overstates Mr. Shibley's financial condition and his "ability to pay".  While, on paper, he owns a residence and three rental properties, there are serious problems with all of them.  All face imminent foreclosure for non-payment of mortgages and back-taxes.  All currently house non-paying squatters who have trashed the properties, stolen property from within, and refused to leave.  If the

houses can be cleared of squatters and sold before pending foreclosures occur (a very iffy

proposition), he may realize a modest return on his investments.  Just as likely he loses

everything to foreclosure and salvages nothing.  Either way, he has court judgments

(including likely forfeiture and restitution obligations in this case), back child support and

unpaid tax obligations and outstanding bills.  He is in no position to pay a fine.

     **3.**    **The court should impose a reasonable sentence crafted to fit the circumstances of the case and those of Mr. Shibley.  A prison sentence of twenty-four months would be reasonable and achieve the stated purposes of § 3553(a), as clarified by recent Supreme Court guidance.**[2]

As determined by the jury, Mr. Shibley fraudulently procured loan proceeds from

Covid-19 relief programs (the Paycheck Protection Program and the Economic Injury

Disaster Loan Program) using applications contain false information about payroll and

employees.  For reasons that follow, the sentencing purposes of 18 USC 3553(a) can be

satisfied with a sentence of twenty-four months followed by three years of supervised

release.

---

[2]Sentencing courts now have the authority and a Supreme Court mandate to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, to consider *all* of the characteristics of the offender and circumstances of the offense, to reject advisory guidelines that are not based on national sentencing data and empirical research, and to serve their function in the constructive evolution of responsible guidelines. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 127 Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007).  The court must calculate the sentencing guideline range and then determine the appropriate sentence for the individual defendant in light of the statutory factors of 18 U.S.C. § 3553(a).  *Nelson v. United States*, 129 S.Ct. 890 (2009).

### a. Nature and circumstances of the offense and history and characteristics of the defendant (§ 3553(a)(1))

Eric Shibley is an intelligent, creative and ambitious man with a large blind spot. He is quite capable of mastering difficult subject material (like internal medicine), of trying new things (like a new life in a new country amidst an alien culture), and of willingly assuming high risk ventures (i.e., witness his foray into the hyper-competitive world of highly-leveraged real estate investment).  But he operates from a very different cultural perspective and a lack of personal insight that have created major adjustment problems and conflicts with authorities and in personal relationships.  His self-perception as an outsider or outlier, together with his obsession to succeed has clouded his judgment and led to rash actions.  His actions in this case, fueled by his recent self-distancing from the medical profession and community anxiety over the Covid pandemic, were an outgrowth of these aspects.  They do not excuse his actions but perhaps help explain them.

As depicted at trial, Mr. Shibley is from a prominent family in Bangladesh and distinguished himself early as a good student with a bright future.  Motivated to fix the broken world he saw, he wanted to develop his interest in the healing arts and to be materially successful.  While still in Bangladesh, he earned his medical degree and then pulled up roots and left behind all that he knew to move to the United States, the land of opportunity.  Once here, he learned English and sought to navigate American culture and gain acceptable credentials here to practice medicine.   He became a naturalized

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

American citizen and then a licensed, practicing physician.  He practiced in several states, specializing in internal medicine.  Eventually, he came to Washington State and initially worked in large hospitals.

As recounted at trial Mr. Shibley, then Dr. Shibley, became disillusioned with the American health-care system and eventually attempted to transition into something that appealed to him but about which he lacked a detailed understanding:  real estate investment and renovation.   His plans lacked clear detail, documentation, licensing and permitting, budgeting, and accounting and financial management, to mention just some of their shortcomings.

In the wake of the pandemic in early 2020 he was undoubtedly tempted by the prominent promotions for PPP loan relief and the seeming readiness of lenders to extend forgivable loans in a streamlined application process.  But even allowing for overconfidence and the mistaken belief that some of his workers qualified as employees for PPP purposes, he clearly overreached in his numerous loan applications.   A jury determined his actions to be fraudulent.

The intended recipients of the PPP and EIDL loan funds were, indeed, businesses with legitimate employees.  But the trial did not reveal a single legitimate PPP applicant who was denied a loan for lack of available funds.  See trial testimony of SBA attorney Kathleen Littwin, who also testified that there was a substantial amount of authorized and

MICHAEL NANCE
ATTORNEY AT LAW
P.O. BOX 11276
BAINBRIDGE ISLAND, WA 98110
(206) 624-3211

available PPP loan funds available when the program ended.  *US v. Shibley* trial

transcript, testimony of Kathleen Littwin, November 15, 2021, p. 170, lines 3-18.

Perhaps as a sign of his evolving empathy, Mr. Shibley feels some remorse for his

actions.  See his attached letter to the court.

### b.  Sentencing purposes (§ 3553(a)(2))

Deterrence, incapacitation, and rehabilitation are prospective and societal
– each looks forward and asks:  What amount and kind of punishment will
help make society safe?  In contrast, retribution imposes punishment based
upon moral culpability and asks:  What penalty is needed to restore the
offender to moral standing within the community?

*United States v. Cole*, slip op., 2008 WL 5204441 *4 (N. D. Ohio Dec. 11, 2008).

### i.  Seriousness of the offense

Section 3553(a)(2)(A) requires the court to consider "the need for the sentence

imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense."  A sentence that is excessive in light of the

seriousness of the offense promotes disrespect for law and provides unjust punishment.

Further incarceration of Mr. Shibley would be needlessly counterproductive.  In

his circumstances additional jail time will not promote respect for the law and is not

necessary to hold him fully accountable.

### ii.  Deterrence to Criminal Conduct

Section 3553(a)(2)(B) requires the court to consider "the need for the sentence

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

imposed . . . to afford adequate deterrence to criminal conduct."   But the proper question for the court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime.  Here, the findings are uniformly negative: there is no evidence that increases in sentence length reduce crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

In one of the best studies of specific deterrence, which involved federal white collar offenders (presumably the most rational of potential offenders) in the pre-guideline era, no difference in deterrence was found even between probation and imprisonment. *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995).

Mr. Shibley has already suffered severe collateral consequences from this conviction in the form of his revoked medical license and the devastation of his once-promising and long-neglected real estate investments.[1]   An additional jail term would serve little deterrence purpose.

---

[1] Even if not directly collateral, his summary medical license suspension in August 2020 related to conduct occurring concurrently with the charged conduct.  In any event these convictions make the likelihood of his ever regaining his medical license very remote.

MICHAEL NANCE
ATTORNEY AT LAW
P.O. BOX 11276
BAINBRIDGE ISLAND, WA 98110
(206) 624-3211

### iii.  Protection of the public from further crimes of the defendant

Section 3553(a)(2)(C) requires the court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

Mr. Shibley has little desire to ever again practice medicine or pursue a career in real estate investment, as both endeavors have brought him little but personal and financial misery.  Even without additional prison time, the proposed special conditions of his supervised release will allow for close monitoring of his financial dealings and serve as substantial protection of the public.

### iv.  Rehabilitation in the most effective manner

Section 3553(a)(2)(D) requires the court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Mr. Shibley would likely benefit from mental health and substance abuse treatment and counseling, either within the BOP as a RDAP program participant or as a condition of his supervised release.

Once he is out of custody Mr. Shibley hopes to write commercially concerning his interests in the healing arts and science.  He believes staying active and productive, particularly in areas in which he has expertise, will be most beneficial to himself and others.

### v. Consideration of Unwarranted Disparities

Section 3553(a)(6) requires the court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Disparity gets its content from the purposes of sentencing. "Unwarranted disparity is different treatment that is unrelated to our legitimate sentencing goals or uniform treatment that fails to take into account differences among offenders that are relevant to our purposes and priorities." Paul J. Hofer, *Immediate and Long-Term Effects of United States v. Booker*, 38 Ariz. St. L.J. 425, 442 (2006).

Defendants with similar records convicted of similar conduct vary widely in their culpability, risk of recidivism, dangerousness, and rehabilitation needs. Courts must now take account of these variations, and uniformity for its own sake is no longer the goal of the sentencing system. *See Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) ("[S]ome departures from uniformity were a necessary cost of the remedy we adopted.").

Three other PPP cases from this district serve as obvious bases for comparison and all suggest the recommended sentence. See *United States v. Zhang*, WDWA #CR20-169 RAJ, *United States v. Mohan*, WDWA CR21-41 JCC, and *United States v. Hsu*, WDWA #CR20-191 JLR. All the defendants in these cases, like Mr. Shibley, were professionals who were convicted of filing multiple fraudulent CARES Act loan applications. Unlike Mr. Shibley, who has typically led a relatively modest lifestyle, those defendants defrauded the CARES program to finance exotic lifestyles. Defendant Mohan, a business

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211

executive, sought to steal $5.6 million in CARES funds while he and his wife were

employed at jobs earning $500,000/year.  He received a sentence of **24 months**.

Defendant Hsu, who earned $54,000 per month as a chiropractor and drove a Porsche,

sought to steal $1.2 million in CARES funds.  He received **24 months**.  Defendant

Zhang, a software engineer earning $19,000/month, sought over $1.5 million in CARES

funds.  He received a sentence of **60 days.**

A **24-month** sentence for Mr. Shibley would be in line with the punishment these

comparable PPP defendants received and consistent with the imperative to avoid

unwarranted disparities.

### vi.  Other considerations

The Presentence Report correctly notes other bases for a downward variance.

These include Mr. Shibley's substance abuse and mental health issues, which are

substantial, and his almost 18-month in-custody history involving a severe Covid-19

infection and multiple lockdowns at FDC.  See *United States v. Carty*, 264 F.3d 191 (2d

Cir. 2001)(downward variance proper where defendant confined in particularly harsh

conditions).

### 4.  Conclusion

Eric Shibley should suffer consequences appropriate to his transgressions, taking

into account all of the sentencing factors of 18 USC § 3553(a).  He made a grievous

mistake in trying to appropriate government-guaranteed loan money intended for

distressed businesses.  He has fallen a long way from his days as a respected medical internist and just wants to begin his redemption.

Under the totality of circumstances, he can easily be held accountable by a sentence of twenty-four months, eventually to be released to negotiate a more promising path than that last trodden.

Respectfully submitted this 2nd day of March, 2022.


/s/ Michael Nance WSBA #13933
Attorney for Eric Shibley

**Certificate of Service**

I hereby certify that on the 2nd day of March, 2022, I electronically filed the foregoing with the clerk of the court using the CM/ECF system.  Notice and copies of this filing will be sent electronically to counsel of other parties who are parties to the ECF system.

/s/ Michael Nance, WSBA # 13933
email:  michaelnancelaw@gmail.com

Michael Nance
Attorney at Law
P.O. Box 11276
Bainbridge Island, WA 98110
(206) 624-3211